Jerome L. Ringler (State Bar No. 59918)
Catherine Burke Schmidt (State Bar No. 212827)
RINGLER & ASSOCIATES
233 Wilshire Blvd., Suite 900
Santa Monica, CA 90401
Tel: 310-955-4105
Fax: 310-955-4106
E-mail: jlr@ringlerandassociates.com
        cbs@ringlerandassociates.com

Michael S. Rapkin (State Bar No. 67220)
Scott B. Rapkin (State Bar No. 261867)
LAW OFFICES OF MICHAEL S. RAPKIN
233 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
Tel: 310-319-5465
Fax: 310-319-5355
E-mail: msrapkin@gmail.com
        scottrapkin@rapkinesq.com

Attorneys for Plaintiff

FILE BY FAX

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SPARKS LANDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC., a Delaware Corporation; CARLSONS APPLIANCES, INC., a California Corporation; and DOES 1 through 20, inclusive,<br><br>Defendant | Case No.: CV13-01033-DSF (SHX)<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES<br><br>1. Unfair Competition Law [Cal. Bus. & Prof. Code § 17200 et seq.]<br>2. Fraudulent Concealment; and<br>3. Breach of Implied Warranty<br><br>Demand for Jury Trial |

Plaintiff SPARKS LANDEN ("Plaintiff"), on behalf of himself and a class of all other similarly situated persons defined below, demands a trial by jury and hereby complains and alleges upon information and belief, except for paragraphs that pertain to Plaintiff or Plaintiff's attorneys, as follows:

## NATURE OF ACTION

1. For decades, Electrolux Home Products, Inc. ("Electrolux") has distributed,

1


manufactured, and/or sold top-loading washing machine and laundry centers including General Electric (GE), Kenmore, and Frigidaire branded appliances that share a common water level pressure system design (collectively, "Washing Machines").

2. The Washing Machines have a common defect that causes Washing Machines to overflow and flood due to the disconnection of an air hose that occurs under normal and reasonably expected appliance use during the typical lifetime of the appliance ("Design Defect"). More specifically, the Washing Machines contain an inadequate length and/or inadequate strain relief of the air hose where the air hose connects to the air dome. The design fails to account for motion of the Washing Machine tub that occurs during normal and reasonably expected operation and/or use. The inadequate length and/or inadequate strain relief of the air hose causes an increase in tension on the connection of the air hose to the air dome during operation of the Washing Machine. Over time, the repeated tension loading events cause the air hose to disconnect from the air dome. Once the air hose is disconnected, the water level pressure switch can no longer sense the water level (water pressure) within the Washing Machine tub. Consequently, disconnection of the air hose results in overflow, leak and/or water-loss. The appliance design should have been implemented such that it can withstand normal and expected consumer uses and scenarios without resulting in catastrophic water-loss failures.

3. This case seeks the cost to repair the Design Defect. This case is based on Electrolux's breach of an implied warranty of fitness by its distribution, manufacture, and/or placement into the stream of commerce the Washing Machines in a condition that created an unreasonable risk of harm and constituted a danger to the public including Plaintiff and the Class, defined below. The Washing Machines had the potential to overflow and indeed did overflow in certain instances due to the Design Defect. Moreover, when the Washing Machines did indeed overflow, they caused property damage and personal injury. With the design defect left unrepaired, the Washing Machines have the potential at all times to overflow, which can lead to catastrophic injury and enormous property damage.

First Amended Class Action Complaint

4. Electrolux's failure to disclose the Design Defect constitutes a violation of, *inter alia*, common law fraud, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.  *See In Re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practices of Prod. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010)

5. Electrolux advertised, *inter alia*, the Washing Machines to be safe, of good quality free from defects, and that they would perform in their reasonably expected operation and/or use for their full useful lives.

6. According to a 2007 study by the National Association of Homebuilders and Bank of America Home Equity, the useful expected life of a washing machine is 10 years.  On information and belief, Washing Machines manufactured by Electrolux fail years before their useful expected life due to the Design Defect.  For example, Plaintiff is informed and thereon believes that a single expert has inspected approximately 40 Washing Machines that failed within 7 years of purchase.

7. The damages each and every member of the Class, defined below, has sustained is easily quantifiable - it is the cost of repair to eliminate the Design Defect and thereby eliminate the hazard and potential risk of harm each Washing Machine creates each and every time the Washing Machine is operated.  This cost is essentially uniform for each Washing Machine.  Importantly, in the instant case, the harm caused by the Design Defect occurs during the normal and intended use of the Washing Machine and indeed without any improper or inappropriate usage of the Washing Machine.  The nature of the Design Defect causes the harm herein described.

## JURISDICTION AND VENUE

8. Plaintiff brings this action to seek equitable relief, restitution, and other relief available at law or in equity on behalf of Plaintiff, the members of Class (defined below). Plaintiff and the Class assert no claims under federal law. The amount in controversy for each named class representative is less than $75,000.00.

# PARTIES

9. Plaintiff is a citizen and a resident of Los Angeles County, California, and has previously purchased a number of Washing Machines manufactured, distributed, or sold by Electrolux as more particularly described below.

10. Plaintiff is informed and believes and thereon alleges that at least two-thirds of the members of the Class (defined below) are citizens of California.

11. Electrolux is a Delaware corporation, maintains its principal place of business at 10200 David Taylor Drive, Charlotte, North Carolina 28262, and does business in Los Angeles, California and elsewhere in California.  Electrolux markets, designs, manufactures, distributes, and/or sells its products, including Washing Machines, throughout the United States, including California.

12. The acts that this Complaint alleges were done by Electrolux and/or were authorized, ordered, or done by duly authorized officers, agents, employees, or representatives, while actively engaged in the management, direction, or control of such defendant's business or affairs.

# BACKGROUND FACTS

13. Electrolux holds itself out to the public as a manufacturer of safe consumer products including Washing Machines.  Electrolux is in the business of manufacturing, distributing and/or selling Washing Machines throughout the United States.  Indeed, it touts itself as a "global leader" in home appliances, selling more than 40 million products to customers in 150 countries on an annual basis.  By 2010, Electrolux was the world's second largest home appliance maker by market share.  Electrolux's core design message is "thinking of you", a pledge to Electrolux's customers that it pays a great deal of attention to detail when designing new products.

14. Electrolux manufactured, produced and/or distributed Washing Machines for sale by its network of stores and authorized dealers, including several leading retailers and/or appliance brands in the United States, such as GE, Kenmore, and Frigidaire.

15. In all of their advertising, Defendants failed to warn Plaintiff or any member of the Class (defined below) of the Washing Machines' Design Defect (described above).

16. Electrolux knew or should have known of the Washing Machines' Design Defect prior to distributing and/or selling them or placing them in the stream of commerce. Electrolux should have performed some form of expected failure analysis and/or failure consequence study in order to evaluate the Washing Machine's design.  Any type of reasonable potential or actual failure-mode-analysis of the Washing Machine would have identified numerous potential component failures in the Washing Machine that would result in water leaks, overflow, water-loss, and/or floods.  It is the responsibility of the manufacturer, through their design, testing, manufacturing, and prior equivalent design failure-mode analysis processes to design identified hazards out of the system and/or to implement an engineering safety device to prevent any and all of these reasonably foreseeable events.

17. Moreover, Electrolux knew or should have known of the Washing Machines' Design Defect prior to distributing and/or selling them or placing them in the stream of commerce due to the fact that the other end of the air hose that is the subject of the Design Defect contemplates adequate air hose strain relief.  More specifically, the upper connection of the air hose to the pressure switch contains additional length to the air hose in the form of a service loop, as well as a hose clip/clamp to prevent tension at the air hose connection to the pressure switch.  The fact that Electrolux contemplated an adequate air hose strain relief design at the upper connection in the very Washing Machine containing the Design Defect supports the fact that Electrolux knew and/or should have known that the lower connection from the air hose to the air dome failed to allow for sufficient strain relief and/or air hose length because it failed to include a service loop and/or hose clip/clamp in sufficient proximity to the air dome.

18. Moreover, Plaintiff is informed and believes that Electrolux has been aware of the Design Defect since at least 1990 due to the fact that Electrolux designed and applied for a patented safety device to prevent overflowing.  Plaintiff is informed and thereon

believes, the patented safety device is meant to prevent overflow when water level monitoring devices could no longer detect water level, the very failure created by the Design Defect. Plaintiff is informed and thereon believes that Electrolux received approval for its patent in 1992, yet never implemented the device, never informed its consumers of the availability of the device, and never informed consumers of the Design Defect that created a need for the device.

19. Moreover, Plaintiff is informed and thereon believes that Defendants were alerted to the Design Defect through various customer complaints and expert reports detailing the Design Defect and resultant personal injury (including, but not limited to a slip and fall) and property damage. Plaintiff is informed and thereon believes that Defendants have been made aware of many reported instances of the Design Defect that resulted in overflow and water loss from 2005 manufactured Washing Machines, including the very model purchased and owned by Plaintiff.

20. Despite its knowledge and/or constructive knowledge, Defendants: a) failed to notify consumers and/or complainants of the occasions of failure and/or Design Defect; b) failed to recall the Washing Machines; and c) failed to offer to replace the Washing Machines and/or the Washing Machine's defective parts. Moreover, despite its knowledge and/or constructive knowledge of the Design Defect, Defendants have failed to accept responsibility.

21. Plaintiff owns a 4 unit apartment building in Venice, California and purchased Washing Machines and/or was the intended beneficiary of the Washing Machines purchased for the units in the building from Carlsons Appliances, Inc. Plaintiff owns two Washing Machines manufactured in 2005. He purchased another Washing Machine in February of 2012.

22. The Design Defects contained in Electrolux's Washing Machines place Plaintiff and the Class in unreasonable risk of harm. Failure of the Washing Machine caused by the Design Defect can lead to the continuous flow of water into the appliance, resulting in overflow and increase risk of a potential for a slip/fall, electrocution, as well as the

potential to cause substantial damage to the property in which the Washing Machine is installed. Because the Washing Machine is estimated to deliver approximately 6 gallons of water per minute, in just 20 minutes, after a failure caused by the Design Defect, the Washing Machine can deliver up to 120 gallons of water.

23. The risk of harm to Plaintiff and the Class caused by the Design Defect, described above, is significant, recognizable, real, and demonstrable. The Design Defect, if not remedied, can result in enormous property damage caused by flooding, and the consequences of standing water, which indeed can affect all aspects of completed construction, from electrical work to the structural integrity of any given home or condominium. Moreover, this same Design Defect, if not remedied, can result in catastrophic personal injury, including significant orthopedic injuries and head injuries, caused by falls.

24. Upon learning of the Design Defect, Plaintiff fears his Washing Machines will fail and may cause severe personal injury and/or property damage. Plaintiff is forced to either repair his Washing Machines, replace his Washing Machines prior to realizing their full typical lives, or risk having multiple catastrophic water overflow events. The Design Defect of the Washing Machines prevented(s) Plaintiff and the Class from the enjoyment of the Washing Machines for the full typical life of the machine.

25. Plaintiff and the Class have been damaged, including but not limited, in an amount equal to the cost of repair to eliminate the unreasonable risk of harm.

26. Had Plaintiff and the Class known that the Washing Machines contain a Design Defect, they would not have purchased them at the price they paid.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

27. Plaintiff did not discover, and did not know of and did not have any suspicions of, facts that would have caused a reasonable person to suspect that he had suffered harm by Defendants' practice and policy of marketing, manufacturing, designing, and/or selling Washing Machines that contain a Design Defect. No reasonable consumer would even

suspect that the Washing Machines were prone to overflow with water. Even if a consumer learned that a Washing Machine overflowed with water, a reasonable and diligent investigation would not disclose the fact that the overflow was due to the Design Defect. Due to the complexity of the design, the information concealed by Electrolux, and the expertise required for analyzing information, a determination that the overflow was due to a defect in design, rather than misuse or user error, was beyond any reasonable and/or diligent investigation. The claims alleged herein accrued upon discovery of the latent defect of the Washing Machines and the Design Defect contained therein. Because the defect alleged herein is latent and because Defendants took steps to actively misrepresent and conceal the true character, nature, and quality of the Washing Machines, among other reasons, Plaintiff and the Class did not discover and could not have discovered the problems and defects alleged herein through a reasonable and diligent investigation.

28. Any applicable statutes of limitations have been tolled by Defendants' knowledge and actual misrepresentation, concealment, non-disclosure, and/or denial of the facts as alleged herein, a concealment that is ongoing. Plaintiff and the Class could not have reasonably discovered the true, latently defective nature of the Washing Machines. As a result of Defendants' active concealment of the defects and/or failure to inform Plaintiff and the Class of the defects, any and all statute of limitations otherwise applicable to the allegations herein have been tolled.

29. Alternatively, the facts alleged above give rise to an estoppel. Defendants have actively concealed the defective nature of the Washing Machines. Defendants were and are under a continuous duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Washing Machines, particularly that they posed a serious water overflow hazard and risk of failure. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively misrepresented, concealed and failed to disclose the true character, quality, and nature of the Washing Machines. Given Defendants' failure to disclosure this non-public information about the defective nature

of the Washing Machines – information over which Defendants have exclusive control – and because Plaintiff and the Class could not reasonably have known that the Washing Machines were thereby defective, Plaintiff and the Class reasonably relied on Defendants' knowing affirmative and/or ongoing concealment. Based on the foregoing, Defendants are estopped from prevailing on any statute of limitations defense in this action.

30. In October of 2012, Plaintiff discovered the latent Design Defect through a conversation with one of his tenants, who fortuitously happened to be in position to know of the Design Defect. Plaintiff's tenant is an attorney whose client owned a Washing Machine that overflowed and flooded causing significant damage. Prior to this conversation with his tenant, Plaintiff had no knowledge of the Washing Machine's propensity for overflowing and flooding; he had no knowledge of any problems with the air hose's connection to the air dome; and he had no knowledge that he paid more than he should have paid for his Washing Machines with the Design Defect. In fact, because he had no knowledge of the Washing Machine's propensity to overflow and flood, approximately seven months prior to the conversation, he purchased his 2012 Washing Machine with the same Design Defect. Moreover and more importantly, at no time prior to the above referenced conversation, wherein Plaintiff was provided for the first time notice of the Design Defect, could Plaintiff had reasonably or otherwise been expected to discover the Design Defect. This is true, for absent experiencing overflow neither this Plaintiff nor any plaintiff would ever be on notice and able to ascertain the Design Defect in the Washing Machine. Plaintiff had no suspicion that he was injured, let alone knowledge of facts that would have lead him, upon reasonable diligence, to discover the Design Defect. It was only until a serendipitous conversation with his tenant that Plaintiff became aware of the Design Defect.

## CLASS ACTION ALLEGATIONS

31. In addition to prosecuting this action pursuant to California Business & Professions Code section 17204, Plaintiff brings this class action pursuant to the provisions of Federal Rule of Civil Procedure 23.

32. Plaintiff brings this action on behalf of the following Class: All persons, sole proprietorships, partnerships, corporations, or any other entity located within California who own a washing machine or laundry center manufactured by Electrolux that contains the identical air hose routing and strain-relief features as the GE Model WSM2700 and Frigidaire Model FGX831CSI. Excluded from the Class are those who own Washing Machines that have already been repaired to correct the air hose routing and strain-relief features at Electrolux's expense. Also excluded from the class are those who own Washing Machines that have overflowed prior to four years from the filing of this complaint. Also excluded from the class are governmental entities, Electrolux, Electrolux's authorized dealers, and their parents, subsidiaries, affiliates, employees, officers, directors, and co-conspirators. Also excluded is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs (the "Class").

33. Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court or to propose sub-Classes.

34. Plaintiff does not know the exact number of Class members, because such information is in the exclusive control of Defendants. Due to the nature of the trade and commerce involved however, Plaintiff believes that the total number of class members is so numerous and geographically dispersed within the State of California that joinder of all class members is impracticable.

35. The proposed Class are ascertainable in that the members can be identified using information contained in Electrolux's records. The definition of the Class is sufficiently precise to allow Defendants to identify all brands and models that contain the Design Defect. While the precise names and addresses of the members of the Class are

presently unknown to Plaintiff, members of the Class can be notified of the pendency of this action through advertisements, Internet postings, electronic mail, and/or published notice. Through such notice, each member of the Class can determine their membership in the Class.

36. Defendants have acted with respect to the Class in a manner generally applicable to each member of the Class. There is a well-defined community of interest in the questions of law and fact involved in the action. The questions of law or fact common to the Class predominate over any questions affecting only individual members, including, but not limited to the following:

    a. whether the Washing Machines overflow due to a Design Defect;

    b. whether Defendants actually or constructively knew that the Washing Machines contained the Design Defect;

    c. whether Defendants had a duty to Plaintiff and the Class to disclose the Design Defect to Plaintiff and the Class before they purchased one or more Washing Machines;

    d. whether Defendants concealed and/or failed to disclose material facts concerning the nature and existence of the Design Defect to Plaintiff and the Class before they purchased one or more Washing Machines;

    e. whether Defendants' concealment, suppression and omissions had and have had a tendency to deceive, by either failing to disclose the existence of the defect exclusively known to Defendants, and unknown to Plaintiff and others or by misleading Plaintiff and the Class that the Washing Machines were safe and reliable and contained no serious defects;

    f. whether the Design Defect causes an unreasonable risk to the Class;

    g. whether Plaintiff and the Class have been damaged by the wrongs complained of herein and if so the measure of the cost of repair and the nature and extent of other relief that should be afforded.

37. The claims of Plaintiff are typical of the claims of the other members of the Class in that all members of the Class have been harmed in substantially the same way by Defendants' actions and their claims are based on the same legal theories surrounding the Design Defect.

38. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff is an adequate representative of the Class.

39. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

40. In view of the complexity of the issues and the expense that an individual plaintiff would incur if he or she attempted to obtain relief from a large, transnational corporation such as Electrolux, the separate claims of individual class members are monetarily insufficient to support separate actions. Because of the size of the individual class members' claims, few if any, class members could afford to seek legal redress for the wrongs complained of in this Complaint.

41. In the alternative, the Class should be certified because:

    a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

    b. The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to them, which would, as a

12
First Amended Class Action Complaint

practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interest; and

    c. Defendants have acted or refused to act on grounds generally applicable to the class, and /or the general pubic, thereby making appropriate final and injunctive relief with respect to the class as a whole.

42. The proposed Class fulfills the certification criteria of Federal Rule of Civil Procedure 23, and California Code of Civil Procedure section 382.

**FIRST CAUSE OF ACTION**
(Violation of the Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200 et seq.
against Electrolux)

43. Plaintiff incorporates each and every paragraph hereinabove alleged as though it were set fully forth in full here and now and to the extent necessary pleads this cause of action in the alternative.

44. Plaintiff brings this cause of action on behalf the Class pursuant to California Business & Professions Code section 17204.

<u>Fraudulent Prong</u>

45. Electrolux's actions described herein constitute fraud within the meaning of California Business and Professions Code section 17200 et seq. in that Electrolux has failed to disclose that the Washing Machines contain the Design Defect. Electrolux's failure to disclose the Design Defect was likely to mislead Plaintiff and the Class into believing that the Washing Machines were free from defect and safe to use.

<u>Unlawful Prong</u>

46. In addition, Electrolux's actions were unlawful and in violation of the implied warranty of merchantability, Cal. Civ. Code § 1792 et seq., California Civil Code sections 1572 (Actual Fraud-Omissions), 1573 (Constructive Fraud by Omission), 1710 (Deceit), along with the warranty provisions of the California Commercial Code, namely

California Commercial Code section 2314; implied warranties, and other California statutory and common law, including fraudulent concealment.

<u>Unfair Prong</u>

47. Electrolux's failure to disclose and concealment, as well as Electrolux's unlawful conduct as specified in paragraph 46, constitute unfair business practices under the Unfair Competition Law, and said actions violate the policy or spirit of the law or otherwise significantly threatens or harms consumers.

48. The unlawful, unfair, deceptive and/or fraudulent business acts and practices of Electrolux, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Electrolux as alleged herein, and/or be substantially injured by the Washing Machines.  Pursuant to California Business and Professions Code section 17203, Plaintiff and the Class seek an order of this Court enjoining Electrolux from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts set forth herein.  Plaintiff and other members of the general public have no other remedy of law that will prevent Electrolux's misconduct as alleged herein from occurring and/or reoccurring in the future.

49. Plaintiff and the Class also seek an order requiring Electrolux to make full restitution of all moneys it wrongfully obtained from Plaintiff and the Class with regard to it sales of its Washing Machines.  At a minimum Plaintiff and the Class are entitled to the cost of repair so that the Design Defect is removed and the potential for harm is eliminated.

50. Plaintiff suffered injury in fact by purchasing and/or paying substantially more for a Washing Machine and will now be required to remedy the Design Defect, described above, so as to avoid the distinct likelihood that he may suffer personal injury and/or property damage as a result of such Design Defect.

## SECOND CAUSE OF ACTION
(Fraudulent Concealment,
against Electrolux)

51. Plaintiff incorporates each and every paragraph hereinabove alleged as though it were set fully forth in full here and now and to the extent necessary pleads this cause of action in the alternative.

52. Electrolux advertised and/or marketed its Washing Machines to be safe, of good quality free from defects, and that they would perform in their reasonably expected operation and/or use for their full useful lives. Electrolux failed to disclose that its Washing Machines contained a Design Defect, as described above, and that the Design Defect posed a serious risk of personal injury. These facts were not known to Plaintiff and the Class.

53. Alternatively, Electrolux intentionally failed to disclose the fact that its Washing Machines contained a Design Defect, a fact that was only known to Electrolux, and Plaintiff and the Class could not have discovered it. Plaintiff is informed and thereon believes that Electrolux knew of the Design Defect from its performance of standard testing prior to placing the Washing Machines into the stream of commerce. In addition and/or alternatively, Plaintiff is informed and thereon believes that Electrolux knew of the Design Defect due to the fact that it designed the air hose connection to the pressure switch without the Design Defect. In addition and/or alternatively, Plaintiff is informed and thereon believes that Electrolux knew of the Design Defect due to its receipt of customer complaints and expert reports that described the Design Defect and resulting harm caused by the Washing Machine's failure.

54. Plaintiff and the Class reasonably relied and continue to rely upon Defendants to sell Washing Machines without a Design Defect that causes an unreasonable risk of harm, as described above. Electrolux knew or ought to have known that Plaintiff and the Class relied and/or continues to rely upon Electrolux to sell Washing Machines in which the entire lifetime of the appliance could be fully used without an unreasonable risk of harm.

15

First Amended Class Action Complaint

55. Electrolux's knowledge that its Washing Machines contain a Design Defect combined with Electrolux's knowledge that Plaintiff and the Class relied or relies upon Electrolux to communicate the true state of facts relating to its Washing Machines creates a legal obligation on Electrolux's part to disclose to Plaintiff and the Class these facts. Electrolux is in a superior position to know the truth about, and the nature of, the Washing Machines.

56. Electrolux intended and intends to deceive Plaintiff and the Class by failing to disclose that the Washing Machines contain a Design Defect and are likely to fail in advance of their reasonably expected useful life and will result in significant water overflow with risk of personal injury.

57. Electrolux's failure to disclose the Design Defect and risk of harm was material. Plaintiff and the Class would not have purchased the Washing Machines had they known of the Design Defect and risk of harm, which is significant, recognizable, real, and demonstrable. The Design Defect if not remedied can result in enormous property damage caused by flooding, and the consequences of standing water, which indeed can affect all aspects of completed construction from electrical work to the structural integrity of any given home or condominium. Moreover, this same Design Defect, if not remedied, can result in catastrophic personal injury, including significant orthopedic injuries and head injuries, caused by falls.

58. Electrolux not only fraudulently concealed the fact that the Washing Machines contain a Design Defect, but it provided erroneous information regarding the expected lifetime of the Washing Machines. Had Plaintiff and the Class known that they were purchasing only half the typical life of a Washing Machine, they would never have paid the price they paid for the Washing Machines or they would have never paid for the Washing Machines in the first place.

59. Plaintiff and the Class were harmed. As a proximate result of Electrolux's conduct as set forth in this cause of action, Plaintiff and the Class will now be required to remedy the Design Defect, described above, so as to avoid the distinct likelihood that they may

suffer personal injury and/or property damage as a result of such Design Defect. In addition, Plaintiff and the Class members have suffered damages, which include, but are not limited to the cost to repair the Design Defect.

60. Electrolux's concealment was a substantial factor in causing that harm.

61. The wrongful conduct of Electrolux, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious, and/or in conscious disregard for the well being of Plaintiff and the Class along with other members of the public that may be personally injured by a failure of the Washing Machines caused by the Design Defect. Defendants intended to cause injury to the Plaintiff and the Class placing profits over safety. Defendants engaged and continue to engage in despicable conduct with a willful and conscious disregard of the rights or safety of others. Defendants subjected, and continue to subject, Plaintiff and the Class to cruel and unjust hardship. Accordingly, Plaintiff and Class members are entitled to an award of punitive damages against Defendants in an amount to deter it from similar conduct in the future.

**THIRD CAUSE OF ACTION**
(Breach of Implied Warranty
against Electrolux)

62. Plaintiff incorporates each and every paragraph hereinabove alleged as though it were set fully forth in full here and now and to the extent necessary pleads this cause of action in the alternative.

63. Electrolux is in the business of selling Washing Machines and other home appliances.

64. Privity exists between Plaintiff and the Class and Electrolux due to the fact that Plaintiff and the Class were intended beneficiaries of the contract between the Electrolux and its distributors, retailers, and/or other parties that purchased the Washing Machines from Electrolux. Electrolux's distributors, retailers, and/or other parties that purchased the Washing Machines from Electrolux were not intended to be the ultimate consumers of the Washing Machines.

65. Electrolux impliedly warranted that the Washing Machines were reasonably safe

1 for their intended use by placing them into the stream of commerce.

2 66. The Washing Machine is not merchantable due to its Design Defect, as set forth above, and is in breach of the implied warranty of merchantability and fitness for a particular purpose.

67. The Washing Machine was not reasonably safe for its intended use when it left Electrolux's control and entered the market.

68. The Washing Machine's Design Defect was not apparent and obvious to Plaintiff and the Class.  Electrolux has not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer or exclusion of the same was and is ineffectual.

69. The Design Defect was known or should have been known to Electrolux at the time Plaintiff and the Class purchased their Washing Machines.

70. The presence of the Design Defect and Electrolux's failure to warn consumers of it constitutes a breach of both implied and express warranties.

71. Defendants have had opportunities, as set forth above, to remedy the Design Defects and have failed to do so.

72. As a result, Plaintiff and the Class have been damaged in an amount to be proven at trial, including attorney fees and expenses.  The Design Defect, if not remedied, has resulted in enormous property damage caused by flooding, and the consequences of standing water, which indeed can affect all aspects of completed construction, from electrical work to the structural integrity of any given home or other abode.  Moreover, this same Design Defect, if not remedied, can result in catastrophic personal injury, including significant orthopedic injuries and head injuries, caused by falls.  As a proximate result of Electrolux's conduct as set forth in this cause of action, Plaintiff and the Class will now be required to remedy the Design Defect, described above, so as to avoid the distinct likelihood that they may suffer personal injury and/or property damage as a result of such Design Defect.  The cost to remedy the Design Defect, which is in

effect the cost of repair, is the cost Plaintiff and the Class will incur so as to remedy the Design Defect, described above.

**WHEREFORE**, Plaintiff, individually and on behalf of all those similarly situated, respectfully requests that this Court enter judgment as follows:

1. An order certifying this case as a class action;
2. Appointment of plaintiff as the Class representative and his counsel as counsel for the class;
3. For equitable relief;
4. For restitution;
5. For restitutionary disgorgement;
6. For declaratory relief;
7. For injunctive relief,
8. For compensatory damages;
9. For actual damages;
10. For consequential damages;
11. For unjust enrichment including legal restitution;
12. For pre- and post-judgment interest as allowed by law;
13. For reasonable attorneys' fees and costs of suit; and
14. For such other and further relief that this Court may deem just and proper.

Dated: May 20, 2013                     RINGLER & ASSOCIATES

                                        By: _____
                                            Jerome L. Ringler
                                            Catherine Burke Schmidt
                                            Attorneys for Plaintiff

Dated: May 20, 2013                     LAW OFFICES OF MICHAEL S. RAPKIN

                                        By: _____
                                            Michael S. Rapkin
                                            Scott B. Rapkin
                                            Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: May 20, 2013

RINGLER & ASSOCIATES

By: _____
Jerome L. Ringler
Catherine Burke Schmidt
Attorneys for Plaintiff

Dated: May 20, 2013

LAW OFFICES OF MICHAEL S. RAPKIN

By: _____
Michael S. Rapkin
Scott B. Rapkin
Attorneys for Plaintiff