1  Jerome L. Ringler (State Bar No. 59918)
   E-mail: jlr@ringlerandassociates.com
2  Catherine Burke Schmidt (State Bar No. 212827)
   E-mail: cbs@ringlerandassociates.com
3  RINGLER & ASSOCIATES
   233 Wilshire Blvd., Suite 900
4  Santa Monica, CA 90401
   Tel:  310-955-4105/Fax:  310-955-4106
5
   Michael S. Rapkin (State Bar No. 67220)
6  E-mail: msrapkin@gmail.com
   Scott B. Rapkin (State Bar No. 261867)
7  E-mail: scottrapkin@rapkinesq.com
   LAW OFFICES OF MICHAEL S. RAPKIN
8  233 Wilshire Boulevard, Suite 700
   Santa Monica, CA 90401
9  Tel:  310-319-5465/ Fax:  310-319-5355

10 Attorneys for Plaintiff

11              UNITED STATES DISTRICT COURT

12    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13 SPARKS LANDEN, individually and      Case No.: CV13-01033-DSF (SHx)
14 on behalf of all others similarly situated,
                                         **PLAINTIFF'S NOTICE OF MOTION**
15        Plaintiff,                     **AND MOTION FOR CLASS**
                                         **CERTIFICATION**
16     v.
                                         [Filed concurrently with: Declaration of
17 ELECTROLUX HOME PRODUCTS,             Sparks Landen In Support Of Plaintiff's
   INC., a Delaware Corporation;         Motion For Class Certification; Declaration
18 CARLSONS APPLIANCES, INC. a           Of Jerome L. Ringler In Support Of
   California Corporation; and DOES 1    Plaintiff's Motion For Class Certification;
19 through 20, inclusive,                Declaration Of Michael S. Rapkin In
                                         Support Of Motion For Class Certification;
20        Defendant                      Declaration Of Catherine Burke Schmidt In
                                         Support Of Motion For Class Certification;
21                                       Request For Judicial Notice In Support Of
                                         Motion For Class Certification; and
22                                       Proposed Order Granting Class
                                         Certification]
23
                                         Hearing:
24                                       Date: June 30, 2014
                                         Time: 1:30 p.m.
25                                       Ctrm: 840

26                                       Trial Date:  None Set
                                         Scheduling Conf.: To Be Set Upon Ruling
27                                       Complaint Filed January 8, 2013

28

                                     1
                      Motion for Class Certification

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 30, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Dale S. Fischer in Courtroom 840 of the United States District Court for the Central District of California, located at the Edward R. Roybal Federal Building and U.S. Courthouse, U.S. District Court, Central District of California, 255 East Temple Street, Los Angeles, California, plaintiff SPARKS LANDEN ("Plaintiff") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure Rule 23 to certify the following class:

> All persons, sole proprietorships, partnerships, corporations, or any other entity located within California who own a freestanding top-load washing machine or a laundry center manufactured by Electrolux that contains an air hose and an air dome ("Washers").

Excluded from the Class are those who own Washing Machines that have already been repaired to correct the air hose routing and strain-relief features of the water level pressure system at Electrolux's expense.  Also excluded from the class are those who own Washing Machines that have overflowed prior to four years from the filing of this complaint.  Also excluded from the class are governmental entities, Electrolux, Electrolux's authorized dealers, and their parents, subsidiaries, affiliates, employees, officers, directors, and co-conspirators.  Also excluded is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs (the "Class").  This motion is made on the ground that all elements of Federal Rule of Civil Procedure 23 are satisfied.

Counsel for Plaintiff has had numerous conversations with counsel for defendant Electrolux Home Products, Inc. ("Defendant") about class certification, including, but not limited to, moving the deadline to file such a motion to allow more time for class certification discovery.  So too, counsel for Plaintiff and counsel for Defendant have agreed upon a briefing schedule relating to the filing of the instant motion and have

1    requested the Court to move the deadlines as a result.  *See, e.g.,* ECF No. 44.  This

2    motion is made following the conference of counsel pursuant to L.R. 7-3 that took place

3    on April 8, 2014.

4            This motion is based on this Notice of Motion, the Memorandum of Points and

5    Authorities filed herewith, the Declaration of Sparks Landen in Support of Plaintiff's

6    Motion for Class Certification, the declarations of Sparks Landen, Jerome L. Ringler,

7    Michael S. Rapkin, and Catherine Burke Schmidt and the exhibits attached thereto,

8    Plaintiff's request for judicial notice and the exhibits attached thereto, the entire court

9    file for this action and upon such other oral and documentary evidence as may be

10   presented at the time of the hearing of this motion.

11

12   Dated: April 11, 2013                    RINGLER & ASSOCIATES
                                              in association with
13                                            LAW OFFICES OF MICHAEL S. RAPKIN

14

15                                     By: _____

16                                            Jerome L. Ringler
                                              Catherine Burke Schmidt
17                                            Attorneys for Plaintiff Sparks

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................... 1

II.  STATEMENT OF FACTS ............................................................. 4

    A.   Background ........................................................................... 4

    B.   The Design Common To All Washers ................................. 5

III. LEGAL STANDARD .................................................................... 7

IV.  DISCUSSION ................................................................................ 9

    A.   Rule 23(a) .............................................................................. 9

        1.   Numerosity ................................................................... 9

        2.   Commonality .............................................................. 10

        3.   Typicality ................................................................... 12

        4.   Adequacy of Representation ...................................... 14

    B.   Rule 23(b)(3) ...................................................................... 14

        1.   Predominance ............................................................ 14

        2.   Superiority ................................................................. 22

V.   CONCLUSION ........................................................................... 23

1

## TABLE OF AUTHORITIES

2

3

**FEDERAL CASES**

4

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 615 (1997) ............................................................... 14, 15

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
  133 S. Ct. 1184, 1195-96 (2013). ...................................................... 15

*Bateman v. American Multi–Cinema, Inc.*,
  623 F.3d 708, 712 (9th Cir.2010). ........................................................ 8

*Blackie v. Barrack*,
  524 F.2d 891, 901 n.17 (9th Cir. 1975). ..................................... passim

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524, 535 (C.D.Cal. 2011) .................................................. 17

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017, 1025 (9th Cir. 2008). ............................................ 16, 17

*Cobb v. BSH Home Appliances Corp.*,
  2013 WL 1395690 (9th Cir. April 1, 2013) ........................................... 2

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013). ....................................................................... 2

*Delarosa v. Boiron, Inc.*,
  275 F.R.D. 582, 594 (C.D. Cal. 2011) ................................................. 17

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970, 981 (9th Cir. 2011). ..................................................... 10

*Gen. Tel. Co. of Nw., Inc v. EEOC*,
  446 U.S. 318, 330 (1980). ..................................................................... 9

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147, 157 n.13 (1982). .......................................................... 12

*Gossoo v. Microsoft Corp.*,
  2013 WL 5651271 at *2 (Case No. CV 13-2043 SVW)(C.D. Cal., Oct. 9, 2013). 8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1019 (9th Cir. 1998). ....................................... 10, 12, 14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497, 508 (9th Cir. 1992) ................................................... 12, 13

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*,
    722 F.3d 838 (6th Cir. 2013) ................................................... 2, 3, 10

*Keegan v. Am. Honda Motor, Inc.*,
    838 F.Supp. 2d 929, (C.D. Cal. 2012) ........................................... 11, 17

*Montanez et al. v. Gerber Childrenswear, LLC et al.*,
    2011 WL 6757875 at *2 (Case No. CV 09–7420 DSF (DTBx))(Dec. 15, 2011). 10

*Oestreicher v. Alienware Corp.*,
    322 Fed. Appx. 489, 493 (9th Cir. 2009) ........................................... 17

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580, 586-87, 596, 600 (C.D. Cal. 2008) ............................ 18

*Plascencia v. Lending 1^st^ Mortgage*, LLC,
    259 F.R.D. 437, 448 (N.D. Cal. 2009). ............................................ 16

*Rodriguez v. Hayes*,
    591 F.3d 1105, 1122 (9th Cir. 2010). ........................................ 7, 8, 10, 12

*Sears, Roebuck & Co. v. Butler*,
    727 F.3d 796 (7th Cir. 2013) ................................................... 2, 15, 22

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013, 1020 (9th Cir. 2011)
    *cert. denied*, 132 S.Ct. 1970 (U.S. 2012). ............................ 17, 20, 21, 22

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012)..................................................... passim

*Terrill et al. v. Electrolux Home Products, Inc. d/b/a Frgidaire*,
    753 F. Supp. 2d 1272 (S.D.Ga., October 11, 2013) (Case No. CV 108-030). ....... 2

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227, 1234 (9th Cir. 1996). .................................................... 7

*Valentino v. Howlett*,
    528 F.2d 975, 978 (7th Cir. 1976). .................................................... 9

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935, 944 (9th Cir. 2009) ................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
     131 S.Ct. 2541, 2550 (2011). ...................................................... 8, 10, 11

*Wolin v. Jaguar Land Rover North America, LLC,*
     617 F.3d 1168, 1173 (9th Cir. 2010). ........................................... 18

*Wolph v. Acer Am. Corp.,*
     272 F.R.D. 477, 447,481,489 (N.D. Cal. 2011) ........................... 18

*Yamada v. Nobel BioCare Holding AG,*
     275 F.R.D. 573, 578 (C.D. Cal. 2011)........................................... 17

*Yumul v. Smart Balance, Inc.,*
     733 F.Supp. 2d 1117, 1125 (C.D.Cal. 2010)................................. 16

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a) ................................................................... 4, 7, 8, 9

Fed. R. Civ. P. 23(a)(2) ............................................................ 10, 11, 14

Fed. R. Civ. P. 23(a)(3)................................................................... 12

Fed. R. Civ. P. 23(b)(1) .................................................................. 14

Fed. R. Civ. P. 23(b)(2), .................................................................. 14

Fed. R. Civ. P. 23(b)(3). ............................................... 4, 7, 12, 14, 15

Fed. R. Civ. P. 23(c)(1)). .................................................................. 8

**CALIFORNIA CASES**

*Anthony v. Gen. Motors Corp.,*
     33 Cal. App. 3d 699, 704-705 (1973).......................................... 21

*Committee on Children's Television v. General Foods Corp.,*
     35 Cal. 3d 197, 211, 197 Cal. Rpt. 783, 791 (1983)........................... 16

*Daugherty v. American Honda Motor Co., Inc.,*
     144 Cal. App. 4th 824, 838, 51 Cal. Rptr. 3d 118, 128-129 (2006) .................... 17

*Engalla v. Permanente Medical Group, Inc.,*
     15 Cal. 4th 951, 976-977 (1997) ................................................. 21

Motion for Class Certification

*Hicks v. Kaufman and Broad Home Corp.*,
    89 Cal.App.4th 908, 918 (2001).............................................................. 21

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 312 (2009).................................................................. 16

*Mass Mutual Life Ins. Co. v. Superior Court* ,
    97 Cal. App. 4th 1282, 1290 (2002)....................................................... 16

*Vasquez v. Superior Court*,
    4 Cal. 3d 800, 814 (1971).................................................................... 20

*Vega v. Jones, Day, Reavis & Pogue*,
    121 Cal. App. 4th 282, 292 (2004) ....................................................... 19


**CALIFORNIA STATUTES**

Cal. Bus. & Prof § 17200 et seq ....................................................................... 16

Cal. Civ. Code § 1710 ....................................................................................... 19

Cal. Civ. Code § 2314 ....................................................................................... 21

Cal. Civ. Code § 2315........................................................................................ 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

At the June 3, 2013 Scheduling Conference, the parties agreed to bifurcate discovery limiting it to class certification requirements only.  The Court set a date for the class certification motion and requested that counsel remind the Court at the hearing of the class certification hearing to set the trial schedule.  Therefore, in this motion, Plaintiff submits evidence in support of the class certification requirements, but relies on his allegations of the First Amended Complaint for support of the merits of the case.

This is a class action brought on behalf of people or entities in California who purchased certain clothes washing machines manufactured by defendant Electrolux Home Products, Inc. ("Defendant").  The case was originally filed in state court and was removed to this Court by Defendant.  Plaintiff claims that the washers contain a defect that can cause them to overflow, causing potentially severe property damage and possibly personal injury.  Plaintiff claims the defect is the result of a uniform design that is found in laundry centers and freestanding top-load washers.  The uniform design can be defined in terms of the connection of three parts in the water level pressure system:  the air dome; the air hose; and the pressure switch.  According to Defendant, all freestanding top-load washers and all laundry centers manufactured by Electrolux contain these parts.  Plaintiff claims the connection of the air hose to the air dome in the tub compartment and the connection of the air hose to the pressure switch in the console department are defective because they do not contain adequate air hose length and/or strain relief, such as a service loop and/or clamp.

Plaintiff has not experienced any overflows stemming from the alleged defect and his claims are not brought under product liability theories.  Instead, he claims that Defendant engaged in unfair, unlawful, and fraudulent business practices when it marketed the defective washers and breached an implied warranty of merchantability.  Plaintiff does not seek damages for harm caused by the manifestation of the defect.  Rather, he seeks the cost to repair the washer and damages related to concealment.

With an understanding of Plaintiff's claims, it becomes clear that the class action device is the best procedural method for resolving this litigation.  In fact, this motion comes on the heels of orders granting class certification in three separate cases concerning an alleged defect in washing machines.  *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) *appeal denied by Cobb v. BSH Home Appliances Corp.*, 2013 WL 1395690 (9th Cir. April 1, 2013); *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838 (6th Cir. 2013) ("*Whirlpool*"); *Sears, Roebuck & Co. v. Butler*, 727 F.3d 796 (7th Cir. 2013) ("*Sears*"). In addition, the Southern District Court in Georgia recently certified a class of California consumers for an alleged propensity-for-mold defect in front-load washers against <u>Defendant</u>.  *See Terrill et al. v. Electrolux Home Products, Inc. d/b/a Frgidaire*, 753 F. Supp. 2d 1272 (S.D.Ga., October 11, 2013) (Case No. CV 108-030).  On February 24, 2014, the United States Supreme Court denied certiorari petitions in the first three cases and remanded them for further review in light of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).  *See* Supreme Court 2013 Term Order List 02/24/14.  On remand, class certification was affirmed.  In *Sears*, the Court emphasized the "single, central, common issue of liability [was] whether the Sears washing machine was defective." *Sears*, 702 F.3d at 801.  The court further articulated: "A class action is the efficient procedure for litigation of a case such as this, a case involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit." *Id.* at 798.  In *Whirlpool*, the court wrote:

> [L]iability questions common to the Ohio class - whether the alleged design defects in the Duets proximately caused mold to grow in the machines and whether Whirpool adequately warned consumers about the propensity for mold growth – predominate over any individual questions.  As in *Amgen*, the certified liability class "will prevail or fail in unison."

1   *Whirlpool*, 722 F.3d at 859.

2       In the Central District of California, the Hon. David O. Carter issued a

3   comprehensive order granting certification of a California class of consumers who

4   owned front-load washers.  *Tait*, 289 F.R.D. at 471.  The claims were brought under the

5   UCL and breach of implied warranty.  *Id*.  Judge Carter concluded that:

6           the central predominating questions are whether:

7           (1) the Washers have a propensity to develop BMFO;

8           (2) Defendant knew that the Washers have a propensity to

9           develop BMFO;

10          (3) Defendant's omissions of the material fact that the

11          Washers have a propensity to develop BMFO was likely to

12          deceive a reasonable consumer;

13          (4) Plaintiffs and the rest of the classes are entitled to equitable

14          relief, including but not limited to restitution; and

15          (5) as a result of Defendant's conduct, Plaintiffs have suffered

16          damages and, if so, the proper amount thereof.

17  *Id*. at 474.

18      In this case, the central questions that predominate over any individual question

19  are almost identical to the questions raised in *Tait*.  They are:

20      (1)     Whether the washers have a propensity to overflow;

21      (2)     Whether Defendant knew that the washers have a propensity to overflow;

22      (3)     Whether Defendant's omissions of the material fact that the washers have a

23              propensity to overflow was likely to deceive a reasonable consumer;

24      (4)     Whether Plaintiff and the Class are entitled to equitable relief, including,

25              but not limited to, the cost of repair; and

26      (5)     Whether, as a result of Defendant's conduct, Plaintiff and the Class have

27              suffered damages and, if so, the proper amount thereof.

28

Plaintiff's Motion for Class Certification

1   As demonstrated below, admissible evidence supports finding that the Federal

2   Rules of Civil Procedure Rule 23(a) requirements of numerosity, commonality,

3   typicality, and adequacy of representation, along with the predominance and superiority

4   requirements under Rule 23(b)(3), have been satisfied.  Therefore, this Court should

5   grant this motion for class certification.

6   **II.   STATEMENT OF FACTS**

7       **A.   Background**

8       Plaintiff is a consumer who owns three clothes washers manufactured by

9   Defendant.  *See* Declaration Of Sparks Landen In Support Of Plaintiff's Motion For

10  Class Certification ("Landen Decl.") ¶ 3.  Defendant made certain disclosures, but failed

11  to warn Plaintiff of the risk of overflow.  *See id.* ¶¶ 3-4; *see also* Schmidt Decl. Ex. 5 at

12  124:12-21.  Defendant sold millions of washers without disclosing their alleged risk for

13  overflow during reasonably foreseeable use.  *See* Request for Judicial Notice In Support

14  of Plaintiff's Motion for Class Certification ("Req. J. Not") Ex. 2 (First Amended

15  Complaint ("FAC")) ¶ 2.

16      Plaintiff seeks to certify a class (hereinafter, the "Class") of: All persons, sole

17  proprietorships, partnerships, corporations, or any other entity located within California

18  who own a freestanding top-load washing machine or a laundry center manufactured by

19  Electrolux that contains an air hose and an air dome ("Washer").  Excluded from the

20  Class are those who own Washers that have already been repaired to correct the air hose

21  routing and strain-relief features of the water level pressure system at Electrolux's

22  expense.  Also excluded from the class are those who own Washers that have

23  overflowed prior to four years from the filing of this complaint.  Also excluded from the

24  class are governmental entities, Electrolux, Electrolux's authorized dealers, and their

25  parents, subsidiaries, affiliates, employees, officers, directors, and co-conspirators.  Also

26  excluded is any judge, justice or judicial officer presiding over this matter and the

27  members of their immediate families and judicial staff.

28

## B.     The Design Common To All Washers

At a minimum, based on the definition contained in the original complaint,[1] Defendant admits there are at least 24 models that utilize the same water level pressure system design with the underlined identical parts as the Washers owned by Plaintiff.  *See* Schmidt Decl. Ex. 2 ¶¶ 3-4; Ex. 3 ¶ 4.  According to Defendant, they distributed well over 300,000 machines in California.  *See id.* Ex. 2 ¶ 4.  Defendant also admits that it distributed its washers under different brand names including General Electric, Kenmore, and Frigidaire.  *See* Req. J. Not. Ex. 4 (Answer) at 1 ¶ 1.  Defendant has identified the models associated with this definition.  *See id.* Ex. 4 (ELUX 00018-27). During discovery in this case, it became apparent that estimate of 24 models and 300,000 machines excluded freestanding top-load Washers, and only included laundry centers.  *See id.* Ex. 5 at 44:16-46:12.  Defendant designated Carl D. King under Federal Rule of Civil Procedure 30(b)(6) to testify on the design of the air hose and its connection to the air dome and water level pressure switch.  *See id.* ¶ 2 Ex. 1.  Mr. King testified that the same analysis could be done as to freestanding top-loaders as was done with regard to the laundry centers in order to produce a report similar to ELUX 00018-27.  *See id.* at 49:19-51:25.  Defendants have agreed to identify all models of freestanding top-load Washers and laundry centers that contain an air hose and the air dome.[2]  To date, Defendant identified the models contained in ELUX 01041-01049.  *See id.* Ex. 9.  In summary, Electrolux testified as follows:

---

[1]  The original complaint defined the class as follows:  "All persons, sole proprietorships, partnerships, corporations, or any other entity located within California who own a washing machine or laundry center manufactured by Electrolux that contains the identical air hose routing and strain-relief features as the GE Model WSM2700 and Frigidaire Model FGX831CSI."  Req. J. Not. Ex. 1 (Notice of Removal Of Action Pursuant to 28 U.S.C. § 1453 Exhibit A (Class Action Complaint)) ¶ 36a.

[2]  On Feb 14, 2014, Plaintiff served Special Interrogatory No. 20 that requested Defendant to "state the brand name, model number, year of manufacture, years in which YOU manufactured the product, and the number of products sold each year since January 8, 2005" for each WASHING MACHINE it sold from January 8, 2005, to the present.  Schmidt Decl. Ex. 6 at 4:16-18; 6:17-19.  The definition of WASHING MACHINE was expanded to include all freestanding and top-load machines and laundry centers manufactured by Electrolux "that contain an AIR HOSE and an AIR DOME."  *Id.* at 2:20-22. In its response, Defendant stated "Electrolux will produce data listing the model numbers it sold during the relevant timeframe".  Schmidt Decl. Ex. 7 at 3:19-20.

Q:     …From '05 until the time you left[3], are you aware of
any freestanding top-loader washing machines
manufactured by Electrolux that did not have the design
componentry of an air hose connecting to the air dome
in the tub and pressure switch in the console?

[Objections]

The Witness:  No.  I am not aware of that.

By Mr. Ringler:

Q:     Same question with regard to laundry center, top-
loaders:  During '05 through the time you left
Electrolux, are you aware of any laundry center top-
loaders that did not have the design componentry
whereby an air hose connected to the air dome in the
tub and pressure switch in the console?

[Objections]

The Witness:  Outside of what we talked about, some of the
started using transducers.  The answer is no.

Schmidt Decl. Ex. 5 at 35:3-22; *see also* 43:19-44:13.  Mr. King also testified that there
were no changes to the air hose that affected its connection to the air dome or that
affected its connection to the pressure switch in either the freestanding top-load
machines or the laundry centers.  *See id.* at 77:8-79:6.  Mr. King further testified that
there were no known changes from 2005 to the present to the pressure switch that
affected its connection to the air hose in either the freestanding top-load machines or the
laundry centers.  *See id.* at 89:9-90:4, 97:12-98:3, 98:18-20, 102:5-15.  However, there
was a change in 2004 (prior to the class period) that reduced the size of diameter of the
nipple of the pressure switch where it connects to the air hose, making it <u>smaller</u>.  *See*

---

[3] Mr. King testified that he left Electrolux in November of 2013.  *See* Schmidt Decl. Ex. 5 at 17:5-6.

1    *id.* at 103:10-104:12.  Moreover, Defendant's testimony is that it always connects the air

2    hose to the air dome.  *See id.* at 94:3-9.

3        In this case, Plaintiff claims the Washers are defective because the air hose is of

4    inadequate length and/or has inadequate strain relief.  Req. J. Not. Ex. 2 (FAC) ¶ 2.  Mr.

5    King confirmed, on behalf of Defendant, that <u>the design of the Washers never contained</u>

6    <u>a service loop (defined as an extra length of hose which has a loop in it) either at the</u>

7    <u>connection of the air hose to the air dome or at the connection of the air hose to the</u>

8    <u>pressure switch in either the freestanding top-load machines or the laundry centers</u>.  *See*

9    Schmidt Decl. Ex. 5 at 110:24-111:12, 112:6-19, 116:23-117:15; Ex. 10 at 14.  Mr.

10   King also confirmed that while Washer models may have a length of air hose different

11   than other Washer models, <u>the design of the length of air hose did not change</u>.  *See id.* at

12   61:21-62:12, 108:19-109:7.

13   **III.    LEGAL STANDARD**

14       The party seeking class certification must first satisfy the four prerequisites of

15   Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation.

16   *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).  In addition to the

17   requirements of Rule 23(a), the class must satisfy one of the three provisions of Rule

18   23(b).  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  At this

19   stage of the proceedings, courts must accept the factual allegations in the complaint as

20   true.  *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  In fact:

21           neither the possibility that a plaintiff will be unable to prove

22           his allegations, nor the possibility that the later course of the

23           suit might unforeseeably prove the original decision to certify

24           the class wrong, is a basis for declining to certify a class which

25           apparently satisfies the Rule.  The district judge is required by

26           Fed.R.Civ.P. 23(c)(1) to determine "as soon as practicable

27           after the commencement of an action brought as a class action

28           . . . whether it is to be so maintained.

1   *Blackie,* 524 F.2d at 901 (citing Fed. R. Civ. P. 23(c)(1)).

2        A class certification motion requires a district court to conduct a "rigorous

3   analysis" that frequently "will entail some overlap with the merits of the plaintiff's

4   underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) ("*Wal-*

5   *Mart*").  Reconciling both the United States Supreme Court precedents and Ninth

6   Circuit precedents, California Central District Judge Stephen V. Wilson stated the

7   standard as follows:

8            Assessing commonality and typicality often require examining

9            the merits of a plaintiff's claims.  *Wal–Mart*, 131 S.Ct. at

10           2551-52.  This is necessary not to resolve the merits of those

11           claims, but to determine whether "examination of all the class

12           members' claims for relief will produce a common answer to

13           the crucial question [of liability]." *Id*. at 2552; *Marlo v.*

14           *United Parcel Service*, 639 F.3d 942, 949 (9th Cir.2011)

15           ("[A]lthough a decision on the merits is improper at the class-

16           certification stage, some inquiry into the substance of a case

17           may be necessary to determine whether commonality and

18           typicality requirements are met.").

19  *Gossoo v. Microsoft Corp.* 2013 WL 5651271 at *2 (Case No. CV 13-2043 SVW)(C.D.

20  Cal., Oct. 9, 2013).  The decision to grant or deny a motion for class certification is

21  committed to the trial court's broad discretion. *Bateman v. American Multi–Cinema*,

22  *Inc.,* 623 F.3d 708, 712 (9th Cir.2010).

23       As demonstrated below, the requirements of Rule 23 of the Federal Rules of Civil

24  Procedure are met, allowing this Court to certify the proposed class. *Cf. Rodriguez*, 591

25  F.3d at 1122.

26

27

28

## IV.   DISCUSSION

### A.   Rule 23(a)

#### 1.   Numerosity

Under Rule 23, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of Nw., Inc v. EEOC*, 446 U.S. 318, 330 (1980).  But, "a conclusory allegation that a class is so numerous that joinder is impracticable is not sufficient to meet the requirements of Rule 23(a)(1)." *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976).

In this case, the proposed class is sufficiently numerous to support certification. Here, the class is defined in terms of persons or entities in California who own Washers manufactured over a several year time period.  Defendant does not deny that this is likely to include many thousands of consumers. *See* Schmidt Decl. Ex. 2 ¶ 4 ("After reviewing Electrolux's sales records, I have determined that it has sold well over 300,000 of those additional models in California since January 1, 2008.")  Moreover, Defendant has identified at least 300 models that have the water level pressure system design with an air hose and an air dome. *See id.* Ex. 9.

In addition, ascertainability of the class is met by objective means.  If a prospective class member owns a Washer, class membership can be determined. Indeed, "Electrolux admits that every new washing machine and/or laundry center that it manufactures is fitted with a model/serial plate at the time it leaves the factory.  The model/serial plate, in turn, lists the model and serial number for that particular machine."  Schmidt Decl. Ex. 8 at 2:11-15, 3:5-9.  Therefore, once Defendant identifies all models of Washers[4], class members will be able to determine whether they own a Washer that is included in this case through an examination of the model/serial plate

---

[4]  To date, Defendant has identified the models listed on documents bates labeled ELUX 00018-27 and ELUX 01041-49. *See* Schmidt Decl. Exs. 4 & 9.

1  affixed to the Washer.  For those members of the Class that have their Washer, their

2  membership in the class is ascertainable by objective means.  *Cf. Montanez et al. v.*

3  *Gerber Childrenswear, LLC et al.*, 2011 WL 6757875 at *2 (Case No. CV 09–7420

4  DSF (DTBx))(Dec. 15, 2011).

5              **2.    Commonality**

6          Rule 23(a)(2) requires that there be "questions of law or fact common to the

7  class."  "The commonality requirement serves chiefly two purposes: (1) ensuring that

8  absentee members are fairly and adequately represented; and (2) ensuring practical and

9  efficient case management."  *Rodriguez*, 591 F.3d at 1122 (internal quotation marks

10  omitted).  Courts look for "shared legal issues or a common core of facts."  *Id.*  It is

11  unnecessary for both to be present.  *Id*.  Where diverging facts underlie the individual

12  claims of class members, courts consider whether the issues "at the heart" of those

13  claims are common such that the class vehicle would "facilitate development of a

14  uniform framework for analyzing" each class member's situation.  *Id*. at 1123.  The

15  class claims "must depend on a common contention," which "must be of such a nature

16  that it is capable of classwide resolution – which means that determination of its truth or

17  falsity will resolve an issue that is central to the validity of each one of the claims in one

18  stroke."  *Wal-Mart*, 131 S.Ct. at 2551.  To demonstrate commonality, the "inquiry

19  focuses on whether a class action will generate common answers that are likely to drive

20  resolution of the lawsuit."  *Whirlpool*, 722 F.3d at 854.

21          The requirements of Rule 23(a)(2) have "been construed permissively," and just

22  one common question of law of fact will satisfy the rule.  *See Ellis v. Costco Wholesale*

23  *Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  "The existence of shared legal issues with

24  divergent factual predicates is sufficient, as is a common core of salient facts coupled

25  with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d

26  1011, 1019 (9th Cir. 1998).  "The commonality preconditions of Rule 23(a)(2) are less

27  rigorous than the companion [predominance] requirements of Rule 23(b)(3)."  *Id*.

28

More specifically, claims involving a common design make them amenable to common proof sufficient to meet the commonality requirement of Rule 23(a)(2).  *See Tait*, 289 F.R.D. at 474; *see also Keegan v. Am. Honda Motor, Inc.*, 838 F.Supp. 2d 929, (C.D. Cal. 2012) (commonality requirement met in case alleging irregular tire wear caused by defective rear suspensions because class claims involved the same alleged defect in vehicles of same make and model).

In this case, two primary questions that will produce in one stroke answers that are central to Plaintiffs' legal claims include:  1. whether the alleged design defect in the Washers proximately causes them to overflow; and 2. whether Defendant adequately warned consumers who purchased the Washers about the risk of overflow.  First, because the Washers contain the same alleged defect –an air hose with a propensity to disconnect from the air dome and from the pressure switch – the factual issue of whether the design is defective can be resolved on a class wide basis as to all Washers with the same design.  Second, because Defendant's failure to disclose the risk of overflow during reasonable use of the Washers is entirely based on Defendant's actions, the legal issue of whether Defendant had a duty to disclose the overflow risk, along with the factual issue of whether Defendant disclosed such risk is central to the disposition of this case and can be resolved on a class wide basis.

This case is not like *Wal-Mart* where the purported commonality was a lack of common control over a business practice.  *See Wal-Mart*, 131 S.Ct. at 2554-55 ("The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of *allowing* discretion by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices.").  In this case, the common facts – whether the design is defective and whether Defendant disclosed the risks associated with the defect – along with the shared legal issue of Defendant's duty to disclose, are sufficient to establish the commonality requirement.  However, as discussed below, further common

1   core facts and shared legal issues, including but not limited to a damage claim focused

2   on the cost of repair, support satisfaction of not only the less rigorous commonality

3   requirement, but also the predominance requirement of Federal Rule of Civil Procedure

4   23(b)(3).

5       **3.    Typicality**

6       The representative parties' claims or defenses must be "typical of the claims or

7   defenses of the class." Fed. R. Civ. P. 23(a)(3).  "[R]epresentative claims are 'typical' if

8   they are reasonably co-extensive with those of other class members; they need not be

9   substantially identical." *Hanlon*, 150 F.3d at 1020.  "Typicality refers to the nature of

10  the claim or defense of the class representative, and not to the specific facts from which

11  it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

12  1992) (internal quotation marks omitted).  The inquiry is "whether other members have

13  the same or similar injury, whether the action is based on conduct which is not unique to

14  the named plaintiffs, and whether other class members have been injured by the same

15  course of conduct." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).  Where

16  the claims of a representative are subject to unique defenses, they may fail the typicality

17  requirement. *Id*.  However, such defenses should defeat typicality "only where they

18  'threaten to become the focus of the litigation.'" *Rodriguez*, 591 F.3d at 1124 (quoting

19  *Hanon*, 976 F.2d at 508).  In practice, "[t]he commonality and typicality requirements of

20  Rule 23(a) tend to merge," and both serve to determine whether certifying the class

21  would be "economical" and whether absent class members' interests would be

22  protected. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

23      In this case, Defendant has identified certain models that contain an air hose and

24  an air dome in the water level pressure system.  *See* Schmidt Decl. Ex. 9.  These model

25  numbers are distributed under at least four different brand names:  GE; Kenmore;

26  Frigidaire; and Crosley.  *See id*.; *see also* Req. J. Not. Ex. 4 at 1 ¶ 1.  Plaintiff owns

27  three Frigidaire branded Washers:  two laundry centers (Frigidaire Model FGX813CS)

28  that were purchased in 2005; and one laundry center (Frigidaire FGX831FS) purchased

Plaintiff's Motion for Class Certification

1  in 2012.  *See* Declaration of Sparks Landed In Support of Plaintiff's Motion For Class

2  Certification ("Landen Decl.") ¶ 3.  Despite the fact that Plaintiff's Washers are

3  distributed under the Frigidaire brand, Plaintiff is typical of class members who

4  purchased Washers distributed under the other brand names; this is because the same or

5  similar course of conduct by Defendant is the basis of the class claims regardless of the

6  particular brand name under which the product was sold.  The defect is identical in each.

7  The manufacturer (Defendant) is identical in each.  Thus, the GE Model class members

8  and the Kenmore Model class members and Plaintiff have "the same or similar injury,"

9  based on conduct not unique to Plaintiff, and have "been injured by the same course of

10  conduct." *See Hanon*, 976 F.2d at 508.  The Models identified by Defendant all fit the

11  definition of "Washer" because they contain the same air hose connection to the air

12  dome in the water level pressure system regardless if they are branded as the GE Model

13  WSM2700 or the Frigidaire Model FGX831CSI.  There is no substantial difference

14  between the treatment of Frigidaire Model class members and GE Model class

15  members.  The point of naming specific models is not to suggest a distinction between

16  the models or their alleged defect, but between Defendant's customers that bought those

17  products and all of the other customers who are not members of the class at all.

18       The named Plaintiff is typical of the absent class members in all other meaningful

19  respects.  This case is about material omissions related to Defendant's Washers.

20  Plaintiff claims Defendant disclosed some facts in its advertising and in the manuals that

21  came with the Washers, but Defendant failed to disclose the risks of overflow to

22  Plaintiff just as Defendant failed to disclose the risks to every other class member.  *See*

23  Landen Decl. ¶¶ 3-7, Ex. 1; *see also* Req. J. Not. Ex. 2 ¶ 13-15.  There is no reason to

24  believe that the named Plaintiff would have paid any more or less attention to

25  representations (or lack thereof) made by Defendant.  While there may be evidence that

26  absent class members suffered more damages than many other class members because

27  their Washing Machines overflowed during the relevant time period, differences in

28  damages do not prevent class certification.  *Blackie*, 524 F.2d at 905.

### 4.      Adequacy of Representation

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  In evaluating the adequacy of representation, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

As discussed above, the named Plaintiff has no conflicts with the other class members because he owns three Washers without every being warned of the risks of overflow, just like the rest of the proposed class members.  *See* Landen Decl. ¶¶ 3-7.  Plaintiff received the same or substantially similar warnings as every other class member that were contained in the user manual, the operations manual, and the installation manual.  However, the manuals fail to contain any disclosures of a risk of overflow.  *See id.* Ex. 1.  Moreover, Plaintiff's proposed class counsel have no conflicts with the other class members and are well qualified to litigate this case.  *See* Declaration of Jerome L. Ringler*; see also* Declaration of Michael S. Rapkin.

### B.      **Rule 23(b)(3)**

Rule 23(b)(3) certification is "[f]ramed for situations in which 'class-action treatment is not as clearly called for'" as under Rule 23(b)(1) and (b)(2), "but where class suit may nevertheless be convenient and desirable." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotation marks omitted).  Two requirements must be met:  (1) common questions of law or fact must "predominate over any questions affecting only individual members," and (2) a class action must be the "superior" vehicle for litigating the controversy.  Fed. R. Civ. P. 23(b)(3).

### 1.      **Predominance**

The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a)(2) (*Amchem*, 521 U.S. at 624) and judicial economy is a "central concern."  *Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 944 (9th

---

14

Plaintiff's Motion for Class Certification

Cir. 2009).  The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623-24.  Despite this demanding standard, predominance is "readily met in certain cases alleging consumer fraud." *Tait*, 289 F.R.D. at 478.

Essentially, the predominance inquiry focuses on common questions that can be proved through evidence common to the class.  *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,* 133 S. Ct. 1184, 1195-96 (2013).  Courts look to the following factors:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).  However, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment."  *Blackie*, 524 F.2d at 905.

In this case, as to the first factor, where the cost of repair amounts to approximately $100/Washer, individual class members are not likely to even pursue their claims, let alone have any strong interest in controlling the litigation.  *See* Schmidt Decl. Ex. 2 ¶ 5; *Cf. Sears*, 702 F.3d at 798.  As to the second factor, Defendant has not advised Plaintiff of any other class actions on behalf of California residents against Electrolux for alleged defect and the omission at issue in this case.  *See id.* ¶ 12.  As to the third and fourth factors, shared legal issues and core common facts make concentration of the litigation of these claims desirable and the manageability of the claims feasible.  Indeed, in this case, the central questions that predominate over any individual question are almost identical to the questions raised in *Tait*.  *See Tait*, 289 F.R.D. at 474.  They are:

(1)    Whether the Washers have a propensity to overflow;

(2)    Whether Defendant knew that the Washers have a propensity to overflow;

(3)     Whether Defendant's omissions of the material fact that the Washers have a propensity to overflow was likely to deceive a reasonable consumer;

(4)     Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, the cost of repair; and

(5)     Whether, as a result of Defendant's conduct, Plaintiff and the Class have suffered damages and, if so, the proper amount thereof.

Analysis of Plaintiff's three causes of action in this case illustrates the desirability and manageability of this case as a class action.

### a)     Proving Plaintiff's Claim Under The UCL Resolves Issues of Law And Facts Common To The Class.

Under the UCL, a business practice is "fraudulent" within the meaning of California Business and Professions Code section 17200 et seq. if "members of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp.,* 35 Cal. 3d 197, 211, 197 Cal. Rpt. 783, 791 (1983); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). In fact, "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under [the UCL]." *Mass Mutual Life Ins. Co. v. Superior Court* , 97 Cal. App. 4th 1282, 1290 (2002) ("*Mass Mutual*"). Moreover, "deception" under the UCL is measured by the "reasonable person" standard. *See Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1025 (9th Cir. 2008). In sum, this liberal approach to the reliance inquiry under the UCL permits plaintiffs to prove a UCL violation by presenting "generalized evidence that Defendants' conduct was 'likely to deceive members of the public." *Plascencia v. Lending 1ˢᵗ Mortgage*, LLC, 259 F.R.D. 437, 448 (N.D. Cal. 2009); *Yumul v. Smart Balance, Inc.,* 733 F.Supp. 2d 1117, 1125 (C.D.Cal. 2010) ("California courts have held that reasonable reliance is not an element of claims under the UCL, FAL, and CLRA.").

More specifically, the plaintiff need not prove that any member of the public was <u>actually deceived</u>, that any member <u>reasonably relied</u> upon the fraudulent practice, or

that any member of the public sustained damages as a <u>proximate result</u> of the practice. *See Clemens,* 534 F.3d at 1026; *see also Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1020 (9th Cir. 2011) *cert. denied*, 132 S.Ct. 1970 (U.S. 2012).  As numerous California courts have stated, "[t]his objective test renders claims under the UCL ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product." *Tait*, 289 F.R.D. at 480; *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 535 (C.D.Cal. 2011).

In a postwarranty failure case, such as this, courts agree that an omission is actionable where a defendant has an affirmative duty to disclose.  *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 838, 51 Cal. Rptr. 3d 118, 128-129 (2006).  Indeed, "a violation of the UCL can be proved with common evidence regarding the nature of the design defect in question, the likely effect of the defect on [class products], its likely impact on [consumer] safety, what [Defendant] knew or did not know, and what it disclosed or did not disclose to consumers." *Keegan*, 284 F.R.D. at 534; *Yamada v. Nobel BioCare Holding AG*, 275 F.R.D. 573, 578 (C.D. Cal. 2011) ("[I]t is unlikely that a member of the putative class would have purchased the NobelDirect product without having been influenced by Defendants' uniform marketing claims.  Furthermore, it is reasonable to assume that no rational member of the putative class would have purchased and used the NobelDirect implant had he or she been aware of the alleged design defect"); *Delarosa v. Boiron, Inc*., 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("In addition, Defendant's arguments that it can present proof that Coldcalm worked for some individual class members goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product").

In this case, this Court has already recognized that Defendant conceded, "manufacturers have a heightened duty to disclose safety defects."  Req. J. Not. Ex. 3 at 3 ¶ 2 (*citing Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489, 493 (9th Cir. 2009) and Doc. No. 10 (Defendant Electrolux Home Products, Inc.'s: (1) Notice Of Motion

And Motion To Dismiss; (2) Memorandum Of Points And Authorities) at 13-14).[5] Plaintiff claims that the Washers have a design feature proven to lead to water overflow on countless prior occasions.  Plaintiff claims overflow can lead to catastrophic injury as a result of slips and falls, or as the result of electrocution.  *See* Req. J. Not. Ex. 2 (FAC) ¶ 20.  During the merits phase of this case, if Plaintiff can prove as to his Washers that the water overflow caused by the disconnection of the air hose from the air dome presents a safety risk, he will have proved it as to the entire class because his Washers and the Washers owned by the Class contain the same design.

Moreover, proof of Defendant's failure to disclose the Washers' propensity for overflow during reasonably foreseeable use and proof of Defendants failure to disclose the Washers' safety risk will be common to the entire Class because Defendant denies that the alleged defect even exists.  See Req. J. Not. Ex. 4 at 1 ¶ 2 (*citing* Req. J. Not. Ex. 2 ¶ 2).   To this day, Defendant has never advised the members of the public who purchase the Washers about the alleged inherent design defect.  *See id.; see also* Schmidt Decl. Ex. 5 at 124:12-21.  Thus, it is uncontested that this failure to disclose has existed from the manufacturing date of the first Washers in the class period until the present.  Based on the foregoing, common issues predominate such as whether Defendant was aware of the existence of the alleged defect, whether Defendant had a duty to disclose its knowledge, and whether it violated the UCL when it failed to do so. *See Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010).

---

[5] Notwithstanding Plaintiff's allegations that the alleged defect presents a safety risk, in ruling on this motion for class certification, the Court does not have to determine this issue.  The Court has only to find that issues of law and fact predominate over individualized inquiry when determining whether there is, indeed, a safety risk.  In fact, courts have certified UCL omissions claims without requiring proof of a safety hazard.  *See Tait*, 289 F.R.D. at 489 (*citing Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 586-87, 596, 600 (C.D. Cal. 2008); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 447,481,489 (N.D. Cal. 2011)).

**b)      Proving Plaintiff's Fraud Claim Resolves Issues And Facts Common To The Class.**

The Court has already recognized that Plaintiff adequately pleaded the fraudulent concealment claim.  The Court reasoned:

> Plaintiff alleges that Defendant was aware of a serious design flaw in the washers that could prevent them from serving their full useful life and had designed a fix for the problem but concealed these facts from the purchasers of the machines. Defendant argues that it did not have a duty to disclose a defect that would manifest outside of the warranty period, but it concedes that manufacturers have a heightened duty to disclose safety defects. (See Def. Mem. at 13-14 (citing *Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489, 493 (9th Cir. 2009))). While the alleged defect is not purely a safety defect, it is plausibly alleged to impact safety.  Flooding can hypothetically cause slips, electrical hazards, and other dangers.

Req. J. Not. Ex. 3 at 3 ¶ 2.

To trigger a duty to disclose under fraud, a defendant need only provide "information" which is likely to mislead in the absence of the disclosure of clarifying information.  *See, e.g.,* Cal. Civ. Code § 1710, subdivision 3 (defining deceit as including "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.")  To the same effect "[o]ne who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.'"  *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004).  As taught by *Vasquez*, what creates the classwide presumption of reliance in a common law fraud claim is the materiality of the concealed fact in light of the information actually disseminated, which is rendered misleadingly incomplete because of the fact not disclosed:  "It is sufficient

for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971).  The Ninth Circuit explained the same rule in terms of an omission rather than misrepresentation:

> This rule applies to cases regarding omissions or "failures to disclose" as well. *See McAdams v. Monier, Inc.,* 182 Cal.App.4th 174, 184, 105 Cal.Rptr.3d 704, 711 (2010) (holding that because of defendant's failure to disclose information "which would have been material to any reasonable person who purchased" the product, a presumption of reliance was justified); *Mass. Mut. Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282, 1293, 119 Cal. Rptr. 2d 190, 198 (2002) ("[H]ere the record permits an inference of common reliance.  Plaintiffs contend Mass Mutual failed to disclose its own concerns about the premiums it was paying and that those concerns would have been material to any reasonable person contemplating the purchase...." If proved, that would "be sufficient to give rise to the inference of common reliance on representations which were materially deficient.").

*Stearns*, 655 F.3d at 1022.

A fact is "material" for purposes of a fraud claim:

> [I]f a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question (Rest.2d Torts, § 538, subd. (2)(a); see also *Barnhouse v. City of Pinole* (1982) 133 Cal. App. 3d 171, 188, fn. 5 [183 Cal.Rptr. 881]), and as such materiality is generally a question of fact unless the 'fact misrepresented is

1
2
3

> so obviously unimportant that the jury could not reasonably
>
> find that a reasonable man would have been influenced by it.'
>
> (Rest.2d Torts, §538, com. e, p. 82.)

4
5
6
7

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-977 (1997).  In other words, reliance can be proven by the materiality of the omission and materiality is an objective inquiry and is generally subject to classwide proof.  *See Stearns*, 655 F.3d at 1022.

8
9
10
11
12
13
14
15

In this case, Plaintiff's claim for fraudulent concealment revolves around Defendant's omissions and whether it would be material to an objective consumer to know that Defendant's Washers contained risks for overflow during reasonably foreseeable use that could lead to personal injury and property damage.  Because the materiality of these omissions can be proven through an objective reasonable person standard, they are amenable to class wide proof.  Therefore, common issues of fact and law predominate over individualized issues in resolving the fraud cause of action, rendering concentration of these claims both desirable and manageable.

16
17

### c)     Proving Breach Of Implied Warranties Resolves Issues And Facts Common To The Class.

18
19
20
21
22
23
24
25
26
27
28

California Commercial Code section 2314, subdivision (2)(c) establishes an implied warranty goods sold "[a]re fit for the ordinary purposes for which such goods are used".  Cal. Civ. Code § 2314.  Section 2315 establishes an implied warranty "the goods shall be fit for [the] purpose" for which they are required.  Cal. Civ. Code § 2315.  "Breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product."  *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal.App.4th 908, 918 (2001); *see also Anthony v. Gen. Motors Corp.*, 33 Cal. App. 3d 699, 704-705 (1973).  The existence of a common inherent defect is a question of fact common to the class, which, if established, would support recovery on a breach of warranty theory.  *See id*.

Plaintiff's Motion for Class Certification

In this case, Plaintiff alleges that the Washers have an inherent defect – inadequate air hose length and/or strain relief of the water level pressure system – that results in a risk of water overflow.  FAC ¶ 2.  If Plaintiff can prove the existence of the inherent defect, it not only supports recovery under breach of warranty, but because the inherent defect is the same for all Washers, proof of its existence extends class wide.

### d)   Proving Damages Resolves Issues And Facts Common To The Class.

Defendant may argue that the analysis of damages may require individual determination under the non-UCL claims because it is likely that many of the class members got full use of their Washers without experiencing overflow and, therefore, were arguably damaged only in a nominal way.  However, it is well known that differences in damages will not prevent class certification.  *See Blackie*, 524 F. 2d at 905.  Further, upon successful litigation of the UCL claim, class members can recover restitution without individualized showings of injury other than the purchase of the Washers.  *See Stearns*, 655 F.3d at 1020-21.  In this case, Plaintiff seeks restitution under the UCL in the form of cost of repair, which is easily quantified on a class wide basis.

### 2.   Superiority

As stated in *Sears*, a "class action is the efficient procedure for litigation of a case such as this, a case involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit."  *Sears,* 702 F.3d at 798.

In this case, Defendant estimated the cost of repair at around $100.  *See* Schmidt Decl. Ex. 2 ¶ 5.  On an objective basis, $100 is not large enough to justify the expense of an individual suit.  It is less than the fee associated with filing a complaint.  While Defendant may offer to repair and indeed did repair Washers of consumers that complained, there is no evidence that Defendant publicized any recall or that any meaningful number of the proposed class members are aware of the defects in their

Washing Machines or the ability to have their Washers repaired at Defendant's expense. Such a "silent recall" is not superior to a class action because it gives no assurance that harmed class members will be aware of the problem or the offered remedy.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiff requests that the Court certify the class and appoint Plaintiff Sparks Landen as class representative and Ringler & Associates and the Law Offices Of Michael S. Rapkin as class counsel.  Plaintiff further requests that the Court order the parties to meet and confer on the best practicable means to provide notice to the Class.  Finally, Plaintiff requests that this Court set a scheduling conference to set a trial date and related case management deadlines.

Dated: April 11, 2014                                RINGLER & ASSOCIATES
                                                     in association with
                                                     LAW OFFICES OF MICHAEL S. RAPKIN


                                          By: _____
                                                     Jerome L. Ringler
                                                     Catherine Burke Schmidt
                                                     Attorneys for Plaintiff Sparks Landen