1  **HUNTON & WILLIAMS LLP**
Phillip J. Eskenazi (SBN 158976)
2  peskenazi@hunton.com
Neil K. Gilman (admitted *pro hac vice*)
3  ngilman@hunton.com
Jason J. Kim (SBN 221476)
4  kimj@hunton.com
550 South Hope Street, Suite 2000
5  Los Angeles, California  90071-2627
Telephone:  (213) 532-2000
6  Facsimile: (213) 532-2020

7  Attorneys for Defendant
ELECTROLUX
8  HOME PRODUCTS, INC.

9           **UNITED STATES DISTRICT COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12  | SPARKS LANDEN, individually and on behalf of all others similarly situated, | CASE NO.: CV13-01033-DSF (SHX) |
13  | | **DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S OPPOSITION TO PLAINTIFF SPARKS LANDEN'S MOTION FOR CLASS CERTIFICATION** |

Plaintiff,

v.

Date:     June 30, 2014
Time:    1:30 p.m.
Crtm.:   840

ELECTROLUX HOME PRODUCTS, INC., a Delaware Corporation; CARLSONS APPLIANCES, INC., a California Corporation; and DOES 1 through 20, inclusive,

*[Declarations of Carl D. King, Matthew Cribb, Shawn Hayes and Jason J. Kim filed concurrently herewith]*

Defendants.

Complaint filed:      January 8, 2013

*(left margin, vertical)* **Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................. 4

    A.      Plaintiff's Claims And The Proposed Class Definition ........................... 4

    B.      The Realities Concerning The Alleged Classwide Problem .................... 5

    C.      The Sweeping Class Of Washing Machines At Issue And The
        Differences Among Them ................................................................ 6

    D.      The Named Plaintiff ...................................................................... 8

III.    PLAINTIFF CANNOT PROVE THIS CASE MEETS ALL CLASS
       CERTIFICATION REQUIREMENTS ................................................ 9

    A.      Plaintiff Has Failed To Prove Either Commonality Or
        Predominance ............................................................................ 10

        1.      Plaintiff Fails To Establish That Any Actual Defect Was
           Common To The Class ........................................................ 10

        2.      Without Expert Evidence, Plaintiff Cannot Prove Any
           Alleged Injury Emanates From A Common Root Cause ............. 12

        3.      Plaintiff Has Failed To Prove The Existence Of A Common
           Unified "Water Level Pressure System," Much Less That
           Common Questions Will Predominate ...................................... 13

        4.      Individualized Issues Regarding The Materiality Of
           Electrolux's Alleged Omissions Will Predominate .................... 16

        5.      Individualized Issues Will Predominate With Respect To
           Whether The Washing Machines Are Merchantable .................. 18

    B.      Plaintiff Has Failed To Prove A Viable Classwide Damages Model ...... 19

    C.      Plaintiff Is Not Typical .................................................................. 21

    D.      Plaintiff Is Not An Adequate Representative ..................................... 22

    E.      Plaintiff's Proposed Class Is Not Ascertainable, And The Class
        Definition Is Flawed ..................................................................... 23

    F.      Plaintiff's Reliance On *Whirlpool*, *Sears* And *Tiet* Is Misplaced ........... 24

IV.     CONCLUSION ................................................................................. 25

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013)................................................................9

*Am. Honda Motor Co., Inc. v. Allen*,
   600 F.3d 813 (7th Cir. 2010) ....................................................13

*Arabian v. Sony Electronics, Inc.*,
   2007 WL 627977 (S.D. Cal. Feb. 22, 2007).......................12, 15

*Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*,
   2011 WL 5360074 (S.D. Cal. Nov. 3, 2011).............................20

*Bruce v. Harley-Davidson Motor Co., Inc.*,
   2012 WL 769604 (C.D. Cal. Jan. 23, 2012)..............................13

*Butler v. Mattel, Inc.*,
   2014 WL 764514 (C.D. Cal. Feb. 24, 2014) .............2, 11, 12, 25

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ...............................................24, 25

*Caro v. Procter & Gamble Co.*,
   18 Cal. App. 4th 644 (1993) ......................................................16

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013) ......................................................23

*Cholakyan v. Mercedes-Benz, USA, LLC*,
   281 F.R.D. 534 (C.D. Cal. 2012)...............................................14

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)........................................................passim

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ....................................................12

*Edwards v. Ford Motor Co.*,
   2012 WL 2866424 (S.D. Cal. June 12, 2012) ......................16, 17

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

ii

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................10, 12, 21

*Evans v. Lasco Bathware, Inc.*,
   178 Cal. App. 4th 1417 (2009) ................................................................23

*Forrand v. Federal Exp. Corp.*,
   2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) ..........................................20

*Granfield v. NVIDIA Corp.*,
   2012 WL 2847575 (N.D. Cal. July 11, 2012) ......................................21, 22

*Guido v. L'Oreal, USA, Inc.*,
   2013 WL 3353857 (C.D. Cal. July 1, 2013) ............................................20

*Hammond Enters. v. ZPS Am. LLC*,
   2013 U.S. Dist. LEXIS 155135 (N.D. Cal. Oct. 29, 2013) ......................20

*Hayes v. Wal-Mart Stores, Inc.*,
   725 F.3d 348 (3rd Cir. 2013) ..................................................................23

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
   177 F.R.D. 360 (E.D. La. 1997) ..............................................................23

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV*
   *Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ..............................................18, 19

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Products*
   *Liab. Litig.*,
   288 F.R.D. 445 (C.D. Cal. 2013)......................................................11, 12, 25

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ..................................................................16

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ..............................................................24, 25

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
   285 F.R.D. 573 (E.D. Cal. 2012)......................................................16, 17, 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ............................................................................20

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iii

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ...................................................................................24

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................10

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 902 (7th Cir. 2012) ................................................................................10

*Murray v. Sears, Roebuck & Co.*,
   2014 WL 563264 (N.D. Cal. Feb. 12, 2014) ........................................21, 22, 24

*Oestreicher v. Alienware Corp.*,
   322 F. App'x 489 (9th Cir. 2009) .................................................................12, 19

*Portillo v. Aiassa*,
   27 Cal. App. 4th 1128 (1994) ..............................................................................22

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................24

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ...................................................................24, 25

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ....................................................................................14, 16

*Wang v. Chinese Daily News, Inc.*,
   709 F.3d 829 (9th Cir. 2013) ................................................................................10

*Webb v. Carter's, Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) ...................................................................16, 17

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ...............................................................24

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 (a) .................................................................passim

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

OPPOSITION TO
MOTION FOR CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Sparks Landen is a landlord who furnished the units in his building with washing machines built by Defendant Electrolux Home Products, Inc. ("Electrolux").  For nearly a decade, neither Plaintiff nor his tenants had any complaints with any of those machines.  He even replaced one that stopped working after seven (7) years (as consumer goods often do) with another Electrolux machine.

But then one of Plaintiff's tenants -- one of his lawyers in this lawsuit -- told him he recently had filed a lawsuit against Electrolux alleging that its machines were "defective," and suggested Plaintiff file a lawsuit.  Plaintiff did just that.  He hired his tenant and filed this class action lawsuit, claiming Electrolux fraudulently concealed an alleged "design defect" that supposedly causes its washing machines to overflow. And now, Plaintiff seeks to certify a class of all individuals in California who own an Electrolux washing machine, even though *neither he nor 99.99 percent of those individuals ever experienced the overflows and resulting damage he claims are certain to occur*.

Plaintiff has told the Court that Electrolux washing machines are "ticking time bombs" that can cause "catastrophic injuries" and "enormous property damage." Plaintiff has provided no evidence of these accusations.  And his own actions tell a different story.  After learning from his current lawyer about the allegedly dangerous washing machines, Plaintiff did absolutely nothing.  He didn't even warn his tenants. Instead, he continued to let them use these "ticking time bombs" at the risk of their injury, destruction of his property and lawsuits against himself.  Even Plaintiff's tenant/lawyer continued to use one of the supposedly "dangerous" machines.  It is evident that neither Plaintiff nor his lawyer really believe Electrolux washing machines are likely to fail or are all that dangerous.

The truth is that Electrolux's washing machines are not defective -- and they

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

certainly do not pose a risk of "catastrophic injuries." *Only 0.01 percent of putative class members have claimed any damages as a result of washing machine overflows --* even fewer attribute such overflows to the alleged defect of which Plaintiff complains. *And no one has ever claimed to have been hurt as a result of the alleged design defect.* In simpler terms, there is no proof of any classwide defect, just a few one-off claims that Electrolux washing machines have occasionally overflowed for disparate reasons.

This Court recently denied class certification in a similar case in which the plaintiffs alleged that a product had a "dangerous propensity" to grow mold.  In *Butler v. Mattel, Inc.*, 2014 WL 764514 (C.D. Cal. Feb. 24, 2014), the Court ruled that, without evidence the class suffered an injury that could be established with common proof, the proposed class was not "sufficiently cohesive to warrant adjudication by representation." *Id.* at *1.  The Court determined that the plaintiffs had failed "to establish that any actual defect was common to the entire class." *Id.*  Even accepting that "the [product] may develop mold under certain circumstances," the Court found that "there is no evidence that those circumstances were common across the class or even frequently experienced among the class." *Id.*

The evidence before the Court here weighs just as heavily against certification. Plaintiff has made no showing that Electrolux washing machines overflow under conditions of normal use.  Plaintiff's motion, therefore, can and should be denied under this Court's *Mattel* decision.  But the flaws in Plaintiff's motion do not end there.  Multiple, independently-sufficient reasons exist to deny certification:

*First*, Plaintiff cannot show that all of the machines at issue contain the same "water level pressure system," which Plaintiff defines as an air hose, an air dome and a pressure switch.  Electrolux has utilized twenty-three (23) different air hose lengths, made six (6) changes to the air dome schematics and built many machines without pressure switches.  Pressure switches themselves came in thirty-three (33) versions.

*Second*, Plaintiff has not and cannot show commonality amongst washing

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

2

machine models, much less that common questions will predominate with respect to whether a particular model is defective. That comes as no surprise given that Plaintiff seeks to lump 340 different washing machine models into the proposed class -- stacked laundry centers and freestanding top-loaders, gas and electric, high-efficiency and non-high-efficiency, and so on. Indeed, machines that are a decade (or more) old have been lumped into the same class as machines fresh off the assembly line.

*Third*, Plaintiff has submitted no expert evidence whatsoever, much less persuasive expert evidence establishing that any alleged propensity of a washing machine to overflow is attributable to a common root cause.

*Fourth*, Plaintiff wrongly assumes that individualized inquiries concerning materiality under his fraud theories can be presumed in his and the putative class' favor. But Plaintiff's assumptions are just that. He offers no proof. Electrolux, on the other hand, submits expert evidence showing that the materiality of the allegedly "concealed" information will vary from consumer to consumer, rendering certification of Plaintiff's fraud theories wholly inappropriate.

*Fifth*, individualized inquiries will predominate with respect to the implied warranty claim and whether a particular class member's machine is merchantable. Plaintiff's own situation is demonstrative. None of his machines have malfunctioned, and all have served their ordinary purpose of washing clothes.

*Sixth*, Plaintiff has failed entirely to prove the existence of a viable classwide damages model. His overly simplistic $100 per machine "cost of repair" formula -- aside from lacking any substantiation or connection to the alleged defect -- does not even track two of his three liability theories. And it does not work for the third.

*Seventh*, Plaintiff has failed to propose a sound methodology for ascertaining the identities of class members, and his class definition is flawed.

*Finally*, Plaintiff is not typical of the class, and he is an inadequate representative. He is a landlord who does not use his washing machines, and he

conducted no research before he bought them.  Even worse, his conduct demonstrates that the value of the allegedly "concealed" information is meaningless to him.  And he has limited the remedies he seeks in a misguided effort to obtain class certification, all at the expense of putative class members.

In the end, Plaintiff has failed entirely to meet his burden to prove that this case falls within the "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  His motion for class certification should be denied.

## II.   BACKGROUND

### A.   Plaintiff's Claims And The Proposed Class Definition

Plaintiff seeks to certify a class of all individuals in California who "own" an Electrolux washing machine with an air hose and an air dome (the "Washing Machines").  Notice of Motion & Motion, at 2:9-13.  That is a staggering number of machines -- approximately 240,000 Electrolux Washing Machines were sold into California since 2005.  Kim Dec., Ex. A (Hayes Depo), at 23:25-24:4.  This includes *340 different models* of Washing Machines.

Plaintiff contends that an "air hose" and an "air dome," when combined with a "pressure switch," comprise a unified "water level pressure system" that exists in all of Electrolux's Washing Machines, whether they are one or ten years old, a washer-dryer combo or a freestanding top-load washer, etc.  Motion, at 1:12-19.  According to Plaintiff, "the connection of the air hose to the air dome in the tub compartment and the connection of the air hose to the pressure switch in the console department are defective because they do not contain adequate air hose length and/or strain relief, such as a service loop and/or clamp."  *Id.* at 1:19-22.  Plaintiff claims each Washing Machine's design "fails to account for motion of the Washing Machine tub that occurs during normal and reasonably expected operation and/or use" -- stated differently, Plaintiff contends that the alleged "water level pressure system" cannot handle

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

4

1    vibrations, which in turn, causes the air hose to come loose and disconnect.  FAC ¶ 2.

2         As a result of that alleged defect, Plaintiff claims the Washing Machines are

3    substantially certain "to overflow, causing potentially severe property damage and

4    possibly personal injury."  Motion, at 1:12-14.  In fact, Plaintiff describes the Washing

5    Machines as "ticking time bombs, posing a significant safety risk to consumers."

6    Docket Entry No. 17 (Opp. to MTD) at 1:13-15.  Based on those allegations, Plaintiff

7    asserts unfair competition, fraudulent concealment and implied warranty claims.

8         Notwithstanding that Plaintiff claims that Electrolux allegedly concealed

9    material facts from *purchasers*, Plaintiff does not limit his proposed class definition in

10   kind; rather, he proposes a class that includes anyone who "owns" an Electrolux

11   Washing Machine.  Notice of Motion & Motion, at 2:9-13.  Accordingly, Plaintiff's

12   class definition is not even limited to individuals who bought an Electrolux Washing

13   Machine new; it includes individuals who received a Washing Machine as a gift or

14   became an "owner" when it conveyed with a house, as just two examples.

15   **B.**    **The Realities Concerning The Alleged Classwide Problem**

16        Throughout the course of this litigation, Plaintiff has taken extensive discovery

17   on the number of claims filed relating to overflows.  He deposed Electrolux's Risk

18   Claims Manager.  Kim Dec. ¶ 2.  He took discovery from Electrolux's claim files.  *Id.*

19   ¶ 3.  He obtained copies of any complaints alleging Washing Machine overflows

20   generally.  *Id.* ¶ 4.  In the end, the evidence showed that *only 0.01 percent of putative*

21   *class members* claimed damages as a result of alleged overflows.[1]  *And no one has*

22   *claimed to have been injured as a result of any alleged design defect.  Id.*  None of

23   that evidence appears in Plaintiff's motion.

24

25

26   _____

[1] The calculation is:  32 (number of claims)/240,000 (Washing Machines sold between
27   2005 and 2014) = 0.000133, or 0.01 percent.  Even if the numbers were multiplied by
     a magnitude of ten, the rate still would be a miniscule 0.1 percent.  Cribb Dec. ¶ 3;
28   Kim Dec., Ex. A (Hayes Depo), at 23:25-24:4.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

C.     **The Sweeping Class Of Washing Machines At Issue And The Differences Among Them**

Plaintiff contends that all of Electrolux's Washing Machines contain a "uniform design." *See*, *e.g.*, Motion, at 1:14.  As shown below, and as demonstrated by Electrolux's expert, this is wrong; there are many differences among Washing Machines relevant to Plaintiff's overflow theory.  Even the three (3) components on which Plaintiff focuses -- air hose, air dome and pressure switch -- vary widely:

*Differences in the alleged "water level pressure system" components*:

- Air hoses came in **twenty-three (23) different lengths** to accommodate different models.  King Dec. ¶ 2, Ex. A.  They also **differed in inner and outer diameters**.  Kim Dec., Ex. C (Rasty Report), at 11-12.

- Air domes schematics **changed six (6) times**.  King Dec. ¶ 2, Exs. B-D.

- Many Washing Machines do not even contain a pressure switch.  King Dec. ¶ 4.  Electrolux stopped using them in or around 2012.  *Id.*  And those that did utilized **thirty-three (33) different versions** of the pressure switch.  Kim Dec., Ex. B (King Depo), at 22:12-24.  Notably, key components of pressure switches **varied from metal to plastic** over time, materially impacting the connectivity of the air hose to the pressure switch.  Kim Dec., Ex. C (Rasty Report), at 12-13.

*Differences in vibration levels*:  To demonstrate a common defect, Plaintiff's theory requires that all Washing Machine models move the same and generate the same level of vibrations.  FAC ¶ 2.  They do not.  A comparison of five (5) models alone proves this.  Kim Dec., Ex. C (Rasty Report), at 13-17.

- *High-efficiency versus traditional*:  High-efficiency Machines have **differing spin speeds** than traditional Machines, and therefore, generate different vibration levels.  Kim Dec., Ex. C (Rasty Report), at 28-29.

- *Laundry centers versus freestanding top-loader machines*:  Given that stacked washer-dryer laundry centers are **significantly heavier** than

OPPOSITION TO
MOTION FOR CLASS CERTIFICATION

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

freestanding top-loader Machines, the vibration levels and profiles of the two types of Machines materially will differ.  Kim Dec., Ex. C (Rasty Report), at 29-30.

- *Vibration absorption systems*:  Different Machines have **different vibration absorption systems**, which materially impact the vibration levels that affect the connectivity of the air hose in different ways.  Kim Dec., Ex. C (Rasty Report), at 13-17.

- *Wash cycle lengths*:  Different Machines have **different wash cycle lengths**, which materially impact the vibration forces that affect the connectivity of the air hose in different ways.  Kim Dec., Ex. C (Rasty Report), at 31-32.

*Gas versus electric*:  Plaintiff claims the "connection of the air hose to the pressure switch in the console department [is] defective because [it] do[es] not contain … a service loop and/or clamp."  Motion, at 1:19-22.  But gas models like Plaintiff's in fact have a "clamp" on the air hose near the connection of the air hose to the pressure switch.  Kim Dec., Ex. C (Rasty Report), at 25.

*Differences in the connectivity of the air hoses to other components*:  Plaintiff contends that the air hose has a "propensity to disconnect from the air dome and from the pressure switch."  Motion, at 11:11-12.  But the connection of the air hose to various components within a Machine varies across models.

*First*, to prevent "tube slap" (*i.e.*, to prevent the air hose from rattling and slapping against the side of the washtub), certain Washing Machine models like Plaintiff's used a tape that fastened the air hose to the side of the washtub.  Kim Dec., Ex. C (Rasty Report), at 26-27 (photos).  On other models, the air hose is taped to the back panel of the Machine.  *Id.*  And placement of the tape matters.  *Id.* at 24.  Moreover, Electrolux used different types of tape -- with different adhesive qualities -- to fasten the air hose at different times.  King Dec. ¶ 5.  Application of the tape is a manual process; variations in placement, therefore, can be expected.  *Id.*

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Second*, Electrolux used a solvent to aid in the adhesion of the air hose to other components like the air dome or the pressure switch.  King Dec. ¶ 6.  But the solvent was applied manually during the manufacturing process.  *Id.  Even slight variations* in the application process (*e.g.*, amount of solvent used, length of time the air hose is dipped in the solvent, etc.) can alter the connectivity of the air hose to other components.  Kim Dec., Ex. C (Rasty Report), at 21-22 (test results).

### D.   The Named Plaintiff

Plaintiff is a landlord, "kitchen designer" and real estate agent.  Kim Dec., Ex. D (Landen Depo), at 17:20-25; 42:9-13; 106:11-15.  While Plaintiff's filings assert he is motivated primarily by "safety" when it comes to washing machines, he testified that he buys appliances based on "aesthetics," price, fit and features.  *Id.* at 34:10-22; 39:24-40:4; 104:4-23.  He never considered "safety."  Nor did he expect a washing machine to remain defect-free in perpetuity.  *Id.* at 68:5-18; 54:2-11; 60:12-20.

Plaintiff claims that his three (3) Electrolux Washing Machines are the same as all of the Washing Machines he seeks to lump into the putative class.  Plaintiff owns two (2) Frigidaire FGX831CS model stacked washer-dryer combo laundry centers that he bought in 2005, and one (1) FGX831FS model stacked washer-dryer combo laundry center that he bought in 2012.  Docket Entry No. 59 (Landen Dec.) ¶ 3.  Plaintiff has never used these Washing Machines and has no knowledge as to how his tenants have used them.  Kim Dec., Ex. D (Landen Depo), at 49:11-13.  He knows only that they have never malfunctioned.  Docket Entry No. 59 (Landen Dec.) ¶ 5.

Plaintiff originally bought three (3) Electrolux-manufactured Frigidaire laundry centers in 2005 from former defendant Carlsons Appliances, Inc. ("Carlsons").  Kim Dec., Ex. D (Landen Depo), at 93:24-94:1.  His only concern was finding machines that fit in his units, as well as price.  *Id.* at 94:24-95:21; 96:12-18.  He installed those Machines in three (3) of the four (4) units of an apartment building he owns in Venice, California.  *Id.* at 90:8-13.  Plaintiff conducted no research before he purchased the

OPPOSITION TO
MOTION FOR CLASS CERTIFICATION

1   Machines.  *Id.* at 114:2-22; 116:17-21.

2       Seven (7) years later, one of those Machines stopped working for reasons

3   unrelated to the alleged defect.  Kim Dec., Ex. D (Landen Depo), at 92:21-93:23.

4   Plaintiff bought *another* Machine because he understood that the old one was "out of

5   warranty." *Id.* at 88:8-18.  Plaintiff knew that, at the end of a warranty period, the

6   manufacturer no longer is responsible for repairs and that he could have bought an

7   extended warranty, but did not do so due to cost.  *Id.* at 88:19-90:7.

8       Plaintiff's lawyer lived in Plaintiff's apartment building.  Kim Dec., Ex. D

9   (Landen Depo), at 65:17-22.  In fact, Plaintiff's lawyer is the "tenant" who allegedly

10  told Plaintiff about the alleged defects in Electrolux's Washing Machines.  FAC ¶ 30.

11  After learning of this, Plaintiff did not warn his other tenants about these "dangers."

12  Kim Dec., Ex. D (Landen Depo), at 133:23-134:19.  Nor did Plaintiff tell them to stop

13  using the Machines for fear that the Machines would damage his apartment building.

14  *Id.*  Instead, Plaintiff had his tenants continue to use the Washing Machines long after

15  he filed this lawsuit -- right up until his lawyers finally took them into custody for

16  evidence preservation purposes the following year (and not because they posed a

17  "danger").  *Id.* at 71:1-73:13.

18  **III.   PLAINTIFF CANNOT PROVE THIS CASE MEETS ALL CLASS**

19  **CERTIFICATION REQUIREMENTS**

20      "The class action is 'an exception to the usual rule that litigation is conducted

21  by and on behalf of the individual named parties only.'"  *Comcast*, 133 S. Ct. at 1432.

22  Rule 23 does not "establish an entitlement to class proceedings for the vindication of

23  statutory rights" -- rather, it "imposes stringent requirements for certification that in

24  practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct.

25  2304, 2309-10 (2013).  Accordingly, "[p]arties seeking class certification bear the

26  burden of demonstrating that they have met each of the four requirements of Federal

27  Rule of Civil Procedure 23 (a) and at least one of the requirements of Rule 23(b)."

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9

1    *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).

2    Under Rule 23(b)(3), a plaintiff must show that "'questions of law or fact

3    predominate over any questions affecting only individual members.'" *Mazza v. Am.*

4    *Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting Fed. R. Civ. P.

5    23(b)(3)). "The predominance analysis under Rule 23(b)(3) focuses on 'the

6    relationship between the common and individual issues' in the case and 'tests whether

7    proposed classes are sufficiently cohesive to warrant adjudication by representation.'"

8    *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 835 (9th Cir. 2013) (quoting *Hanlon*

9    *v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "The main concern of the

10   predominance inquiry ... 'is the balance between individual and common issues.'" *Id.*

11   (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th

12   Cir. 2009)). While "[t]here is no mathematical or mechanical test for evaluating

13   predominance," courts have a duty "to take a close look at whether common questions

14   predominate over individual ones." *Messner v. Northshore Univ. HealthSystem*, 669

15   F.3d 902, 814 (7th Cir. 2012); *Comcast*, 131 S.Ct. at 1432.

16   The rigorous analysis necessary for class certification "will frequently entail

17   'overlap with the merits of the plaintiff's underlying claim.'" *Comcast*, 133 S.Ct. at

18   1432 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)). "That is

19   so because the 'class determination generally involves considerations that are

20   enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"

21   *Id.* Plaintiff's motion does not survive the rigorous analysis necessary for class

22   certification; even a cursory review of Plaintiff's motion reveals that individualized

23   issues predominate.

24   **A.    Plaintiff Has Failed To Prove Either Commonality Or Predominance**

25       **1.    Plaintiff Fails To Establish That Any Actual Defect Was
                 Common To The Class**

26   Plaintiff cannot show that any alleged defect was common to the entire class.

27   As the Court held earlier this year in a similar "no injury" lawsuit, "[i]n legal terms,

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

10

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    the problem for Plaintiff[] is that many of the proposed class members likely do not

2    have standing to raise the class claims, and whether or not a particular class member

3    has standing is an individual issue that is not amenable to class treatment." *Mattel*,

4    2014 WL 764514, at *2.

5        *Mattel* is dispositive.  In *Mattel*, the plaintiffs sought to "certify a nationwide

6    class of individuals who 'acquired' a Fisher-Price Rock 'N Play Sleeper (Sleeper)."

7    2014 WL 764514, at *1.  The plaintiffs claimed that the Sleeper was defective

8    "because it has a 'dangerous propensity' to grow mold."  *Id*.  The Court denied

9    certification because plaintiffs "fail[ed] to establish that any actual defect was

10   common to the entire class."  *Id*.

11       In so holding, the Court noted "that the vast majority of the proposed class did

12   not experience mold growth on the Sleeper to a degree that they saw fit to complain to

13   Defendants or to the Consumer Product Safety Commission (CPSC)."  *Mattel*, 2014

14   WL 764514, at *1.  Evidence of a classwide problem simply wasn't there:  "There is

15   no evidence that *every* Sleeper developed notable levels of mold and ample evidence

16   that *most* of them did not."  *Id*. (emphasis added).  The Court recognized that "some

17   members of the class were affected by mold on the Sleeper," but nonetheless held that

18   the "dispositive issue of standing is not common to all class members and must be

19   addressed on an individual basis.  The overarching importance of this question

20   predominates over any common questions that may exist as it is impossible to award

21   class wide relief without consideration of standing."  *Id.* at *2.

22       Another court in this District reached the same conclusion just last year when it

23   denied certification in a case where the plaintiffs sought "to certify a class in which

24   the substantial majority of class members never suffered an actual injury that was

25   caused by a manifest defect in the [product]."  *In re Toyota Motor Corp. Hybrid Brake*

26   *Mktg., Sales Practices & Products Liab. Litig.*, 288 F.R.D. 445, 449 (C.D. Cal. 2013).

27   In *Toyota*, Judge Carney found that the plaintiffs, "and presumably the majority of the

28

OPPOSITION TO
MOTION FOR CLASS CERTIFICATION

class members they seek to represent, suffered no actual injury, let alone a common one resulting from the same manifest defect." *Id.* at 450.

The same result should follow here. Just like the plaintiffs in *Mattel*, Electrolux's Washing Machines are "only claimed to have a 'propensity'" to overflow (*see*, *e.g.*, Motion, at 11:11-12), and there is "no evidence that [overflows are] 'actual or imminent' in all cases, a majority of cases, or even in a significant percentage of cases." *Mattel*, 2014 WL 764514, at *2. As stated above, the only evidence in the record is that *only 0.01 percent of putative class members* have claimed damages caused by the overflow of an Electrolux Washing Machine.[2]

## 2. Without Expert Evidence, Plaintiff Cannot Prove Any Alleged Injury Emanates From A Common Root Cause

Without any support whatsoever, Plaintiff claims that all Electrolux Washing Machines containing an air hose and an air dome are substantially certain to fail in a manner that poses a material safety hazard to consumers. *See*, *e.g.*, Motion, at 1:19-22. But Plaintiff cannot randomly select a few parts in Electrolux's Washing Machines, label them as a common "system," state that the "system" is defective, and then proceed on a classwide basis.

At an absolute minimum, Plaintiff must submit expert evidence establishing that any alleged classwide injury emanates "from the same root cause." *Arabian v. Sony Electronics, Inc.*, 2007 WL 627977, at *12 (S.D. Cal. Feb. 22, 2007) (denying certification where "there is no expert evidence that the problems experienced by Johnson and Sarac emanated from the same root cause"). That expert evidence not only must be admissible, but it also must be "persuasive." *Ellis*, 657 F.3d at 982.

Here, Plaintiff submits *no* expert evidence, much less "persuasive" expert

---

[2] Electrolux does not even owe a duty of disclosure *unless* the alleged defect poses an "unreasonable risk" to safety. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835-38 (2006); *see also* Docket Entry No. 26 (Order on MTD), at 3; *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009). Here, the evidence has shown *no* risk to the safety of putative class members, much less an "unreasonable" risk. Plaintiff has failed to adduce evidence of a single instance where a putative class member was injured as a result of the alleged defect.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12

evidence establishing that any alleged propensity to overflow emanates from the same root cause. Plaintiff submits no evidence at all. Plaintiff simply alleges that three (3) parts comprise an allegedly defective "water level pressure system."

Plaintiff's entire claim is based on the notion that each Washing Machine's design "fails to account for motion of the Washing Machine tub that occurs during normal and reasonably expected operation and/or use." FAC ¶ 2. But Plaintiff fails to explain the relevance of these three (3) parts and the irrelevance of the numerous other parts that Electrolux's expert demonstrates must be included in any analysis of whether a particular machine has a "propensity" to overflow. *See, e.g., Bruce v. Harley-Davidson Motor Co., Inc.*, 2012 WL 769604 (C.D. Cal. Jan. 23, 2012) (based on plaintiffs' failure to produce admissible expert testimony, court held that "plaintiffs have failed to show that they have the ability to use common evidence by which they can demonstrate the defective nature of the Class Vehicles"); *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 819 (7th Cir. 2010) (without admissible expert evidence, "Plaintiffs are not only unable to support their theory that all GL1800 motorcycles use ball bearings that fail to adequately dampen wobble, they are also unable to demonstrate that their wobble claim sufficiently predominates as to warrant class certification under Rule 23(b)(3)"). Plaintiff's motion should be denied.

> **3.** **Plaintiff Has Failed To Prove The Existence Of A Common Unified "Water Level Pressure System," Much Less That Common Questions Will Predominate**

Plaintiff suggests that expert evidence is unnecessary because Electrolux purportedly has admitted that various Washing Machine models contain an air hose and an air dome.[3] *See, e.g.*, Motion, at 5:1-3. But that is woefully insufficient.

---

[3] Citing to Carl King's declarations in support of removal, Plaintiff contends that "Defendant admits there are at least 24 models that utilize the same water level pressure system design with the identical parts as the Washers owned by Plaintiff." Motion, at 5:1-3. Mr. King's declaration contains no such "admission." As he explained at his deposition, he simply acknowledged that various Machines utilized the two part numbers specifically referenced in Plaintiff's complaint. He never admitted that the models functioned the same or "utilized the same water level pressure system," or even that there was only one version of each particular part number. *See, e.g.*, Kim Dec., Ex. B (King Depo), at 41:1-43:17; 44:15-45:6.

OPPOSITION TO
MOTION FOR CLASS CERTIFICATION

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    To establish commonality, much less that common issues predominate, Plaintiff

2    must "identify a single part or system that is the cause" of the alleged common injury.

3    *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012).

4    Plaintiff has not and cannot do so here.

5    According to Plaintiff, all of Electrolux's Washing Machines contain the same

6    "uniform design," which in turn, "can be defined in terms of the connection of three

7    parts in the water level pressure system:  the air dome; the air hose; and the pressure

8    switch."  Motion, at 1:15-17.  Even if the Court accepted Plaintiff's claim that those

9    three parts constituted a unified "water level pressure system," numerous differences

10   exist amongst Washing Machine models with respect to each of those parts:

11   *First*, the hundreds of thousands of Machines contain **air hoses of twenty-three**

12   **(23) varying lengths**.  King Dec. ¶ 2; Ex. A (Air Hose Schematic).  *Id.*  Thus, a single

13   jury cannot generate a common answer even to the simplest question asked by

14   Plaintiff -- whether the Machines "are defective because they do not contain adequate

15   air hose length."  Motion, at 1:21.  *See Dukes*, 131 S.Ct. at 2551.  Indeed, Electrolux's

16   expert shows how air hoses of differing lengths necessarily move differently when the

17   Machine is in operation.  Kim Dec., Ex. C (Rasty Report), at 11-12.[4]

18   *Second*, the **air dome schematics changed six (6) different times**.  King Dec.

19   ¶ 3; Exs. B-D (Air Dome Schematics).  Plaintiff submits no evidence as to how or

20   why the differences among those changes can be overlooked.

21   *Third*, a vast number of Electrolux Machines use **do not even use pressure**

22   **switches**.  Electrolux stopped using pressure switches in or around 2012; it now uses

23   transducers, which regulate water levels in Machines in a wholly different manner.

24   King Dec. ¶ 4; Kim Dec., Ex. B (King Depo), at 117:23-118:12.  Plaintiff cannot

25

26   ─────────────────────
     [4] Dr. Rasty has a doctoral degree in mechanical engineering and a master's degree in
     business administration. He is a registered mechanical engineer with the State of

27   Texas who has been a tenured professor of mechanical engineering for over 26 years.
     Dr. Rasty heads a university research laboratory dedicated to failure analysis, and he

28   has published numerous peer-reviewed studies based on the results of his research.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    possibly certify a class based on the claim that the "connection of the air hose to the

2    air dome in the tub compartment and the connection of the air hose to the pressure

3    switch in the console department are defective," when scores of Machines do not even

4    contain a pressure switch.  Nor can Plaintiff ask the jury to find based on common

5    evidence that all Electrolux's Washing Machines contain a common defect that leads

6    to flooding when not all Machines regulate water levels in the same manner.

7    Likewise, in those Machines that had pressure switches, **thirty-three (33) different**

8    **versions** were used.  Kim Dec., Ex. B (King Depo), at 22:12-24.

9           *Fourth*, according to Plaintiff, all Machines with an air hose and an air dome

10   "fail[] to account for motion of the Washing Machine tub that occurs during normal

11   and reasonably expected operation and/or use."  FAC ¶ 2.  But the evidence shows

12   that the Washing Machines do not move in the same manner.  The Washing Machines

13   do not generate the same level of vibrations for the same amount of time.  The

14   Washing Machines do not operate in the same manner.  And the Washing Machines

15   are not used in the same manner.  Plaintiff does not even address these issues, which

16   are explained in Dr. Rasty's report.  *See generally* Kim Dec., Ex. C (Rasty Report).

17          *Finally*, Electrolux's manufacturing processes prevent any alleged "water level

18   pressure system" from being truly "uniform."  *Arabian*, 2007 WL 627977, at *12

19   ("[A] manufacturing defect can be ubiquitous or isolated, depending upon the

20   circumstances.").  For example, Electrolux personnel manually appl[ied] a solvent

21   before manually connecting the air hose to corresponding parts.  Application of that

22   solvent, which naturally may vary due to its manual nature, impacts the connectivity

23   of the air hose to various components and is thus relevant to the propensity of a

24   Machine to overflow.  Kim Dec., Ex. C (Rasty Report), at 21-22.

25          Plaintiff had the burden to prove that a common body of evidence could answer

26   the question whether the Washing Machines have a propensity to overflow.  *Comcast*,

27   133 S. Ct. at 1432 (plaintiff must "be prepared to prove that there are in fact …

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

common questions of law or fact") (quotations omitted); *Dukes*, 131 S.Ct. at 2551-52 (plaintiff "must affirmatively demonstrate his compliance" with Rule 23).  He has failed to do so, and the evidence shows the numerous variations in the Washing Machines he seeks to include in the putative class make such a task an impossibility. Plaintiff cannot satisfy Rule 23's predominance requirement.

### 4.   Individualized Issues Regarding The Materiality Of Electrolux's Alleged Omissions Will Predominate

In connection with his fraud theories, Plaintiff incorrectly contends that materiality "is generally subject to classwide proof."  Motion, at 21:6.  In fact, "[i]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993) (materiality of representation was an individual question); *Webb v. Carter's, Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) ("Here, Defendants have put forth persuasive evidence that materiality and reliance would vary from consumer to consumer, such that the reasonable consumer standard cannot be applied."); *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 581 (E.D. Cal. 2012) ("The Court finds that while materiality is generally determined by the 'reasonable consumer standard,' there are numerous individualized issues as to whether the reasonable consumer purchasing one of Defendants' motorcycles would find the excessive heat material."); *Edwards v. Ford Motor Co.*, 2012 WL 2866424, at *9 (S.D. Cal. June 12, 2012) ("Here, Ford presents persuasive expert evidence that the level of importance a potential car buyer places on safety concerns varies from consumer to consumer such that the reasonable consumer standard cannot be applied on a classwide basis.").  Plaintiff has not and cannot show that materiality is subject to common proof.

*First*, Plaintiff fails to offer any proof that all class members would have been aware of the allegedly concealed information if disclosed.  Nor can he, as materiality

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

OPPOSITION TO
MOTION FOR CLASS CERTIFICATION

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    requires individual inquiries into the buying practices and habits of each class member

2    -- as established by Plaintiff's own testimony.  *See*, *e.g.*, Kim Dec., Ex. D (Landen

3    Depo), at 114:2-22; 116:17-21 (Plaintiff conducted no research before buying).

4        Electrolux submits the Report of Dr. Christine Wood,[5] whose opinions and

5    testimony have been relied upon by federal courts that have denied certification of

6    similar claims.  *See*, *e.g.*, *Webb*, 272 F.R.D. at 502; *Johnson*, 285 F.R.D. at 581;

7    *Edwards*, 2012 WL 2866424, at *9.  Dr. Wood explains that not all putative class

8    members would have paid mind to any alleged "warning" Plaintiff claims should have

9    been supplied.  Kim Dec., Ex. E (Wood Report) at 5-9.  Plaintiff did not even heed the

10   supposed "warning" that his lawyer gave him concerning the "dangers" of

11   Electrolux's Machines.  Kim Dec., Ex. D (Landen Depo), at 71:1-73:2.

12       *Second*, Plaintiff cannot establish through common proof that consumers would

13   have behaved differently if the allegedly omitted information were disclosed.  Plaintiff

14   assumes no consumer would have purchased a Washing Machine if he or she knew of

15   the allegedly concealed information.  *See*, *e.g.*, FAC ¶ 57.  But Plaintiff's own

16   behavior proves otherwise.  Safety was never a factor when it came to his purchase

17   decisions; even factors he deemed material varied by purchase.  Kim Dec., Ex. D

18   (Landen Depo), at 44:4-45:18 (buying one brand of appliance for his home based on

19   brand "status" and spouse's preference), at 40:1-4 (buying another brand of appliance

20   for an investment property based on "aesthetic and brand name"), at 96:12-18 (buying

21   yet another brand for rental income property based on "fit" and "price").  As

22   explained above, Plaintiff placed next to no value on the allegedly "concealed"

23   information.  Even after being told by his lawyer that the Washing Machines in his

24   building were "ticking time bombs," Plaintiff did nothing.  He did not warn his

25   tenants.  He did not pull the Machines from their apartments until his lawyers decided

26

27   _____
     [5] Dr. Wood is a Principal Scientist and Director of Exponent's Human Factors

28   practice.  She has spent over 20 years researching the impact of safety-and health-
     related information on human behavior and injury reduction.

17

OPPOSITION TO
MOTION FOR CLASS CERTIFICATION

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    they needed them as evidence.  Rather, he let his tenants continue to use the Machines

2    exactly as before.  And, not surprisingly, nothing happened.[6]  But Plaintiff's inaction

3    says nothing about how any other individual might have reacted.  Rather, as Dr. Wood

4    explains, this will vary by individual.  Kim Dec., Ex. E (Wood Report) at 9-14.

**5.    Individualized Issues Will Predominate With Respect To Whether The Washing Machines Are Merchantable**

6          Plaintiff contends that common questions will predominate with respect to his

7    implied warranty claim; in particular, whether all of the Washing Machines at issue

8    are merchantable.  Motion, at 21:17-22:5.  In addition to the fact that any "defect"

9    cannot be proven through common evidence, Plaintiff is wrong for other reasons.

10          The overwhelming majority of Machines have outlasted the one-year term of

11    their standard limited warranties.  Hayes Dec. ¶ 2 (Electrolux offered one-year

12    maximum standard limited warranties).  Plaintiff cites *Hicks v. Kaufman & Broad*

13    *Home Corp.*, arguing that it establishes a general rule allowing for a breach of

14    warranty claim for products that, at the point of sale, were "substantially certain to

15    result in malfunction during the useful life of the product."  Motion, at 12:21-23.

16          Electrolux recognizes the Court relied on *Hicks* in deciding Electrolux's motion

17    to dismiss.  Docket Entry No. 26 (Order on MTD), at 5.  Electrolux believes that

18    *Hicks* does not apply here.  *In re Sony Grand Wega KDF-E A10/A20 Series Rear*

19    *Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1099 (S.D. Cal. 2010) ("If

20    *Hicks* does in fact create such an exception to the general rule that an Express

21    Warranty does not make a manufacturer responsible for repairs required after the

22    warranty expires, however, it does not apply to consumer goods such as televisions.").

23

---

24   [6] Plaintiff's inaction is even more significant in that the information he received put
     the Machines in the worst possible light.  Electrolux disputes that, on the facts as
25   presented by Plaintiff, it would have a duty to tell potential consumers that its
     Washing Machines are "ticking time bombs" that are certain to overflow and cause
26   massive property damage and personal injury.  Rather, the facts show that, at most, a
     small number -- fewer than one in a thousand -- have overflowed for various reasons
27   without any personal injury of which Electrolux was aware.  As the *Johnson* court
     explained, there are numerous individual issues inherent in determining the materiality
28   of that information to consumers.

18

Even if *Hicks* does apply, it does not help Plaintiff for two reasons.  *First*, at the motion to dismiss stage, his allegation that his Machines were substantially certain to malfunction during their useful life was accepted.  But at the class certification stage, the Court must look at evidence, not allegations.  *Comcast*, 133 S. Ct. at 1432.  Plaintiff has provided no evidence that all Washing Machines within the proposed class are substantially certain to fail, and the factual record and the expert testimony is to the contrary.  At the very least, because of the multiple variations among Machines, this question cannot be answered as to all of them using common evidence.

*Second*, *Hicks* was based on consumer expectation concerning a product's useful life.  Such expectations "will be highly subjective and will vary widely."  *Sony*, 758 F. Supp. 2d at 1099; *see also Oestreicher*, 544 F. Supp. 2d at 972 ("This rationale applies with even greater force to the component parts of laptop computers where consumer expectations are even more subjective and likely unreliable, and where usage will greatly vary from consumer to consumer.").  Notably, Plaintiff testified that he owned a Machine that is within the class definition, that the Machine failed after many years for reasons unrelated to the alleged defect (and which never manifested in the Machine before it failed), and that Plaintiff simply bought a new Machine because he was satisfied the Machine had lasted its reasonably useful life.  Two of the Machines on which he bases his lawsuit have lasted much longer than the one that failed.  Certainly, that evidence, which relates only to Plaintiff and not to other putative class members, is relevant to his individual implied warranty claims.  Similarly, testimony from absent class members will be required for their claims.

## B.   Plaintiff Has Failed To Prove A Viable Classwide Damages Model

Just last year, the Supreme Court vacated a class certification order because the plaintiff failed to show that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Comcast*, 133 S. Ct. at 1433.  And this Court recently denied certification in a case where the plaintiff failed to "bring forth a

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

19

[damages] measurement method that can be applied classwide and that ties the plaintiff's legal theory to the impact of the defendant's allegedly illegal conduct." *Forrand v. Federal Exp. Corp.*, 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013).

Plaintiff must establish this Rule 23 requirement (like all others) "through evidentiary proof." *Comcast*, 133 S. Ct. at 1432; *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013). Where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class," Plaintiff "cannot show Rule 23(b)(3) predominance." *Comcast*, 133 S. Ct. at 1433. Plaintiff's "cost of repair" formula does not satisfy his burden because it does not properly measure the damages under his theories of liability.

*First*, Plaintiff's proposed "cost of repair" formula is not even an authorized form of recovery for his unfair competition claim. As the California Supreme Court has recognized, "restitution is the only monetary remedy expressly authorized by [the UCL]." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1146 (2003). But Plaintiff obviously does not want restitution because it would make any class proceedings unworkable. Because most of the Washing Machines included in the putative class have worked perfectly for years and years, any "restitution" would need to take into account the benefit provided, which would be a highly individual inquiry.

*Second*, Plaintiff's proposed "cost of repair" formula is not an authorized form of recovery for his fraudulent concealment claim. *See, e.g., Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, 2011 WL 5360074 (S.D. Cal. Nov. 3, 2011) ("[D]amages available under tort theories do not include economic loss, such as damages for inadequate value, *costs of repair* and replacement of the defective product[,] or consequent loss of profits -- without any claim of personal injury or damages to other property.") (quotations omitted) (emphasis added); *see also Hammond Enters. v. ZPS Am. LLC*, 2013 U.S. Dist. LEXIS 155135, at*13 (N.D. Cal. Oct. 29, 2013) ("The 'economic loss rule' bars Plaintiffs' claims for negligence,

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

negligent misrepresentation, and *fraudulent concealment*.") (emphasis added).

*Third*, Plaintiff's cost of repair model cannot be applied classwide under his implied warranty theory.  Plaintiff offers no proof -- expert or otherwise -- to support his claim that the "cost of repair amounts to approximately $100/Washer."  Motion, at 15:15-16.  Instead, he cites only to Carl King's Declaration, wherein he estimated that "independent contractors responsible for warranty repair services generally charge between $85 and $100 for the minimum one-hour service call."  Schmidt Dec., Ex. 2 ¶ 5.  But Plaintiff submits no evidence equating the cost of a "minimum one-hour service call" to the "cost to repair" each of the numerous Washing Machines lumped into the class.  Indeed, Plaintiff submits no evidence explaining the repair he seeks, a significant problem given the variations among the hundreds of thousands of Machines included in the class, many of which have worked perfectly for a decade, and many of which, having lived their useful lives, are no longer in use.

## C.   Plaintiff Is Not Typical

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ellis*, 657 F.3d at 984 (quotations omitted).  Plaintiff is not typical.

*First*, Plaintiff lacks standing to assert injury based on Washing Machines that are different from the ones he purchased.  *Murray v. Sears, Roebuck & Co.*, 2014 WL 563264, at *9 (N.D. Cal. Feb. 12, 2014); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (citing *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb 9, 2010); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011)).  "[W]hen a plaintiff asserts claims based both on products that [h]e purchased and products that [h]e did not purchase, claims relating to products not purchased must be dismissed for lack of standing."  *Id.*  Here, Plaintiff purchased only two Washing Machine models.  Docket Entry No. 59

1   (Landen Dec.) ¶ 3.  Because Plaintiff has not even tried to show that the Washing

2   Machines he owns are similar to any other models, and because the record shows

3   substantial differences, he lacks standing to bring claims in connection with the

4   remaining 338 Washing Machine models.  *Granfield*, 2012 WL 2847575, at *6.

5       *Second*, Plaintiff is subject to a unique legal defense based on the statute of

6   limitations.  On their face, claims relating to the two Washing Machines Plaintiff

7   allegedly purchased in 2005 are time-barred.  Docket Entry No. 59 (Landen Dec.) ¶ 3.

8   Plaintiff can assert that the discovery rule should apply to those Machines (as he did in

9   his amended complaint), but he has yet to prove the same (and his lawyer now will be

10  a witness).  *Murray*, 2014 WL 563264, at *9.

11      *Third*, Plaintiff is subject to unique legal defenses with respect to his fraud-

12  based claims.  Judging from his own actions, Plaintiff placed *no* value on the allegedly

13  omitted information concerning the "defective" and "dangerous" nature of his

14  Washing Machines, and, as a result, he suffered no harm.  Separate and apart from the

15  fact that Plaintiff never researched any of his Machines before buying (precluding

16  reliance), Plaintiff continued to allow his tenants to use his Washing Machines even

17  after he learned that they were "dangerous."  Notwithstanding that Plaintiff claims that

18  Electrolux owed him a duty to disclose that his Washing Machines were "dangerous,"

19  Plaintiff failed to comply with his own duties as a landlord to warn his tenants about

20  the supposedly "dangerous" Machines.  *See, e.g.*, *Portillo v. Aiassa*, 27 Cal. App. 4th

21  1128, 1134 (1994).  So either Plaintiff willfully disregarded his duties as a landlord, or

22  he simply does not believe his own claim that the Washing Machines posed a danger

23  to his tenants.  Either way, Plaintiff is far from typical.

24      **D.    Plaintiff Is Not An Adequate Representative**

25      Plaintiff is inadequate for at least two reasons.  *First*, he made a tactical

26  decision to limit the relief he seeks on behalf of the class to the alleged "cost to

27  repair," even though he seeks to represent individuals whose Machines purportedly

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

22

have overflowed within the past four (4) years.  Notice of Motion & Motion, at 2:16-18 (excluding only those whose Machines overflowed prior to four (4) years from filing of complaint); Motion, at 22:24.  Plaintiff would have the Court believe a large number of Machines have overflowed within the past four (4) years, causing extensive property damage, personal injuries and other consequential damages.  But Plaintiff seeks to limit those claims to $100.  By "tailor[ing] [his] action in such a way as to improve [his] ability to establish commonality," Plaintiff has "create[d] an adequacy problem."  *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 368 (E.D. La. 1997); *Evans v. Lasco Bathware, Inc.*, 178 Cal. App. 4th 1417, 1433-34 (2009) (plaintiffs "expressly waived any recovery beyond the average cost to replace the shower pans, thereby forfeiting recovery of damages to other parts of the house").

*Second*, Plaintiff cannot adequately represent consumers, who in turn, likely comprise the bulk of the putative class.  Plaintiff himself is not a consumer, and, as a consequence, cannot pursue consumer-specific claims on behalf of the class (as has been demonstrated by the dismissal of his Consumer Legal Remedies Act Claim).  Plaintiff is not an adequate representative.

### E. Plaintiff's Proposed Class Is Not Ascertainable, And The Class Definition Is Flawed

A motion for class certification "will founder if the only proof of class membership is the say-so of putative class members."  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 348, 356 (3rd Cir. 2013); *accord Carrera v. Bayer Corp.*, 727 F.3d 300, 309-311 (3d Cir. 2013).  But that is all Plaintiff proposes here.  Rather than prove a workable method for ascertaining the identities of putative class members, Plaintiff instead relies on the say-so of persons purportedly in possession of Washing Machines to "determine whether they own a Washer that is included in this case through an examination of the model/serial plate."  Motion, at 9:24-10:1.

Self-identification does not work here.  Plaintiff's failure to provide evidence establishing an objective, reliable method of identifying class members precludes

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

certification.  "Forcing [Electrolux] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012).  "Such affidavits would be unreliable," as Electrolux "would be forced to accept [the representations] without the benefit of cross-examination."  *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011).

Plaintiff has failed to adduce evidence of a reliable methodology for ascertaining the identities of putative class members.  Plaintiff cannot do so through Electrolux's records.  Electrolux sells to authorized dealers only, not to retail consumers.  Kim Dec., Ex. A (Hayes Depo), at 20:5-12.  In fact, the only consumer records Electrolux maintains are those stored in its warranty records and product registration records.  *Id.* at 31:19-33:6.  But those records would account for only about 20 percent of the class Plaintiff seeks to certify.  *Id.* at 17:2-8.

Moreover, Plaintiff's class definition is flawed, as he defines the class to include all individuals who "own," as opposed to "purchased," a Washing Machine.  Such individuals could have received the product as a gift, it may have come with the property, etc.  Plaintiff's proposed class definition "necessarily includes individuals who did not purchase their [Washing Machine], individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages."  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009).  "Such individuals would lack standing to bring these claims."  *Id.* (striking class allegations that included "all persons within the United States who own a 20–inch Aluminum iMac").

### F.  **Plaintiff's Reliance On *Whirlpool*, *Sears* And *Tiet* Is Misplaced**

Plaintiff seeks to align his case with *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012), *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 849 (6th Cir. 2013) and *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013).  Plaintiff's reliance on those cases, each of which

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   concerned an unrelated alleged defect, is sorely misplaced.

2       In *Tait*, unlike here, "Defendant's internal documents indicat[ed] Defendant's

3   knowledge of such propensity." *Tait*, 289 F.R.D. at 474.  In *Whirlpool* and *Butler*,[7]

4   "[i]nternal Whirlpool documents acknowledged by this time that the available data

5   indicated 35% of Duet customers had complained about odor in the Duets and that

6   complaints continued to increase in all markets." *Whirlpool*, 722 F.3d at 848.  Indeed,

7   "Whirlpool engineers recognized that consumers might notice black mold growing on

8   the bellows or inside the detergent dispenser, and that laundry would smell musty if a

9   Duet was 'heavily infected.'" *Id.*  Moreover, the plaintiffs had produced evidence that

10  this resulted from a common defect.  *Id.*

11      Unlike those cases, Plaintiff here has failed to demonstrate a common defect.

12  Rather, the record evidence and Electrolux's expert show that the question of whether

13  the Washing Machines have a "propensity" to overflow cannot be answered "yes" or

14  "no" for all Machines based on a single body of evidence.  Thus, this case is more like

15  *Mattel* and *Toyota*.  Like in those cases, class certification should be denied.

## IV.   CONCLUSION

17      For these reasons, the Court should deny Plaintiff's motion for class

18  certification in its entirety.

20  Dated:  May 23, 2014          **HUNTON & WILLIAMS LLP**

22              By:  _____/s/ Phillip J. Eskenazi_____
23                          Phillip J. Eskenazi
                         Attorneys for Defendant
                            ELECTROLUX
                      HOME PRODUCTS, INC.

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

28  [7] Whirlpool manufactured the machines at issue in *Butler*.  *Butler*, 727 F.3d at 802.

25

61550.000020 EMF_US 50371649v11