# EXHIBIT E

Landen v Electrolux Home Products, Inc.

Project No. 1400605.000

Report of Christine T. Wood, Ph.D.
Exponent, Inc.
149 Commonwealth Drive
Menlo Park, CA 94025

Prepared for:
Hunton & Williams LLP
550 South Hope Street
Suite 2000
Los Angeles, CA 90071

May 22, 2014





*Failure Analysis Associates*®

## Introduction

This report summarizes the work undertaken by Exponent® Failure Analysis Associates in connection with human factors issues in the above-referenced cases.  Plaintiff C. Sparks Landen alleges that he would not have purchased his subject washing machines had Electrolux provided a disclosure that the washing machines bear a risk of overflowing.[1]  Plaintiff seeks certification of a class of persons "within California who own a washing machine or laundry center manufactured by Electrolux that contains the identical air hose routing and strain-relief features as the GE Model WSM2700 and Frigidaire Model FGX831CSI."[2]

Plaintiff C. Sparks Landen purchased three Frigidaire laundry centers in June of 2005 and another Frigidaire laundry center in February of 2012, to replace one of the earlier three.[3]  His washing machines have never overflowed.[4]

Electrolux Home Products manufactures washing machines under various brand names, including Electrolux, Frigidaire and, at times, GE and Kenmore.  Plaintiff alleges that, as a result of an inadequate air hose, the class washing machines are prone to overflow, leak and/or water-loss.[5]

I have been asked to address psychological issues in human attention and information processing and to opine as to, among other issues, whether all members of the putative class would uniformly have refrained from purchasing an Electrolux washing machine had they been provided the additional (as-yet-unspecified) disclosures Mr. Landen claims were omitted from its washing machines.

## Training and Qualifications

My name is Christine T. Wood.  I received a B. A. Degree from Stanford University in 1971 graduating with Distinction and Honors in Psychology.  In 1974, I received my Ph.D. in Experimental Psychology, also from Stanford University.  Central to the field of Experimental Psychology is the study of human information processing including learning, memory, attention, vision, and perception.  The capabilities and limitations of human information processing are systematically analyzed from infancy to late adulthood to better understand how these processes develop, operate, and change.

As part of my work, I have evaluated education and training programs to measure their effectiveness and to determine the conditions under which children and adults learn the material

---

[1] Declaration of Sparks Landen in Support of Plaintiff's Motion for Class Certification ("Landen Declaration"), ¶ 7; First Amended Class Action Complaint for Damages ("Complaint"), ¶¶ 57-58; Deposition of Sparks C. Landen, 4/24/2014 ("Landen"), p. 127
[2] Complaint, ¶ 32
[3] Landen, pp. 57-58, 90-93, 100-102, 109
[4] Landen Declaration, ¶ 5; Landen, p. 127
[5] Complaint, ¶ 2

to which they have been exposed.  Some of the education programs I have studied include those serving underachieving children, vocational education programs for high school children and adults, programs for gifted and talented children, and programs for children with special needs. I have directed Congressionally mandated studies for the United States Department of Education in which a national evaluation system was developed to measure the gains in reading and math of underachieving children.

Currently, I am the Director of the Human Factors practice at Exponent, a scientific and engineering consulting firm, where I have worked since 1988.  As part of my work at Exponent, I have applied my training and education in Experimental Psychology to consumer behavior.  In particular, for twenty-five years I have studied the safety- and health-related behaviors of consumers, focusing on ways that product-related information shapes purchase decisions and their knowledge and risk-taking behavior.  I have published peer-reviewed papers in scientific journals and in the proceedings of annual conferences of professional organizations on topics related to consumer behavior and information processing.  I am a member of the Human Factors and Ergonomics Society, the Society for Risk Analysis, and the American Educational Research Association.  I have served as a member of the editorial board for the Journal of Children's Health.  A list of my publications and additional information about my professional experience are contained in my resume.  Exponent charges a rate of $480 an hour for my time.

## Basis and Supporting Information for Opinions

The opinions contained in this report are based on my education, training and experience and on my review of materials listed in an attachment to my report.  I reserve the right to supplement this report and to expand or modify my opinions based on review of material as it becomes available through ongoing discovery.  Should I be asked to testify in this case, I plan to use excerpts and charts from the materials I have cited in my report.

### Methodology

When asked to discuss the labeling, art work, and other visual communication accompanying a product, I consider, among other things, the audience to whom this communication is directed, what knowledge the recipients of the communication already possess about the information provided, and the conditions that may affect the likelihood that the communication will be considered by different consumers, such as those reflected in my research and enumerated in the sections below.  The plaintiff has not indicated the specific language of the additional warning that purportedly should have been provided by Electrolux.  In other words, one of the plaintiff's theories is that Electrolux should have provided additional warnings; but plaintiff has not identified what specific additional communication Electrolux supposedly was obligated to provide.  Still further, the plaintiff has not actually tested any additional such warnings. Plaintiff has done nothing to assess whether or how the (as-yet-unspecified) disclosures he claims were omitted from Electrolux's washing machines would affect purchase and usage behavior of individual purchasers, or whether any such alleged behavioral changes would be uniform across the putative class.

Whereas the scientific bases for the fundamental principles that determine consumers' awareness, interest in, and response to product-related visual communication are derived from the applicable peer-reviewed scientific literature, the testimony and statements of Mr. Landen provide real-world data to assess whether these conditions are met in the present case. In accordance with this approach, the following report is based in part upon scientific findings and in part upon case-specific data that provide the evidence for the state of knowledge of the agent involved in this case and for the external forces that operated upon him.

**Likelihood of Noticing and Reading a Warning**

<u>Overview of information processing and attention</u>

Human perception is selective. People do not attend equally to all the information available to them, but rather focus upon a portion. This perceptual focusing is called attention. Attention allows people to select relevant information for processing while learning and memory allow their perceptual history to influence their current behavior. Through attentive processes, people keep in focus selected stimuli and resist distracting stimuli. The information people perceive depends on what they bring with them from their past experience and their present needs and wishes.

The presence of information in an environment, such as warnings about adverse safety and health events, does not automatically result in attention to or processing of that information. Processing systems would become overloaded if people had to attend to every object present in their environment. From moment to moment, people's sensory systems are bombarded with an overwhelming amount of information, certainly too much for anyone to process fully at any given time. Due to limitations in human information processing[6] and to avoid "information overload," it is necessary to be able to select important and relevant information for one's behavior. It has also been shown that an individual's knowledge, experience, and behavioral goals can serve to guide attention to locations and objects in the environment.[7]

Research on "visual search" has identified few conditions that can successfully "capture" attention.[8] Strong evidence for the inability of clearly visible stimuli to sometimes reach awareness if they are not a part of the focus of attention comes from a phenomenon identified in the psychological literature as "inattentional blindness."[9] In one such demonstration, subjects watched a video, counting the number of times "players" passed a basketball back and forth. While engaged in this task, the majority of subjects did not notice a man in a gorilla suit walk into the middle of the "game" and beat his chest before moving on.[10] The overwhelming evidence from cognitive psychology shows that attention guides learning and memory and

---

[6] Miller (1956)
[7] Awh et al. (1998); Downing (2000); Moores et al. (2003); Summerfield et al. (2006)
[8] Rauschenberger (2003)
[9] Mack & Rock (1998)
[10] Simons & Chabris (1999)

sensory perception, and that it is goal-directed behavior.  Information present and visible in an environment is not always noticed or processed further.

<u>Noticing and reading warning signs and labels</u>

Studies from the scientific literature about noticing and reading warnings are consistent with the broader psychological literature on attention.  For example, a national telephone survey about use of over-the-counter medications found that only 10% of consumers[11] reported reading information about potential side effects at the point of purchase, and 9% reported reading it prior to taking the medicine for the first time,[12] yet 17% report having experienced a negative side effect from taking over-the-counter medication.[13]  Although consumers can expect to find information about potential adverse reactions on medications and nearly one out of five consumers indicate that they have experienced an adverse reaction related to use of an over-the-counter medication, only a small percentage report reading the information before purchase.

Numerous studies have been conducted over the past thirty years in an attempt to determine whether the format or location of a warning can increase the likelihood of it being noticed and read.[14]  For example, in one study conducted in a laboratory setting, subjects performed a "chemistry-lab" task and were exposed to either no warning concerning the wearing of gloves and goggles, a text-only warning sign, or a warning sign consistent with design components identified in the warnings literature suggested to increase sign conspicuity (e.g., color).[15]  None of the participants looked at or read the posted signage containing warnings, regardless of the warning format and relevance of the information to performing the task.

Studies have consistently shown that previous familiarity and benign experiences or successful use of a product over time are factors that decrease the likelihood of a warning being noticed and read.[16]  In other words, people who have interacted with a product without negative consequences are unlikely to change their behavior, even if confronted with a warning.  For example, Dorris and Purswell (1977) had college-age students complete a task using a hammer that was labeled with a warning.  Two versions of the label actually warned participants not to proceed further.  The findings were unequivocal:  At the completion of the task, each participant was asked whether a warning label had been on any of the tools.  Of the one hundred participants, no one noticed any label of any type.[17]

In sum, not all available information in the environment is noticed, even when it may be designed with the intention to be noticed; and not all consumers notice the same information.  Under circumstances under which consumers should be motivated to pay attention to product labeling – such as when they have previously experienced side effects of medications – many

---

[11] Harris Interactive (2002), p. 19
[12] Harris Interactive (2002), p. 19
[13] Harris Interactive (2002), p. 31
[14] E.g., Shaver et al. (2006); Young et al. (2002)
[15] Smith-Jackson & Durak (2000)
[16] E.g., Zeitlin (1994); Karnes et al. (1986)
[17] Dorris & Purswell (1977)

still often do not, raising serious doubts about the homogeneity of classes of consumers who should be driven by a similar motivation to seek particular information provided in association with certain products they purchase or have installed for use in their residence.

Noticing and reading warnings about Electrolux washing machines

The evidence available in this case, as described below, illustrates that the general U.S. population differs in its knowledge about, and use of, washing machines.  The sole named plaintiff, Mr. Landen, is supposed to be representative of all of the members of the putative class, and his experiences and concerns typical and common among the class members.  As discussed below, there is considerable heterogeneity in the circumstances under which Mr. Landen has purchased washing machines.  This heterogeneity in circumstances creates a divergent need to seek information, instructions or warnings, even for the single named plaintiff, who is supposedly representative of the entire putative class.  This variation in the need to seek information renders it highly unlikely that the entirety of the alleged class coheres as a homogeneous collective of consumers of washing machines.

Disclosures about the alleged propensity of the class of washing machines to overflow could potentially have been placed on postings in the retail store, on the product itself, in the product owner's manual, or on the manufacturer's or retail store's websites.  Mr. Landen appears to favor placement of the disclosure in the documentation that is supplied with the unit, possibly under hazards.[18]  However, there is nothing to suggest that all consumers in the putative class would necessarily have sought disclosures in that location, if, indeed, at all.  The putative class contains not only Mr. Landen, with his particular experience, information needs, and preferences, but all purchasers of subject washing machines in California.

The documentation supplied with the unit, as suggested by Mr. Landen, is one potential location to present a possible disclosure about overflow.  Other various locations for presentation of disclosure information are considered below, including documentation that comes with a washing machine, and are analyzed with respect to the likelihood of all purchasers being exposed to it at all and noticing and reading it when it is present.

*Retail environment*.  The retail store environment presents many stimuli to which one may attend.  Among these are general retail store signs and placards (e.g., sales advertisements, signposts, exit signs, etc.), varieties of different products (e.g., other household appliances, consumer electronics, etc.), different exemplars and models within individual product categories, lights, salespeople, customers, in addition to temporary signs posted on, or affixed to, the washing machine display models.  Based on the human attention and information processing literature, the presentation of warnings placed on in-store signs or washing machine labels in the retail environment would be selected for further processing only by those aware that such information might be present and with an interest in seeking it.  Other consumers might not be exposed to the signs at all because they sent a delegate to the store in their stead, for example, or because they were loaned a washing machine by someone, or because they

---

[18] Landen, p. 129

acquired a washing machine as part of the inventory of a home, or because they purchased the washing machine through the Internet, or because they purchased their washing machine used.

Mr. Landen himself demonstrates many of the varied circumstances described above.  He has lived in homes in which washing machines were already installed,[19] depriving him of the opportunity to see in-store signs for those washing machines.  He has also received washing machines on loan,[20] equally depriving him of an opportunity to notice and read disclosures in the retail environment.  At the same time, he has also purchased washing machines in stores himself, both for installation in his own residence[21] and for use in homes occupied by others.[22] Of those washing machines he purchased himself, Mr. Landen does not know whether he actually went to the store for one of them or merely called in his order.[23]  Even for a single member of the putative class, therefore, it is true that he may not always be exposed to in-store signs with every washing machines purchase.

On those occasions when a consumer is exposed to in-store signage, whether he or she notices or, indeed, reads those materials will depend upon that consumer's current informational needs, as discussed in the context of the scientific literature on attention and visual search.  Mr. Landen, for example, testifies: "If you're talking about advertisements on the wall or something, I just … notice the general advertising, but if I'm looking at a specific unit to purchase … I'm definitely going to check it out."[24]  He does not recall anything more about the information provided in-store in connection with the 2005 purchase of his subject washing machines than that the machines were made by Frigidaire, the price of the units, their dimensions and their capacity.  Washing machines as well as other types of large appliances often have an EnergyGuide on a yellow label indicating the yearly operating cost for the appliance and a comparison of its energy usage with other models.[25]  There is no testimony from Mr. Landen to suggest that he used this information in his purchase decisions.  For the purchase of his 2012 subject washing machine, Mr. Landen "just replaced it with the same unit that [he] had;" he therefore did not do any research on it prior to the purchase.[26]  Different information needs generate different levels of attention to information about washing machines provided in the retail environment, even for the very same consumer.

Among the information consumers could potentially seek is information about the safety of a product they are considering purchasing.  There is no testimony from Mr. Landen to suggest that he asked a salesperson about washing machine safety prior to purchasing his subject washing machines.  Mr. Landen only testifies inquiring about which unit would last the longest, among

---

[19] Landen, pp. 29, 31-33, 105, 108, 112
[20] Landen, pp. 86, 137
[21] Landen, pp. 25-28, 33-34, 36, 112
[22] Landen, pp. 46-49, 51-52, 56-58, 90-95, 100-101, 103-104
[23] Landen, p. 102
[24] Landen, p. 117
[25] https://www.consumer.ftc.gov/articles/0072-shopping-home-appliances-use-energyguide-label  [accessed: 5/20/2014)
[26] Landen, pp. 116-117

Eᵡ™

the ones offered in the store.[27]  Not all buyers of washing machines would have sought information about washing machine safety at the time of purchase; and, certainly, based on his testimony, Mr. Landen did not.

*Marketing materials*.  Marketing materials may provide information to potential buyers prior to their purchase of a product.  Sixty years of data on consumers' attitudes toward advertisements, however, have consistently indicated roughly 70% of lay consumers think that advertising is often untruthful and that it seeks to persuade people to buy things they do not want.[28]  Research has also shown that even children as young as seven or eight years of age should be able to appreciate that the underlying intention of advertisement is to sell and to persuade.[29]  Marketing materials are generally known not to be impartial sources of information – they are vendor-generated and patently not neutral in their presentation of information.  Consequently, not all buyers pay equal attention to marketing materials such as advertisements or even notice marketing materials or seek them out.  Moreover, some buyers already know what they want without requiring additional promotional materials; some view promotional materials as entertainment; and some view a limited subset of all the available promotional materials.  For example, as Mr. Landen testifies, for his 2012 purchase, he knew that he wanted a washing machine exactly like the ones he already owned; he did not conduct any further research prior to its purchase.[30]  Even for the washing machines he purchased earlier, in 2005, he testifies that he does not recall seeing any advertisements for Electrolux washing machines.[31]  Thus, it cannot be assumed that members of the putative class were all exposed to marketing material before they made their washing machine purchase decision.

*Internet and consumer-oriented publications*.  In addition to consulting marketing materials or allowing themselves to be guided by advertisements (or not, as is the case here), consumers may proactively seek information about products from websites and consumer-oriented magazines and publications.  Consumers may seek information about hazards associated with consumer products, such as searching for information about safety issues.

Consumer Reports, a non-profit organization dedicated to consumer protection that has an estimated 7.3 million subscribers to its publications[32] has for decades devoted a section of their annual "Buying Guide" to washing machines.  Consumers can consult this resource in its traditional print form, either through a personal subscription or at their local libraries, or on the Internet.  The Buying Guide evaluates specific washing machines on the market and identifies washing machine attributes a consumer could potentially consider before making a purchase.[33]

Not all consumers will equally avail themselves of these information options, however, or indeed have access to the Internet.  For those prospective buyers who would have turned to

---

[27] Landen, p. 119
[28] Calfee & Ringold (1994)
[29] Moore & Lutz (2000); Moses & Baldwin (2005)
[30] Landen, pp. 102, 115-116
[31] Landen, p. 114
[32] Bounds (2010)
[33] See http://www.consumerreports.org/cro/washing-machines/buying-guide.htm  (accessed: 5/4/2014)

consumer-oriented product information about washing machines, not all available information
would have been equally interesting or relevant for their ultimate purchase decision.  The
decision to purchase a washing machine is characterized by a wealth of decisional factors that
must be weighed against one another, including – but not limited to – the price of the washing
machine across different makes and models; the price of the same make and model across
different retailers; size of the unit; seasonal incentives; seasonal price fluctuations; operating
cost; the availability and selection of features; the ability to pair a washing machine with a
matching clothes dryer; the ability to stack the washer-dryer pair; warranty duration; brand
prestige; brand loyalty; color; and many more.  Not only do these factors trade off against one
another, but they trade off against one another differently across different models of washing
machines.  Not all of these factors will be material to all prospective buyers; and some of them
may be immaterial to most buyers.

As Mr. Landen testifies, he does not recall doing any type of online research prior to buying his
2005 subject washing machines; nor does he recall visiting any websites to see whether there
were any consumer reviews about Electrolux washing machines; nor does he recall visiting the
Electrolux website; nor did he consult Consumer Reports – he merely "walked into the store
[and] bought the units."[34]  In other words, the facts of this case show that the named plaintiff did
not avail himself of existing resources, such as the Internet.  Those consumers who do, may
consult different sources, with different intents.

*Owner's manuals*.  Mr. Landen testifies that he thinks Electrolux should have provided
disclosures about the alleged propensity for its washing machines to overflow in the 'hazards'
section of the documentation accompanying the washing machine.[35]  With regard to the
Electrolux washing machines at issue in this case, even for owners who claim to have read at
least part of the manuals – such as Mr. Landen[36] – any information contained therein would not
have informed their purchase decision because manuals are typically read only after a purchase
has been made.  Accordingly, when asked whether he read the owner's manual for his subject
washing machines at the store, Mr. Landen responded that he did not.[37]  Therefore, even if the
owner's manual had contained disclosures of the type demanded by plaintiff, they would not
have influenced his purchase decision, nor likely that of a large number of other members of the
putative class.

Further, research shows that whether a manual, or part of a manual, is read is determined by a
number of factors that vary between products and individuals.[38]  In one study of people's
declared propensity to read product instructions, 35% of respondents said that they would read
none or only some of the instructions for electrical products, a category that included washing
machines.[39]  Consistent with other studies comparing people's predicted compliance with actual

---

[34] Landen, p. 114
[35] Landen, p. 129
[36] Landen, p. 123
[37] Landen, p. 120
[38] E.g., Wright et al. (1982)
[39] *Ibid.*

compliance, the same study found that although 64% of respondents claimed they were the sort of person who always reads instructions thoroughly, none of the respondents selected 'Always' for all of the product categories.

*Warranty guides*.  Warranty guides, including the additional purchase of extended warranty coverage, may be considered prior to a purchase.  Even so, it is unlikely that all consumers would equally consult the warranty documents for their respective subject washing machine prior to making a purchase decision; and for those who might have done so, other factors, such as the duration of the warranty, might be the focus of their attention, rather than any disclosures about a risk of overflow.  In fact, the very reassurance that certain parts and services are covered by the warranty may undermine any cautionary disclosures about product risks provided in the warranty document.

Mr. Landen testifies that he does not recall whether he looked at the warranty for his subject washing machines before he bought them.[40]  He testifies that, in general, if he does read a written warranty, he "maybe do[es]n't read every single word," and that he is primarily concerned with "how long the warranty is for, … what it covers, what it doesn't cover."[41]  It is not likely, therefore, that he would have noticed and read any disclosures about the alleged propensity for the washing machines to overflow; and even if he had, not all members of the putative class would have.  For those who did, the presence of a warranty, the absence of past experience of an overflow, and the desirability of other, overriding features (as discussed below) would likely have diminished the role of the potential disclosure in the consumers' decision making process.

In sum, even when consumers are aware of the presence of product-related disclosures, their respective levels of attention to these disclosures differ substantially.  Different consumers may allot different degrees of importance to product-related disclosures, depending upon, for example, economic considerations; the reputation of product manufacturer and retailer; and the consumers' level of experience and familiarity with similar products, among others.  The great diversity of factors that impact consumer behavior with respect to product-related disclosures underscores the heterogeneity that exists in the putative class of consumers who own a class washing machine.

**Numerous Factors Unrelated to Warnings about Overflow Influence an Individual's Behavior in Purchasing a Washing Machine**

There is no scientific basis to support an opinion that the inclusion of the type of additional disclosure desired by plaintiff would result in a unanimous (or even majority) decision among consumers not to purchase a washing machine manufactured by Electrolux, even if such a disclosure were noticed and read.

---

[40] *Ibid.*
[41] Landen, pp. 122-123

A specific safety message or warning does not have the same impact on all consumers, and it may not have any effect at all on most consumers.  Research on the effectiveness of warnings has shown that a wide range of factors influence whether warnings will affect and change user behavior.[42]  For a warning sign or label to change behavior, in addition to a person noticing, reading, and understanding the message, a person must be motivated and able to change his/her behavior.  These activities depend upon characteristics unique to the individual, the environment, the product, and the warning itself.[43]

Plaintiffs allege that the inclusion of some form of disclosure they claim was omitted would have resulted in consumers ignoring all other influences that shape their purchase decisions about washing machines.   They claim the result of including the disclosure would be their choosing not to purchase an Electrolux washing machine altogether.  This contention assumes that the knowledge of a potential overflow event associated with any and all washing machines, as well as other household appliances, such as dishwashers and water heaters, would outweigh all other considerations in consumers' purchase decisions.  There are numerous factors that influence an individual's behavior in purchasing a washing machine that have little or nothing to do with an overflow hazard disclosure.  For example, consumer reviews of washing machines posted online for sellers of household appliances, such as sears.com, lowes.com, and homedepot.com, mention many reasons why the consumers liked and purchased a product, including price, appearance, favorable online reviews, Consumer Reports ratings, durability, low water consumption, detergent economy, laundry capacity, ease of use, prior experience with Frigidaire, the fact that the clothes come out comparatively dry, the fact that it is comparatively quiet, and the fact that its dimensions allow it to fit in a particular space.

A number of publicly available sources offer considerations to potential buyers of factors to consider when purchasing a washing machine.  These include, but are not limited to:

- tub capacity
- features such as advanced timers, automatic temperature control, or touch screens
- loading type (top loading versus front loading)
- the ability to silence end-of-cycle signals
- the availability of advanced cycles, such as a steam cycle or an antibacterial wash cycle[44]

Consumers may consider these product attributes in conjunction with, or in lieu of, product disclosures, to the extent that they have read the latter.  They may consider them all in combination; or only a subset; or only a single one, to the exclusion of the others.

---

[42] Ayres et al. (1989)
[43] E.g., Ayres et al. (1989); Frantz et al. (2005); Miller & Lehto (2001); DeJoy (1989)
[44] E.g., http://www.consumerreports.org/cro/washing-machines/buying-guide.htm  (accessed: 5/4/2014); http://www.lowes.com/projects/kitchen-and-dining/washing-machine-buying-guide/article  (accessed: 5/1/2014); http://www.goodhousekeeping.com/product-reviews/research-institute/types-of-washing-machines  (accessed: 5/1/2014); http://www.cnet.com/topics/washing-machines/buying-guide/  (accessed: 5/1/2014)

Studies have found that the weighting of various product attributes outside of the information potentially provided in product disclosures depends upon a variety of considerations. For example, it has been observed that country of manufacture may affect the perceived safety of a product, and that a product may be perceived as less safe when it is manufactured in China than when the same product is manufactured in Japan or in the United States.[45]   Brand and price were also found to have reciprocal influences on perceived safety. To the extent that safety is a factor in the purchase of washing machines by a subset of consumers, the exact effect of this factor will depend upon other factors, whether these are explicitly considered in particular purchase decisions or not. The considerations that underlie purchases of consumer products – and washing machines, specifically – are therefore based on complex tradeoffs between different extrinsic factors, intrinsic factors and consumer characteristics.

Consistent with the scientific literature, Mr. Landen testifies having based his washing machine purchases on criteria unrelated to any safety concerns, more generally, and product-related overflow-hazard warnings, in particular. When he purchased a washing machine for the home he acquired in 2000, Mr. Landen, for example, replaced the washing machine already installed in the home because it was old and did not have the aesthetic he was seeking; he decided on a replacement based solely upon appearance and price.[46]   By contrast, even though he did not like the appearance of the appliances in the home he purchased in 2003 either, he did not replace them that time around.[47]   Similarly, appearance was less of a concern for the washer and dryer Mr. Landen acquired with his 2005 home purchase; Mr. Landen did not replace that washing machine until it broke.[48]   Mr. Landen then replaced it with a Whirlpool washing machine, which he chose because it was on sale and "seemed like [a] pretty good … machine[]."[49]   He liked its "bells and whistles" and the price;[50] he did not choose it for its aesthetic, contrary to what drove his purchase decision for the washing machine he purchased in 2000.[51]   Once Mr. Landen discovered there was a sale for that particular Whirlpool model, he did not consider any other washing machines.[52]   The "bells and whistles" mattered to Mr. Landen because his wife has delicate things and likes to have more cycle options; by contrast, Mr. Landen's needs are very basic.[53]   Even within the same household, therefore, consumers' requirements of washing machines and the criteria upon which they consequently base their purchase decisions can differ considerably.

Whereas Mr. Landen's selection of washing machines for use in his own personal residence has been driven by, in turn, aesthetics and price or features, his choice of washing machines for use by the tenants in his apartment building was driven by brand name, durability expectations, and

---

[45] Tse (1998)
[46] Landen, pp. 25-28
[47] Landen, p. 29
[48] Landen, p. 33
[49] Landen, pp. 34-37
[50] Landen, pp. 34-35
[51] Landen, p. 35
[52] Landen, p. 37
[53] Landen, pp. 34, 37-38

fit in a specific constrained space, rather than by aesthetics, features or price.[54]  Mr. Landen
testifies buying neither the cheapest nor the most expensive machines,[55] and that the machines
were not on sale when he bought them[56] – which stands in contrast to his exclusive focus on the
on-sale Whirlpool washing machine he purchased for his personal residence.  He testifies that he
does not know why he did not also consider a Whirlpool washing machine for his rental
property.[57]  One of the washing machines he purchased for his rental property was a Maytag,
which he purchased because Maytag seemed like a good brand to him and because the
dimensions allowed it to fit into the space for which it was intended.[58]  Mr. Landen testifies that,
again, price was less of a consideration than was physical fit.[59]  Nevertheless, Mr. Landen
purchased another Frigidaire for his rental property in 2012 when he had to replace one of the
machines he had bought in 2005.[60]  He testifies buying the fourth Frigidaire machine because of
its dimensions and because of brand,[61] given his prior positive experience with Frigidaire.[62]

None of the criteria mentioned by Mr. Landen relate to the relative safety of the washing
machine or its propensity, or lack thereof, to overflow.  Mr. Landen's testimony, moreover,
illustrates that there is not only diversity among different buyers of washing machines, but that
there can even be a discontinuity in what the same individual buyer may consider across time, or
in different contexts.

In sum, purchases constitute a variegated collection of different instances of individual and
independent purchase decisions that are each characterized by different combinations of factors.
Purchases of washing machines, hence, do not represent a uniform set of transactions performed
by a homogenous class of buyers.  Many factors play into the decision to purchase a particular
washing machine that may override any product disclosures, even for buyers who may be aware
of these disclosures.

**Examples of Behaviors of Owners and Users of Electrolux Washing Machines in Response
to Warnings**

Plaintiff claims that he and the other members of the putative class would not have purchased
the subject washing machines had they been apprised of the supposed propensity for the subject
washing machines to overflow.[63]  His actions, and those of one of the users of the subject
washing machines, however, render this contention unlikely.  Mr. Landen thought his subject

---

[54] Landen, pp. 57-58, 77, 93, 95-96, 103-104
[55] Landen, p. 95
[56] Landen, p. 94
[57] Landen, pp. 95-96
[58] Landen, p. 77
[59] Landen, p. 103
[60] Landen, pp. 57, 92-93, 101-102
[61] Landen, pp. 93, 95
[62] Landen, pp. 101-102
[63] Declaration of Sparks Landen in Support of Plaintiff's Motion for Class Certification ("Landen Declaration"),
¶ 7; First Amended Class Action Complaint for Damages ("Complaint"), ¶¶ 57-58; Deposition of C. Sparks
Landen, 4/24/2014 ("Landen"), p. 127

machines worked perfectly fine[64] until Scott Rapkin, one of Mr. Landen's former tenants and his current legal counsel in the present matter,[65] alleged to him that they have a propensity to overflow.[66]  The idea that a washing machine, indeed any household product with a water supply, may overflow was not new to Mr. Landen, however.  Mr. Landen describes washing machines overflowing as a "very familiar scenario,"[67] although it is not one he has experienced.  Mr. Landen has had other appliances that have leaked water.  On two separate occasions, dishwashers in his rental property had leaked water.[68]  In response to one occasion, after a technician was unable to determine the problem with the unit, Mr. Landen merely asked for the tenants to watch the dishwasher closely.[69]  Any disclosure about the potential for a washing machine to overflow would not have told Mr. Landen anything he did not already know – and therefore would have remained ineffectual, based on the scientific literature on people's responses to warnings of familiar hazards.[70]

Although Mr. Landen testifies having been worried, "dissatisfied and fearful of the units that have a propensity to overflow,"[71] and learned of this alleged propensity in 2012,[72] he did not replace the subject machines until 2013; until that time, his tenants were still using them.[73]  He testifies not even having warned his tenants that the washing machines have an alleged propensity to overflow,[74] because he did not consider it necessary.[75]  Indeed, his testimony leaves open the possibility that he might consider returning the currently stored subject washing machines to the rental property if his claim against Electrolux does not succeed.[76]  This testimony does not suggest a consumer so concerned about overflow that he would have responded in any fashion to potential disclosures from Electrolux.

Mr. Landen believes that there is some type of repair that could be made to the washing machines that would prevent the overflow hazard, but he has not looked into how much the repair cost for the subject machines would be.[77]  His understanding is that the total repair cost for all three machines would be on the order of $300, which, however, he has not independently verified.[78]  In spite of the relatively nominal cost (compared to the damage resulting, according to Mr. Landen, from "potentially hundreds of gallons [of water that] could ruin a building … [and] could be very dangerous to its occupants"[79]), and in spite of expressing considerable

---

[64] Landen, p. 136
[65] Landen, pp. 50, 67
[66] Landen, pp. 63-64, 67-68, 71
[67] Landen, pp. 114-115
[68] Landen, pp. 110-111
[69] Landen, p. 111
[70] E.g., Zeitlin (1994); Karnes et al. (1986)
[71] Landen, pp. 67, 73
[72] Landen, p. 71
[73] Landen, pp. 71-73, 133-134
[74] Landen, p. 134
[75] Landen, p. 135
[76] Landen, pp. 87-88
[77] Landen, pp. 77-80
[78] Landen, pp. 76-77, 80
[79] Landen, p. 128

concern, Mr. Landen has not and will not have the subject washing machines repaired himself, for reasons he will not specify.[80]

## Summary and Conclusions

In summary, I offer the following conclusions and opinions with a reasonable degree of scientific certainty.  With regard to the purchase of the Electrolux washing machines:

- Had Electrolux provided the additional (as-yet-unspecified) disclosures Mr. Landen claims were omitted from its washing machines, consumers would not have uniformly noticed and read them because consumers differ in their knowledge, experience, and behavioral goals in seeking information about household appliances and, in particular, washing machines.  Mr. Landen himself had different knowledge, experience, and goals at the times he purchased washing machines for his homes and rental units.

- Had the additional information Mr. Landen claims was omitted been placed on in-store signs in the retail environment or on the product or on the Internet or other product literature directed at consumers, it would be selected for further processing only by those consumers aware that such information might be present and with an interest in seeking it.  Mr. Landen identifies the types of information that he sought at different times as being important in his purchases of washing machines; but safety information was not among the factors.

- Had the additional information Mr. Landen claims was omitted been provided, those consumers who noticed and read it would differ in the factors that motivate their response to the information.  Consumers will behave in a variety of different ways in their shopping and purchase behavior even when presented with the same information. Once he formed the belief that the washing machines in his rental units could overflow, potentially causing damage or even injury, Mr. Landen did not warn his tenants and did not immediately remove the washing machines from use.

- Mr. Landen has not demonstrated that consumers would have been uniformly affected by whatever warnings he claims should have been given.

I reserve my right to offer additional opinions based on further discovery, as well as reply to any (additional) opinions or disclosures plaintiff's experts may make in this matter.

*Christine Wood*

Christine T. Wood, Ph.D.
May 22, 2014

---

[80] Landen, p. 80

## List of Materials

- First amended class action complaint for damages
- Order enlarging time to file motion for class certification
- Plaintiff's notice of motion and motions for class certification
- [Proposed] order granting class certification
- Declarations
  - Declaration of Jerome L. Ringler in support of plaintiff's motion for class certification, and exhibit
  - Declaration of Michael S. Rapkin in support of plaintiff's motion for class certification
  - Declaration of Catherine Burke Schmidt in support of plaintiff's motion for class certification, and exhibits
  - Declaration of Sparks Landen in support of plaintiff's motion for class certification, and exhibit
  - Request for judicial notice in support of motion for class certification, and exhibits
- Depositions
  - C. Sparks Landen, 04/24/2014
- Factory parts catalogue
  - CLCE500FW2
  - CLCE500FW4
  - FEX831FS2
  - FEX831FS4
  - FLEB8200FS2
  - FLEB8200FS4
  - GLGT1031FS3
- Installation instructions
  - 27" (69 cm) Wide LAUNDRY CENTER Washer – Dryer Installation Instructions P/N 134897500B (0904)
  - Spacemaker™ Laundry WSM2700 Electric P/N 131558000B (0904)
- Operating instructions
  - P/N 134880700A (0801)
  - P/N 137227000 (0905)
  - P/N 134808700 (0610)
  - P/N 134808800 (0611)
  - P/N 137227300 (0905)
- Owner's manual
  - Crosley® Laundry Center Owner's Guide PN 137233100 (0906)
  - Laundry Center Owner's Guide PN 134809600 (0610)
  - 27" (69 cm) Wide LAUNDRY CENTER Washer – Dryer Use and Care Guide P/N 137232600A (0906)
  - Crosley® LAUNDRY CENTER Owner's Guide PN 134857400A (0712)

- - o  Spacemaker™ Laundry Use and Care Guide P/N 137228700 12-05 JR, 07-09 ML
  - o  Spacemaker™ Laundry Use and Care Guide P/N 134666300 12-05 JR
- Wiring diagram
  - o  134769500 A
  - o  137060900 A
  - o  137061200 A
  - o  137058800 A
  - o  137061400 A
  - o  134806700 B
  - o  P/N 137061400A (0904)
  - o  P/N 134806700B (0612)

- Awh, E., Jonides, J., & Reuter-Lorenz, P. A. (1998). Rehearsal in spatial working memory. *Journal of Experimental Psychology: Human Perception and Performance*, *24*, 780-790.
- Ayres, T. J., Gross, M. M., Wood, C. T., Horst, D. P., Beyer, R. R., & Robinson, J. N. (1989). What is a warning and when will it work? *Proceedings of the Human Factors and Ergonomics Society 33rd Annual Meeting*, 1-5.
- Calfee, J. E., & Ringold, D. J. (1994). The 70% majority: Enduring consumer beliefs about advertising. *Journal of Public Policy & Marketing*, *13*, 228-238.
- c|net website, *Washing machines: Washer buying guide* webpage  [http://www.cnet.com/ topics/washing-machines/buying-guide/  (accessed: 5/1/2014)]
- Consumer Reports website, *Washing machine buying guide* webpage [http://www.consumerreports.org/cro/washing-machines/buying-guide.htm  (accessed: 5/4/2014)]
- Bounds, G. (2010). Meet the Sticklers: New demands test Consumer Reports; flying in cat fur. *The Wall Street Journal*, May 5, 2010. P. D1.
- DeJoy, D. M. (1989). Consumer product warnings: Review and analysis of effectiveness research. *Proceedings of the Human Factors Society 33rd Annual Meeting*, 963-940.
- Dorris, A. L., & Purswell, J. L. (1977). Warnings and human behavior: Implications for the design of product warnings. *Journal of Products Liability*, *1*, 255-263.
- Downing, P. E. (2000). Interactions between visual working memory and selective attention. *Psychological Science*, *11*, 467-473.
- FTC website, *Saving energy at home* webpage  [https://www.consumer.ftc.gov/articles/ 0072-shopping-home-appliances-use-energyguide-label  (accessed: 5/20/2014)]
- Frantz, J. P, Young, S. L., Rhoades, T. P., Wisniewski, E. C. (2005). Predicted versus actual response to warning signs and labels: Examining the role of ANSI Z535 features. *Proceedings of the Human Factors and Ergonomics Society 49th Annual Meeting*, 1785-1789.
- Good Housekeeping webpage, *Washing machines: Which type is best for you* webpage [http://www.goodhousekeeping.com/product-reviews/research-institute/types-of-washing-machines  (accessed: 5/1/2014)]
- Harris Interactive (2002). *Attitudes and beliefs about the use of over-the-counter medicines: A dose of reality*. (Retrieved from http://www.bemedwise.org/survey/final_survey.pdf)

- Lowe's webpage, *Washing machine buying guide* webpage [http://www.lowes.com/projects/kitchen-and-dining/washing-machine-buying-guide/article (accessed: 5/1/2014)]
- Mack, A., & Rock, I. (1998). *Inattentional blindness*. Cambridge, MA: The MIT Press.
- Miller, G. A. (1956). The magical number seven, plus or minus two: Some limits on our capacity for processing information. *Psychological Review*, *63*, 81-97.
- Miller, J. M., & Lehto, M. R. (2001). *Warnings & Safety Instructions* (4th ed.). Ann Arbor, MI: Fuller Technical Publications.
- Moore, E. S., & Lutz, R. J. (2000). Children, advertising, and product experiences: A multimethod inquiry. *Journal of Consumer Research*, *27*, 31-48.
- Moores, E., Laiti, L., & Chelazzi, L. (2003). Associative knowledge controls deployment of visual selective attention. *Nature Neuroscience*, *6*, 182-189.
- Moses, L. J., & Baldwin, D. A. (2005). What can the study of cognitive development reveal about children's ability to appreciate and cope with advertising? *Journal of Public Policy & Marketing*, *24*, 186-201.
- Rauschenberger, R. (2003). Attentional capture by auto-and allo-cues. *Psychonomic Bulletin & Review*, *10*, 814-842.
- Shaver, E. F., Young, S. L., Frantz, J. P., Rhoades, T. P., Hall, S. M., & Shah, R. J. (2006). Comparison of ANSI and ISO standard formats on people's response to product warnings. *Proceedings of the Human Factors and Ergonomics Society 50th Annual Meeting*, 2197-2201.
- Simons, D. J., & Chabris, C. F. (1999). Gorillas in our midst: sustained inattentional blindness for dynamic events. *Perception*, *28*, 1059-1074.
- Summerfield, J. J., Lepsien, J., Gitelman, D. R., Mesulam, M. M., & Nobre, A. C. (2006). Orienting attention based on long-term memory experience. *Neuron*, *49*, 905-916.
- Tse, A. C. B. (1998). Factors affecting consumer perceptions on product safety. *European Journal of Marketing*, *33*, 911-925.
- Wright, P., Creighton, P., & Threlfall, S. M. (1982). Some factors determining when instructions will be read. *Ergonomics*, *25*, 225-237.
- Young, S. L., Frantz, J. P., Rhoades, T. P., & Darnell, K. R. (2002). Safety signs & labels: Does compliance with ANSI Z535 increase compliance with warnings? *Professional Safety*, *47*, 18-23.



Exponent
149 Commonwealth Drive
Menlo Park, CA 94025

telephone 650-326-9400
facsimile 650-326-8072
www.exponent.com

## Christine T. Wood, Ph.D.
**Principal**

**Professional Profile**

Dr. Christine Wood is a Principal Scientist and Director of Exponent's Human Factors practice. She has spent over 20 years researching the impact of safety- and health-related information on human behavior and injury reduction. She has applied the area of human information processing, involving aspects of attention, learning, memory, decision-making, and behavioral response, to risk communications. She has investigated and identified factors that influence compliance with warnings and developed a scientific framework for predicting effectiveness. She has evaluated a wide variety of strategies for dissemination of warnings. Her work includes the analysis, evaluation, and development of safety information for many different products, such as consumer products, medical devices and medications, workplace equipment, and motor vehicles. She has also studied and published papers on the historical use of warnings on products in the United States throughout the twentieth century.

Much of Dr. Wood's work focuses on issues related to child safety. She has applied her knowledge of child development to the analysis of accident patterns that are unique to children. As part of her research, she has conducted numerous studies involving the testing of hundreds of children to better understand their capabilities and methods of interacting with products. The results of her studies have been used in the design of products, development of product design standards, and the evaluation of the child resistance of products. She has also studied and analyzed the knowledge of parents regarding child hazards and the strategies they use to reduce child injury.

Dr. Wood has analyzed injury/illness, adverse event, and accident data available from a wide range of sources such as those gathered by government agencies. She has used quantitative analyses to develop and assess the effectiveness of safety information and dissemination methods. She has presented quantitative analyses of accident patterns for individual products to regulatory agencies for consideration in potential product recalls. She has designed and collected data using written questionnaires, interviews, and group discussions.

Prior to joining Exponent, Dr. Wood held research positions with companies RMC Research Corporation, SRA Technologies, Inc., and the Institute for Mathematical Studies in the Social Sciences where she conducted studies in the areas of measuring the effectiveness of education and training programs and developing a federally-mandated evaluation systems for education programs used nationwide.

**Academic Credentials and Professional Honors**

Ph.D., Experimental Psychology, Stanford University, 1974
B.A., Psychology, Stanford University (with Distinction and Honors), 1971

05/13

**Publications**

Rauschenberger R, Wood CT, Sala JB.  Human factors and the design of medical devices.  In: Bringing your medical device to market.  Reiss JB (ed), pp. 215-226, Food and Drug Law Institute, 2013.

Sala JB, Nichols EA, Muhammad R, Lakhiani SD, Rauschenberger R, Wood CT.  Government, warnings, safety information:  A comparison of inter-agency regulations and guidance.  In: Advances in Human Factors, Ergonomics, and Safety in Manufacturing and Service Industries.  Karwowski W, Salvendy G (eds), pp. 1047–1056, CRC Press, 2010.

Huntley-Fenner G, Wood CT, Sala JB.  Study of the impact of California's Proposition 65 warnings on safety related awareness and behaviors.  Society for Risk Analysis Proceedings Abstracts, San Antonio TX, December 9–12, 2007.

Wood CT, Sala JB, Sanders K, Cassidy P.  Trends in consumer product warnings found in voluntary standards.  Proceedings, 50th Annual Meeting of the Human Factors and Ergonomics Society, Santa Monica, CA, 2006.

Sanders KJ, Wood CT, Sala JB.  Human factors and the design of medical devices.  In: Bringing Your Medical Device to Market, Food and Drug Law Institute, Second Edition.  Reiss JB (ed), pp. 197–204, Washington DC, 2006.

Arndt SR, Wood CT, Delahunt PB, Wall CT.  Who's in the back seat?  A study of driver inattention.  Proceedings, 50th Annual Meeting of the Human Factors and Ergonomics Society, Santa Monica, CA, 2006.

Diedrich FJ, Wood CT, Ayres TJ.  Analysis of trends in federally mandated warning labels.  Proceedings, Human Factors and Ergonomics Society Annual Meeting, pp. 838–842, 2001.

Arndt S, Ayres TJ, Li L, Wood CT, Young D.  Human factors in product recall planning.  Proceedings, 6th Annual International Conference on Industrial Engineering, November 2001.

Murray J, Wood CT, Ayres TJ, Humphrey D.  Mobile communications, driver distraction, and vehicle accidents.  International Journal of Vehicle Design 2001; 26(1):70–84.

Wood CT, Ayres TJ, Schmidt R, Young D, Murray J.  Affordance perception and safety intervention.  Proceedings, Human Factors and Ergonomics Society Annual Meeting, Vol. 6, pp. 51–54, 2000.

Ayres TJ, Wood CT.  Memory problems for survey-based estimates of population activity.  International Journal of Cognitive Technology 1999; 4(1):4–10.

Wood CT, Arndt S, Kelkar R.  Children's use of various internal automobile trunk release mechanisms intended to reduce child entrapment risk.  Proceedings, Human Factors and Ergonomics Society Annual Meeting, pp. 912–915, 1999.



Ayres TJ, Wood CT, McCarthy RL, Arndt SR.  Relative rollover risk estimates for pickup
trucks.  Proceedings, 7th International Conference on Product Safety Research, Washington, DC,
1999.

Arndt T, Ayres T, McCarthy R, Schmidt R, Wood CT, Young D.  Warning labels and accident
data.  Proceedings, Human Factors and Ergonomics Society Annual Meeting, pp. 550–553,
Chicago, IL, October 1998.

Humphrey DG, Murray JM, Wood CT, Ayres TJ.  Human factors issues in the design of
medical devices.  Proceedings, Medical Design & Manufacturing Conference, pp. 116-1–116-6,
January 1999.

Ayres TJ, Wood CT, Schmidt RA, McCarthy RL.  Risk perception and behavioral choice.
International Journal of Cognitive Ergonomics 1998; 2(1-2):35–52.

Ayres TJ, Wood CT, Schmidt R, Young D, Murray J.  Effectiveness of warning labels and
signs:  An update on compliance research.  Proceedings, Silicon Valley Ergonomics
Conference & Exposition, pp. 199–205, May 1998.

Murray J, Ayres TJ, Kelsh M, Wood CT.  Mobile telephones and road accidents:  A review of
some issues.  Proceedings, Silicon Valley Ergonomics Conference and Exposition, pp. 194–198,
1998.

Wood CT, Arndt SR, McCarthy RL.  Using risk analysis to reduce the hazards on playgrounds.
Proceedings, National Manufacturing Week Conference, Chicago, IL, March 1998.

Wood CT.  Design challenges to the use of child resistance as a safety strategy.  Proceedings,
Human Factors and Ergonomics Society Annual Meeting, pp 442–446, October 1997.

Ayres TJ, Wood CT, Schmidt RA, Bjelajac VM.  Warning labels and the state of the art.
Proceedings, Silicon Valley Ergonomics Conference and Exposition, Palo Alto, CA, May 1996.

McCarthy RL, Ayres, TJ, Wood CT.  Risk and effectiveness criteria for using on-product
warnings.  Ergonomics 1995; 38, 11, 2164-2175.

Ayres TJ, Beyer R, Wood CT.  Ergonomics and the treatment plant.  Operations Forum 1995;
12.

Ayres TJ, Wood CT.  The warning label development process.  Proceedings, Silicon Valley
Ergonomics Conference and Exposition, San Jose, CA, May 1995.

Beyer RR, McCarthy RL, Wood CT.  Ergonomic analysis of extension ladders.  Proceedings,
Human Factors and Ergonomics Society Annual Meeting, 1994.



Wood CT, McCarthy RL, Padmanaban J, Beyer RR.  Analysis of accident data and fatal risk for occupational use of extension ladders.  Proceedings, Human Factors and Ergonomics Society Annual Meeting, 1994.

Wood CT, McCarthy RL, Fowler G, Robinson JN.  A comparative analysis of the annual injury risk for motorized vehicular recreation.  Proceedings, American Society of Mechanical Engineers Winter Annual Meeting, New Orleans, LA, November 1993.

Ayres TJ, Wood CT, et al.  Applications of risk analysis to off-road vehicles.  Proceedings, Society of Automotive Engineers Off-Highway and Powerplant Congress, September 1992.

Ayres TJ, Gross, MM, Horst DP, Wood CT, Beyer, RR, Acomb, DB, Bjelajac, VM.  Do subjective ratings predict warning effectiveness?  Proceedings, Human Factors Society Annual Meeting, 1990.

McCarthy RL, Taylor RK, Kost G, Robinson JN, Wood CT.  A comparative analysis of industrial lift truck (forklift) accidents.  Proceedings, American Society of Mechanical Engineers, Winter Annual Meeting, Dallas, TX, November, 1990.

Ayres TJ, Gross MM, Wood CT, Horst DP, Beyer RR, Robinson JN.  What is a warning and when will it work?  Proceedings, Human Factors Society Annual Meeting, 1989.

Wood CT.  Policy analysis of California's program for gifted and talented students.  Educational Evaluation and Policy Analysis 1985; 7(3):281–287.

Ball FM, Wood CT, Smith EE.  When are semantic targets detected faster than visual and acoustic ones?  Perception & Psychophysics 1975; 17(1):1–8.

Wood CT.  Processing units in reading.  Ph.D. Dissertation, Stanford University, 1974.

Juola JF, Fischler I, Wood CT, Atkinson RC.  Recognition time for information stored in long-term memory.  Perception & Psychophysics 1971; 10:8–14, 1971.

**Reports**

Wood CT, Gamel NN, Roberts SJ.  Evaluation of the Pacific World Telecourse Prototype. RMC Research Corporation, June 1988.

Millsap M, Jastrzab J, Wood CT.  State and local response to the Perkins Act:  A conceptual framework.  Abt Associates, December 1987.

Wood CT, Gabriel R.  A study of targeting practices used in the Chapter 1 Program.  SRA Technologies, Inc., 1986.

Christine T. Wood, Ph.D.
Page 4
05/13

E$^x$ ™

Ex. E
Page 139

Tallmadge GK, Wood CT, Roberts SJ.  Availability and utility of existing databases for addressing issues related to the impact of ECIA Chapter 1 Legislation and Regulations.  SRA Technologies, Inc., 1984.

Wood CT.  Final report of the evaluation of the Gifted and Talented Education Program.  RMC Research Corporation, February 1983.

Tallmadge GK, Wood CT.  Comparability of gains from the Three Models in the Title I Evaluation System.  RMC Research Corporation, April 1980.

Tallmadge GK, Horst DP, Wood CT.  The adequacy of the Equipercentile assumption in the Norm-Referenced Evaluation Model.  RMC Research Corporation, April 1980.

Tallmadge GK, Wood CT.  A comparison of lock-step and self-paced instruction strategies for training tracked vehicle mechanics.  MOS-63C, RMC Research Corporation, 1978.

Wood CT, Fagan BM, Tallmadge GK.  Hawaii State Title I Evaluation Report 1977–1978.  RMC Research Corporation, August 1978.

Tallmadge GK, Wood CT.  User's Guide, ESEA Title I Evaluation and Reporting System.  RMC Research Corporation, January 1978.

Wood CT.  Test norming practices and the Norm-Referenced Evaluation Model.  Further Documentation of State ESEA Title I Reporting Models and Their Technical Assistance Requirements—Phase II, Vol. 2.  Bessey BL (ed), RMC Research Corporation, 1978.

Tallmadge GK, Wood CT.  Local norms.  RMC Research Corporation, January 1978

Horst DP, Wood CT.  Collecting achievement test data.  RMC Research Corporation, January 1978.

Wood CT, Cannara AB, Tallmadge GK, Fagan BM.  Further documentation of State ESEA Title I Reporting Models and their technical assistance requirements:  Phase I, Part 2.  RMC Research Corporation, August 1976.

Wood CT, Gamel NN, Tallmadge GK, Binkley JL.  State ESEA Title I Reports:  Review and analysis of past reports, and development of a model reporting system and format.  RMC Research Corporation, October 1975.

Horst DP, Tallmadge GK, Wood CT.  Measuring achievement gains in educational projects.  RMC Research Corporation, October 1974; also published as "A Practical Guide for Measuring Project Impact on Student Achievement," Stock No. 1780–01460, U.S. Government Printing Office, Washington, DC.

E$x$™

**Presentations**

Beyer RR, Ayres TJ, Wood CT.  Applying basic principles of human factors and ergonomics. 67th Annual Conference and Exposition of the Water Environment Federation, No. 947801, Chicago, IL, October 1994.

Ayres TJ, Wood CT.  Memory problems for survey-based estimates of population activity.  3rd Practical Aspects of Memory Conference, College Park, MD, August 1994

McCarthy RL, Ayres TJ, Wood CT, Robinson JN.  Risk-based warning design.  American Bar Association National Institute, Product Warnings, Instructions and User Information. Washington, DC, January 1994.

Wood CT, McCarthy RL, Ayres TJ.  Human subject testing in the development of warning labels.  American Bar Association National Institute, Product Warnings, Instructions and User Information, Washington, DC, January 1994.

**Editorial Boards**

- Member of Editorial Board for *Journal of Children's Health*, 2003–2005

**Professional Affiliations**

- Human Factors and Ergonomics Society (member)
- Society for Risk Analysis (member)
- American Educational Research Association (member)



**Previous Four Years of Deposition and Trial Testimony by Christine T. Wood**

**April 30, 2014**

| Deposition Date | Trial Date | Case Name | Case Client | Court | Case # |
|---|---|---|---|---|---|
| 07/2008 | 04/2010 | Stand 'n Seal Products Liability Litigation | Michael Turiello - Pretzel & Stouffer - Chicago, IL | In the United States District Court for the Northern District of Georgia Atlanta Division | 1:07-md-01804-TWT |
| 01/2009 & 10/2010 | | Funkhouser v Ford | McGuire Woods LLP - Richmond, VA | Virginia: In the Circuit Court for the County of Albemarle | CL-08001904-00 |
| 04/2010 | 05/2010 | Mann v Lincoln Electric | Richard Sarver-Barrasso Usdin Kupperan Freeman & Sarver LLC- New Orleans, Louisiana | United States District Court Northern District of Ohio Eastern Division | 1:03-CV-17000 |
| 06/2010 | | Clinger v Lincoln Electric | Stephen P. Ellenbecker, The Gloor Law Group LLC- Chicago | United States District Court Northern District of Ohio Eastern Division | 1:04-C-17118 |
| 07/2010 & 01/2011 | 02/2013 | Scott v Dorel | Jonathan Judge - Schiff Hardin - Chicago, IL | In the United States District Court for the Northern District of Texas Dallas Division | 3-09CV0799-K |
| 07/2010 | | DeSalvo v Starwood | Robert W. Hudson - Infante, Zumpano, Hudson & Miloch, LLC - Florida | In the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida | 08-CA-0020137-O |
| 08/2010 | | Roman v Graco | Holly Podulka - Schiff Hardin - Chicago, IL | In the Circuit Court in and for Orange County, Florida | 08-CA-005334 |
| 08/2010 | 01/2012 | Cummins v BIC | Edward Stopher - Boehl Stopher & Graves LLP - Louisville, KY | United States District Court Western District of Kentucky at Bowling Green | 1:08-CV-00019-JHM-ERG |
| 09/2010 | | Grubb v DESA Heating LLC | Ronald L. Gaffney - Pedley Zielke Gordinier & Pence PLLC - Louisville, KY | In the Superior Court of the State of Arizona in and for the County of Cochise | CV2008-00099 |
| 10/2010 | | Zicam Products Liability, MDL 2096 | Alan Lazarus - Drinker Biddle & Reath LLP - San Francisco, CA | United States District Court District of Arizona | 2:09-md-2096-FJM |
| 10/2010 | | Burton v American Cyanamid Co., et al. | Charles H. Moellenberg, Jr. - Jones Day - Pittsburgh, PA | United States District Court Eastern District of Wisconsin | 07-C-0303 |
| 10/2010 | | Clark v American Cyanamid Co., et al. | Charles H. Moellenberg, Jr. - Jones Day - Pittsburgh, PA | United States District Court Eastern District of Wisconsin | 2006 CV 12653 |
| 12/2010 | | Village of Roanoke v Ashland Inc. | Charles  C. Correll - King & Spalding - San Francisco, CA | In the Circuit Court of Woodford County, Illinois County Department, Law Division | 09-L9 |
| 12/2010 | | Crescenta Valley Water District v Exxon, et al. | Russell D. Workman - King & Spalding -Houston, TX | Superior Court of the State of California County of Los Angeles | EC 044232 |
| 12/2010 | | Bailey v Medtronics | Lori G. Cohen - Greenberg Traurig LLP - Atlanta, GA | In the Superior Court of the State of Washington in and for the County of King | 08-2-33955-6KNT |
| 02/2011 | | Leuellen v Pentair | Christa Turner - Baker Hostetler- Orlando, FL | In the Circuit Court of Kanawha County, West Virginia | 09-C-535 |
| 04/2011 | | Baxa v Summerlin | Catherine J. Spector - Proskauer Rose LLP - Chicago, IL | United States District Court District Court of Nevada | 2:07-CV-01648-JCM-PAL |
| 04/2011 | | Ray v Ford Motor Company, et al. | Brad McGiboney - Huie Fernambucq & Stewart LLP - Birmingham, AL | In the United States District Court for the Middle District of Alabama Eastern Division | 3:07-cv-175 |
| 04/2011 | | Chapman - Denture Cream Litigation | Neil Goldberg - Goldberg Segalla LLP - Buffalo, NY | United States District Court Southern District of Florida Miami Division | 09-2051-MD-ALTONAGA |
| 05/2011 | | Wilson v GE, et al. | Christopher S. Marks - Williams Kastner - Seattle, WA | United States District Court Western District of Washington at Seattle | C09-1802 RSL |
| 06/2011 | | State Farm (Slabach) v Electrolux | Sarah T. McGill - Riley Bennett & Egloff, LLP - Indianapolis, IN | In the United States District Court for the Northern District of Indiana South Bend Division | 3:08-CV-00436-WCL-CAN |
| 06/2011 | | Ishii v Electrolux, et al. | Cassandra E. Hooks - Alston & Bird LLP - Los Angeles, CA | United States District Court Central District of California | SACV10-00832-JVS(RNBx) |
| 06/2011 | | Collins v BRK, et al. | James H. Heller, Esq. - Cozen O'Connor - Philadelphia, PA | In the Circuit Court for Montgomery County, Maryland | 200122-V, 200628, 202099 |
| 07/2011 | | Back v Smiths Medical, et al. | Jenny A. Covington - Bowman and Brooke LLP - Gardena, CA | District Court Clark County, Nevada | A536084 |
| 07/2011 | | Propofol Litigation (Sacks, Arnold, Devito) | Dominique Savinelli - Goodwin Procter LLP - Boston, MA | District Court Clark County, Nevada | A572315 and A576071 and A583058 |
| 07/2011 | | City of Merced/Merced RDA/OCWD v MTBE, et al. | Charles  C. Correll - King & Spalding - San Francisco, CA | United States District Court Southern District of New York | 04 Civ. 4968 (SAS) |
| 08/2011 | | State of New Hampshire v Hess, Corporation, et al. | James Maher - King & Spalding - Houston, TX | The State of New Hampshire Merrimack, SS. Superior Court | 03-c-550 |

| Deposition Date | Trial Date | Case Name | Case Client | Court | Case # |
|---|---|---|---|---|---|
| 08/2011 | | Keithly v Intelius | Tyler Farmer - Danielson Harrigan Leyh & Tollefson LLP - Seattle, WA | In the United States Court of Appeals for the Fifth Circuit | 09-20648 |
| 08/2011 | | Hayden v Glock | John Tartaglia III - Renzulli Law Firm, LLP - White Plains, NY | In the Superior Court of the State of California for the County of Santa Clara | 108CV118348 |
| 08/2011 | | Staten v Daisy | William M. Griffin - Friday, Eldredge & Clark - Little Rock, AR | In the Circuit Court of Greene County, Missouri | 107CC0151 |
| 10/2011 | | Grantham v Wal-Mart & SLB Toys | Hal D. Meltzer - Baker Sterchi Cowden & Rice LLC - Kansas City, MO | In the United States District Court for the Western District of Missouri in Springfield | 08-3466-CV-S-GAF |
| 10/2011 | | Staub v Breg | Lori Zirkle - Bowman and Brooke LLP - Phoenix, AZ | United States District Court for the District of Arizona | CV10-2038-PHX-LOA |
| 10/2011 | | Johnson v Breg | Michael Hurvitz - Morris Polich & Purdy LLP - San Diego, CA | In the United States District Court Eastern District on North Carolina Eastern Division | 4:11-CV-00010-D |
| 11/2011 | | Hale v Enerco Group, Inc. | Christopher Carney - Brouse McDowell - Cleveland, OH | In the United States District Court Northern District of Ohio Eastern Division | 1:10-cv-00867-DAP |
| 12/2011 | | Toys R Us v Tots in Mind | Robert R. Redmond - Williams Mullen - Richmond, VA | In the United States District Court for the Eastern District of Virginia Alexandria Division | 11-cv-00305-LO-JFA |
| 12/2011 | | Frietsch v I-Flow | Peter Strelitz - Segal McCambridge Singer & Mahoney - Austin, TX | Commonwealth of Kentucky Kenton Circuit Court Division III | 08-CI-2556 |
| 01/2012 | | Edwards v Ford | Amir Nassihi - Shook Hardy & Bacon LLP - San Francisco, CA | Superior Court for the State of California for the County of San Diego | 37-2011-00089707-CU-BT-CTL |
| 02/2012 | | Yosemite Springs Park Utility v Chevron | Cheryl A. Sabnis - King & Spalding - San Francisco, CA | In the Superior Court of the State of California in and for the County of Contra Costa | C 08-02938 |
| 02/2012 | | Nemeth v Medtronic | Laureen Galeoto - Greenberg Traurig, P.A. - Tampa, FL | Missouri Circuit Court Twenty-Second Judicial Circuit (City of St. Louis) | 042-01409 |
| 03/2012 | | Ramos v Mr. Bar-B-Q | Rahil Darbar - Barry, McTiernan & Wedinger - Edison, NJ | Superior Court of New Jersey, Law Division: Essex County | ESX-L-2798-07 |
| 03/2012 | | Post v Sunbeam | Tom Vitu - Moffet, Vitu, Lascoe & Packus - Birmingham, AL | United States District Court - Eastern District of California | S-11-792-JAM CMK |
| 04/2012 | | Geshke v Crocs (HF) | Julie Walker - Wheeler Trigg O'Donnell LLP - Denver, CO | United States District Court District of Massachusetts | 1:10-CV-11567-RGS |
| 04/2012 | | American Family Mutual Insurance (Power) v Electrolux | Sharon A. Luarde - Brouse McDowell - Cleveland, OH | In the United States District Court for the Northern District of Illinois | 1:10-CV-07864 |
| 05/2012 | | JCCP v Breg | Robert Miller - Bowman and Brooke LLP - Gardena, CA | Superior Court of the State of California for the County of Orange, Civil Complex Center | 4615 |
| 05/2012 | | Kitrosser v NuVasive | Gregory Jackson - Morris Polich & Purdy LLP - San Diego, CA | Superior Court of the State of California in and for the County of San Diego, Central Branch | 37-2009-00099700-CU-MM-CTL consolidated with 37-2010-00099400-CU-PO-CTL |
| 05/2012 | | Cohn v Hayward Pool | Lorraine E.J. Gallagher - Wilson Elser Mosowitz Edelman & Dicker LLP - White Plains, NY | Superior Court Judicial District of Stamford/Norwalk at Stamford | FST-CV-08-5006304S (X05) |
| 06/2012 | 06/2012 | State Farm General Insurance Company (Haroutounyan) v Electrolux, et al. | Cathy M. Diehl - Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz - Long Beach, CA | Superior Court of the State of California for the County of Los Angeles - North Central District | EC 053578 |
| | 06/2012 | Barnes v Breg (HF) | Barry Koopmann - Bowman and Brooke LLP - Minneapolis, MN | United States Court of Western District of Washington | 11-00402 JCC |
| 07/2012 | | Ismail v GE | Clement L. Glynn - Glynn & Finley, LLC - Walnut Creek, CA | Superior Court of California County of Stanislaus | 648595 |
| 08/2012 | | Robinson v Newell Window Furnishings | Holly Podulka - Schiff Hardin - Chicago, IL | United States District Court Eastern District of Missouri Eastern Division | 4:10-CV-01176 JCH |
| 08/2012 | | Hack v Daisy Manufacturing | William M. Griffin - Friday, Eldredge & Clark - Little Rock, AR | United States District Court Western District of Kentucky Bowling Green Division | 1:09CV-172-R |
| 08/2012 | | Prats v Graco Children's Products | Holly Podulka - Schiff Hardin - Chicago, IL | United States District Court Eastern District of Louisiana | 2:11-CV-01765-CJB-DEK |

| Deposition Date | Trial Date | Case Name | Case Client | Court | Case # |
|---|---|---|---|---|---|
| 08/2012 | | Robinson v ICON | John Halstead - Querrey & Harrow, Ltd. - Merrillville, IN | State of Indiana Lake Co. Superior Court #11 | 45D11-0809-CT-00118 |
| 09/2012 | | Kirkland v Scripto and Winn Dixie | Paul S. Jones - Luks, Santaniello, Petrillo & Jones - Orlando, FL | In the Circuit Court, Fourth Judicial Circuit, In and For Duval County, FL | 16-2009-CA-010915 |
| 10/2012 | | Neale v Volvo | John Thomas - Dykema Gossett PLLC - Ann Arbor, MI | In the United States District Court for the District of New Jersey Newark Division | 2:10-cv-04407-DMC-JAD |
| 10/2012 | | Novak v Walter Kidde Portable Equipment | Christina M. Jones - McGuire Woods LLP - Richmond, VA | In the District Court of Brazoria County, TX 23rd Judicial District Court | 64729 |
| 10/2012 | 11/2012 & 02/13 | Ibanez v Six Flags | Michael L. Amaro - Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz - Long Beach, CA | Superior Court of the State of California For the County of Los Angeles - North Valley District Chatsworth Courthouse | PC045095 |
| 11/2012 | | Perko v Ford (HF) | John Thomas - Dykema Gossett PLLC - Ann Arbor, MI | United States District Court for the Northern District of Ohio Eastern Division | 5:10cv-514 |
| 11/2012 | | Sunbeam DiSilvestro Investigation (Bookhamer) | Tom Vitu - Moffet, Vitu, Lascoe & Packus - Birmingham, AL | United States District Court Northern District of California | 09-CV-06027 EMC (DMR) |
| 11/2012 | | American National Property and Casualty Company (Huezo) v Electrolux Home Products, Inc. | Michael L. Amaro - Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz - Long Beach, CA | United States District Court Southern District of California | 11cv1340 JLS (NLS) |
| 11/2012 and 03/2014 | | Panico v Miles Industries | Greg Jones - Jones & Dyer, P.C. - Sacramento, CA | United States District Court Northern District of California (Oakland Division) | 3:11-cv-02146-EDL |
| 12/2012 | | Amica Mutual Insurance (Jervis) v Valspar | Anthony B. Corleto - Wilson Elser Moskowitz Edelman & Dicker LLP - Stamford, CT | State of Connecticut Superior Court Judicial District of Stamford/Norwalk Held at Stamford | FST-CV-10-6003636-S |
| | 12/2012 | Dowdy v Coleman | Kenneth R. Lang - Cozen O'Connor - Wichita, KS | In the United States District Court for the District of Utah, Central Division | 1:11-CV-00045-DAK |
| 03/2013 & 12/2013 | | Thiel v Baby Matters | Jerome A. Galante - Plunkett Cooney - Bloomfield Hills, MI | United States District Court Eastern District of Michigan Southern Division | 11-cv-15112 |
| 03/2013 | | Peet v Sunbeam | James W. Ozog - Wiedner & McAuliffe - Chicago, IL | State of Michigan In the Court for the County of Wayne | 11-007862-NI |
| 04/2013 | | Daniel v Ford | John Thomas - Dykema Gossett PLLC - Ann Arbor, MI | United States District Court Eastern District of California Sacramento Division | 2:11-cv-02890-WBS-EFB |
| 04/2013 | | Tao v Victoria's Secret | David Osterman - Goldberg Segalla LLP - Princeton, NJ | United States District Court Eastern District of New York | CV11-419 (JBW) (SMG) |
| 05/2013 | | Bard Avaulta Consulting (HF) | Lori Cohen - Greenberg Traurig LLP - Atlanta, GA | In the United States District Court for the Southern District of West Virginia Charleston Division | MDL: 2187 |
| 05/2013 | 07/2013 | Travelers (Anderson) v Electrolux | Melissa L. Yemma - Nicolson Associates LLC - Media, PA | United States District Court Central District of California | 2:12-CV-05112-DMG (Ex) |
| 05/2013 | | Deasey v Newell Window Furnishings | Heidi Oertle- Schiff Hardin - Chicago, IL | In the Superior Court of the State of Arizona in and for the County of Pima | C2011-5784 |
| 06/2013 | | Coleman v Matrixx | Krista Cosner - Drinker Biddle & Reath LLP - SF, CA | In the Circuit Court of Cook County, Illinois County Department, Law Division | 09 L 1580 |
| 07/2013 | | Sisk v Abbott Laboratories | Melissa B. Hirst - Jones Day - Chicago, IL | In the United States District Court for the Western District of North Carolina | 1:11-cv-00159 |
| 08/2013 | | Adams v P & G and Blanner v P & G | Neil Goldberg - Goldberg Segalla LLP - Buffalo, NY | In the Court of Common Pleas Hamilton County, OH | A-12-04223 and A-12-04225 |
| | 08/2013 | Roanoke v Aerofil Technology | Michael Turiello - Pretzel & Stouffer - Chicago, IL | American Arbitration Association | 69-155-Y-000080-12 |
| 09/2013 | | Christian v W.M. Barr, et al | Brian Triplett - Sinunu Bruni LLP - San Francisco, CA | United States District Court Central District of California, Western Division | 2:12-CV-09326-FMO-CW |
| 10/2013 | | Coplin v Enerco | Kevin P. Etzhorn - Sandberg, Phoenix & Von Gontard - St. Louis, MO | In the Circuit Court of Crawford County State of Missouri | 12CF-CC00003 |
| 10/2013 | | Landis & Nelson v Jarden | Robert W. Hayes - Cozen O'Connor - Philadelphia, PA | In the United States District Court for the Northern District of West Virginia Elkins Division | 2:11-cv-00101-JPB |
| 11/2013 | | DeSousa v Dental EZ | Jeffrey Walker - Walker & Mann - Rancho Cucamonga, CA | Superior Court of the State of California in and for the County of Riverside | INC 1105145 |

| Deposition Date | Trial Date | Case Name | Case Client | Court | Case # |
|---|---|---|---|---|---|
| 11/2013 | | Lunde v Kwik Trip | John P. Gatto - Murnane Brandt - Saint Paul, MN | State of Wisconsin Circuit Court, St. Croix County | 07 CV 179 |