Jerome L. Ringler (State Bar No. 59918)
E-mail: jlr@ringlerschmidt.com
Catherine Burke Schmidt (State Bar No. 212827)
E-mail: cbs@ringlerschmidt.com
RINGLER SCHMIDT
A LAW CORPORATION
233 Wilshire Blvd., Suite 900
Santa Monica, CA 90401
Tel:  310-955-4105/Fax:  310-955-4106

Michael S. Rapkin (State Bar No. 67220)
E-mail: msrapkin@gmail.com
Scott B. Rapkin (State Bar No. 261867)
E-mail: scottrapkin@rapkinesq.com
LAW OFFICES OF MICHAEL S. RAPKIN
233 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
Tel:  310-319-5465/ Fax:  310-319-5355

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SPARKS LANDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC., a Delaware Corporation; CARLSONS APPLIANCES, INC. a California Corporation; and DOES 1 through 20, inclusive,<br><br>Defendant | Case No.: CV13-01033-DSF (SHx)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION**<br><br>Hearing:<br>Date: June 30, 2014<br>Time: 1:30 p.m.<br>Ctrm: 840<br><br>Trial Date:  None Set<br>Scheduling Conf.: To Be Set Upon Ruling<br>Complaint Filed January 8, 2013 |

Plaintiff Sparks Landen ("Plaintiff") submits the following reply memorandum of points and authority in support of his Motion for Class Certification ("Motion") as to his claims against defendant Electrolux Home Products, Inc. ("Electrolux").

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. LEGAL ARGUMENT ..........................................................................................1

    A.     **Plaintiff Concedes That An Amended Class Definition Is Appropriate** ....................1

    B.     **The Amended Class Definition Is Ascertainable.** .........................................................2

    C.     **Commonality and Predominance Requirements Are Met.** ..........................................3

        1.     Common Design Establishes Commonality And Predominance .........................3

        2.     The Common Design Withstands Extraneous Components. ..............................4

            a)     *All Air Hose Lengths Are Designed Too Short.* .........................................5

            b)     *The Air Dome Change Does Not Impact Its Connection.* ..........................5

            c)     *Differences In The Pressure Switch Are Irrelevant.* .................................5

            d)     *Different Forces Do Not Disprove Common Design.* ...............................6

            e)     *The Design's Strain Relief Features Are Inadequate.* ..............................6

         3.     Materiality Is Determined Through An Objective Reasonable Person Standard Amenable to Classwide Proof. .......................................................................6

         4.     Breach of Implied Warranty Is Subject to Common Proof. ................................8

         5.     Plaintiff Has Put Forth A Viable Damages Method ............................................9

         6.     Proving Standing Does Not Create Individualized Issues. ................................10

    D.     **The Typicality And The Adequacy Requirements Are Met.** ..................................10

    E.     **Merits Issues Do Not Overlap With Class Certification Requirements.** ................12

III. CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir.1975) .................................................................... 12

*Blue Dolphin Charters, Ltd. v. Knight & Carver YachtCenter, Inc.*,
    2011 WL 5360074 (S.D. Cal. 2011) ............................................................ 9

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) ............................................................... 11

*Butler v. Mattel, Inc.*,
    2014 WL 764514 (C.D. Cal. 2014) ............................................................ 10

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010). ................................................................ 9

*Cole v. Asurion Corp.*,
    267 F.R.D. 322 (C.D. Cal. 2010) ................................................................. 6

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006) ...................................................................... 9

*Edwards v. Ford Motor Co.*,
    2012 WL 2866424 (S.D. Cal. 2012) ............................................................ 8

*Forcellati v. Hyland, Inc.*,
    2014 WL 1410264 (C.D. Cal Apr. 9, 2014) ................................................ 2

*Forrand v. Federal Exp. Corp.*,
    2013 WL 1793951 (C.D. Cal. 2013) ............................................................ 9

*Hammond Enters. v. ZPS Am. LLC*,
    2013 U.S. Dist. LEXIS 155135 (N.D. Cal. 2013) ....................................... 9

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3rd Cir. 2008) ..................................................................... 12

*In re Toyota Motor Corp. Hybrid Brake Mktg.*,
    288 F.R.D. 445 (C.D. Cal. 2013) ............................................................................. 10

*In Re Toyota Motor Corp. Unintended Acceleration Mktg,*
    *Sales Practices of Prod. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................... 10

*Johnnson v. Harely-Davidson Motor Co. Grp.,* LLC,
    285 F.R.D. 573 (E.D. Cal. 2012) ............................................................................... 7

*Keegan v. American Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................... 8, 9

*McCrary v. Elations Co., LLC,*
    2014 WL 1779243 (C.D. Cal. 2014) ......................................................................... 2

*Nichols v. American Nat'l Ins. Co.*,
    154 F.3d 875 (8th Cir. 1998) ...................................................................................... 4

*Ramirez v. STi Prepaid LLC*,
    644 F. Supp. 2d 496 (D.N.J. 2009) ......................................................................... 10

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523, 535 (N.D. Cal. 2012) ...................................................................... 2

*Six (6) Mexican Workers*,
    904 F.2d 1301 (9th Cir. 1990) .................................................................................... 2

*Stockwell v. City & Cnty. of San Francisco,*
    — F.3d —, 2014 WL 1623736 (9th Cir. Apr. 24, 2014) ........................................ 1

*Webb v. Carter's, Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ............................................................................... 7

*Werdebaugh v. Blue Diamond Growers*,
    2014 WL 2191901 (N.D. Cal. 2014) ................................................................... 2, 11

*Wiener v. Dannon Co., Inc.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ............................................................................... 2

*Wolin v. Jaguar Land Rover North America, LLC*,
    617 F.3d 1168 (9th Cir. 2010). ............................................................................ 7, 8, 12

**FEDERAL STATUTES**

Fed. R. Civ. Proc. 23 ............................................................................................................ 1

Fed. R. Civ. Proc. 30(b)(6) .................................................................................................. 3

**CALIFORNIA CASES**

*Engalla v. Permanente Medical Group, Inc.*,
    15 Cal. 4th 951 (1997) ............................................................................................... 7

*Hicks v. Kaufman & Broad Home Corp.*,
    89 Cal. App. 4th 908 (2001) .................................................................................. 8, 9

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ................................................................................ 7, 9

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002) ................................................................................... 7

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004). ............................................................................................. 9

## I. INTRODUCTION

Despite protestations to the contrary, this case is extraordinarily simple. It involves Plaintiff's claim that in each Washer, there exists an air hose that connects an air dome to a pressure switch. In each Washer, the air hose is too short and inadequately affixed. This leads to a propensity for disconnection that causes Washers to overflow during reasonably foreseeable use. Plaintiff's expert, Ronald L. Parsons, has examined 200 of these Washers that overflowed as a result of this very defect.

As to Electrolux's argument that, if certified as a class action, this case would involve the litigation of multiple designs in multiple models, this is simply not true. Electrolux admits that all Washers contain the air dome, air hose, and pressure switch and if the air hose disconnects, Washers will overflow. Because this design is the root of Plaintiff's claims, this case is perfectly suited for class action adjudication.

The materiality of Electrolux's failure to disclose this plausibly alleged safety risk is beyond question. Plaintiff has made clear that he would not have purchased his Washers had he known of their safety risk. Once Plaintiff learned of the defect, he hired an attorney and filed this action. As soon as he could, he replaced his Washers with Maytags that do not have the safety risk.

Finally, to the extent there is any debate as to whether the defect exists and whether it manifests, those debates are clearly merit based and play no role in the class certification analysis. *See Stockwell v. City & Cnty. of San Francisco,* — F.3d —, 2014 WL 1623736, at *5 (9th Cir. Apr. 24, 2014) ("courts must consider merits issues only as necessary to determine a pertinent Rule 23 factor, and not otherwise").

## II. LEGAL ARGUMENT

### A. Plaintiff Concedes That An Amended Class Definition Is Appropriate.

Rather than define the class as owners of Washers, Plaintiff proposes the following two classes: 1) All persons, sole proprietorships, partnerships, corporations, or any other entity located within California who purchased and own a freestanding top-load washing machine or a laundry center manufactured by Electrolux that contains an

air hose and an air dome ("Washers") from January 1, 2005 to present; and 2) owners of Washers manufactured within four years prior to the filing of Complaint. The first class would be entitled to relief under all three causes of action; the second class would be entitled under the breach of implied warranty cause of action. In addition, Plaintiff amends to exclude from the class anyone who owns a Washer that has overflowed.[1]

### B. The Amended Class Definition Is Ascertainable.

Courts have consistently rejected protestations that defining the class in terms of purchasers leads to an unascertainable class. *See Forcellati v. Hyland, Inc.*, 2014 WL 1410264 (C.D. Cal Apr. 9, 2014). In this Circuit, "there is no requirement that the identity of the class members…be known as the time of certification." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012); *see also McCrary v. Elations Co., LLC,* 2014 WL 1779243 at * 8 (C.D. Cal. 2014) ("While [*Carrera*] may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit"); *see also Werdebaugh v. Blue Diamond Growers* ("*Werdebaugh*"), 2014 WL 2191901 at * 10-11 (N.D. Cal. 2014) (rejecting argument that the class was not ascertainable because defendant had no records identifying the purchasers). "While it is undeniable that there is no surefire method to confirm on a class-wide basis whether class members actually purchased one of Defendants' products, this ascertainability problem is of no material relevance to Defendants, as it does not affect their bottom-line in any cognizable way, and there is no reason it should inure to Defendants' benefit." *Forcellati*, at * 8 (citing *Six (6) Mexican Workers*, 904 F.2d 1301, 1306-07 (9th Cir. 1990); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 672 (C.D. Cal. 2009) ("[T]he Ninth Circuit has minimized the weight to be placed on the existence of unknown class members.").

Here, class members must have purchased (and/or own) one of the models listed

---

[1] The exclusions now read as follows: Excluded from the Class are those who own Washing Machines that have already been repaired to correct the air hose routing and strain-relief features of the water level pressure system at Electrolux's expense. Also excluded from the class are those who own Washing Machines that have overflowed. Also excluded from the class are governmental entities, Electrolux, Electrolux's authorized dealers, and their parents, subsidiaries, affiliates, employees, officers, directors, and co-conspirators. Also excluded is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

on ELUX 00018-27 and ELUX 01041-49. Every Washer comes with a unique number that renders the definition sufficiently definite. *See* Declaration of Catherine Burke Schmidt In Support of Plaintiff's Motion For Class Certification ("Schmidt Decl.") Exs. 4, 9, and Ex. 8 at 2:11-15, 3:5-9. Thus, the amended definition satisfies ascertainability.

### C. Commonality and Predominance Requirements Are Met.

As to commonality and predominance, Electrolux asserts: 1) there is no common design; 2) proving materiality requires individual analysis; 3) proving breach of implied warranty requires individual analysis; 4) the damage model is not viable classwide; and 5) proving standing requires individual analysis. As demonstrated below, Electrolux's arguments find no support in prevailing authority or in the factual record.

#### 1. Common Design Establishes Commonality And Predominance.

While Electrolux is correct that Plaintiff has the burden to submit evidence of the common design, Plaintiff met this burden through Electrolux's own testimony. Plaintiff noticed the depositions of Electrolux's designees under Federal Rule of Civil Procedure 30(b)(6) to testify on the following matters:

> 1. The design of the connection of the Air Hose to the Air Dome and the connection of the Air Hose to the [Pressure Switch] in all Washing Machines…
>
> 2. The design of the Routing of the Air Hose to the Air Dome and the Routing of the Air Hose to the [Pressure Switch] in all Washing Machines.
>
> 3. Any changes to the designs referenced in Matters 1 and 2, above.

Schmidt Decl. Ex. 1, 2:18-4:9. Electrolux is a multi-national multi-billion-dollar company that was permitted to choose any person to testify on the matters noticed. Electrolux designated Carl King. *See id*. Ex. 5. Through Mr. King, Electrolux testified that: all Washers utilize an air dome that connects to a pressure switch via an air hose; there were no changes to the air hose from 2005 to the present that affected its connection at either end; there were no changes from 2005 to the present to the pressure switch that affected its connection to the air hose; and the design of the Washers never contained a service loop (an additional length of air hose that is looped and secured to reduce stress on the connection during operation of the machine) at either connection of

the air hose. *See id.* 35:3-22, 43:19-44:13, 77:8-79:6, 89:9-90:4, 97:12-98:3, 98:18-20, 102:5-15, 110:24-111:12, 112:6-19, 116:23-117:15; Ex. 10 at 14. Electrolux agrees that disconnection of the air hose will result in overflow (Kim Decl. Ex. C at 8 ¶ last). Because of these admissions, there is no need for expert testimony to conclude that the overflow emanates from the same root cause. *Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998) (if trier of fact is capable of drawing its own inferences from the available evidence, expert opinion testimony is irrelevant). Even if the Court determines otherwise, to rebut Electrolux's arguments, Plaintiff submits the testimony of Mr. Parsons, a recognized expert in mechanical failure analysis who has examined 200 of these defective Electrolux Washers. *See* Declaration of Ronald L. Parsons In Support of Plaintiff Motion For Class Certification ("Parsons Decl.") ¶ 7.

**2.   The Common Design Withstands Extraneous Components.**

300 models use an air dome that connects to a pressure switch/transducer via an air hose. These models include 23 different air hose lengths[2], 7 different air domes, transducers in lieu of pressure switches, 33 pressure switches, freestanding top-loaders, stacked laundry centers (some gas, some electric) and some with high-efficiency options. *See* Opposition 2:24-26, 3:3, 3:4-5. Electrolux's conclusion that that these differences create barriers to class certification does not withstand scrutiny.

First, under Federal Rule of Civil Procedure 30(b)(6), Plaintiff objects to the conflicting evidence submitted in the Declaration of Jason J. Kim In Opposition To Plaintiff Sparks Landen's Motion For Class Certification ("Kim Decl.") as more fully articulated in Plaintiff's Evidentiary Objections To Declaration Of Jason J. Kim And Exhibits Thereto ("Kim Decl. Objections") on the grounds that Electrolux cannot submit evidence that contradicts testimony of its designees. Second, even if the Court considers Electrolux's ambush evidence, the differences articulated are irrelevant to the

---

[2] Electrolux fails to state whether all 23 lengths are utilized as part of the water level pressure system in Washers during the relevant time period. *See* Opposition 2:24, 6:9-10. In addition, Electrolux presents no evidence that any of the models with air hose part number 144617-023 differ from one another in any way.

determination of a common design. Parsons Decl. ¶¶ 15-25. In other words, by proving the defect as to one Washer, Plaintiff proves the defect classwide.

### a) All Air Hose Lengths Are Designed Too Short.

Although there are 23 different lengths of air hose, Plaintiff claims Electrolux's design causes them all to be too short because the design fails to incorporate a service loop. *See id.* 110:24-111:12, 112:6-19, 116:23-117:15; Ex. 10 at 14. Moreover, there are no changes to the design of the air hose as to its length. *See id.* 108:19-109:5. The common design exists regardless of different hose lengths.

### b) The Air Dome Change Does Not Impact Its Connection.

Electrolux testified that it was only aware of one change to the air dome from 2005 to present. *See* Schmidt Suppl. Decl. Ex. 11, 86:17-25. The change in the air dome is irrelevant because there are no known reasons for the change, no known natural consequences and no known mechanical consequences of the change or its affect on the connection to the air hose. *See* Schmidt Decl. Ex. 5 at 77:17-79:6; 98:22-100:18. Even if this Court were to consider Electrolux's conflicting report, there is no evidence that the 2010 change – a "design change to aid in the injection molding production of the part" – has any affect on the connection of the air dome to the air hose. Kim Decl. Ex. C at 13. Therefore, changes to the air dome are irrelevant to the common design.

### c) Differences In The Pressure Switch Are Irrelevant.

There are: 33 different pressure switches; Electronic transducers versus pressure switches; pressure switches with plastic versus metal connections; and gas stacked laundry centers with clamps at the connection to the pressure switch. All of these differences are irrelevant to the determination that the Washers contain the same alleged root cause for potential overflow. While there may be 33 pressure switches, there are no affects of those variations on the connection of the air hose. *See* Schmidt Decl. Ex. 5 at 97:12-98:20. In addition, there are no differences between the connections of the air hose to the electronic transducer versus the pressure switch. *See* Schmidt Suppl. Decl. Ex. 11, 117:23-118:19. Moreover, regardless whether there is a pressure switch or an

electronic transducer with a plastic or metal connection, the design is dependent on the preservation of the air hose connection. *See* Kim Decl. Ex. C at 8 ¶ last. At best, even if these factors lowered the likelihood of disconnection at the pressure switch, they would merely encourage disconnection at the air dome. *See* Parsons Decl. ¶ 19. Therefore, differences in the pressure switches are irrelevant to the common design.

### d) *Different Forces Do Not Disprove Common Design*.

Prof. Rasty concludes that vibration absorption systems and spin speeds affect the amount of force acting on the air hose. Similarly, he states that lighter machines (i.e., freestanding top-loaders) and longer wash cycles produce more force. *See* Opposition at 6:20-7:10. The varying forces do not create individualized issues, but rather support Plaintiff's claim that the design must incorporate adequate fixation of the air hose. In other words, if Electrolux were to utilize a design that properly affixed the air hose, its connection would be preserved regardless of differing forces.

### e) *The Design's Strain Relief Features Are Inadequate*.

Electrolux's designed method of affixing the air hose – the utilization of tape and adhesive in <u>potentially varying manners</u> - supports Plaintiff's claims that the designed strain relief features (features to relieve strain on the air hose) are inadequate. A design that utilizes a service loop secured by a clamp would obviate the potential for variation in application. For all of the foregoing reasons, because the Washers share the same root cause for overflow, requisites of commonality and predominance are satisfied.

### 3. Materiality Is Determined Through An Objective Reasonable Person Standard Amenable to Classwide Proof.

First, Electrolux's argument as to materiality is limited to Plaintiff's fraudulent concealment claim because individual questions of reliance are no barrier to class certification of UCL claims. *See Cole v. Asurion Corp.*, 267 F.R.D. 322, 328 (C.D. Cal. 2010). Second, Electrolux ignores well-established California precedent concerning common proof of reliance that holds: 1) not only is the determination of whether a fact is "material" a question of fact left to the trier of fact; but that 2) a reasonable person

standard is applied to that determination. *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-977 (1997). For determination of this issue to be anything other than classwide, the trier of fact would have to conclude that a Washer's propensity to overflow and cause personal injury and/or property damage, is so obviously unimportant that the trier of fact could not reasonably find that a reasonable person would have been influenced by it. What reasonable person would buy a Washer knowing it had a propensity to overflow and cause damage when they can buy one without it? "Even if defendant were able to establish a lack of causation as to a handful of class members, it does not render the issue of causation an individual, rather than a common, one." *Massachusetts Mutual Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282, 1292 (2002) (citations omitted).

Dr. Christine Wood's unsworn conclusions[3] that materiality is an individualized inquiry has been mass-produced to suit cases ranging from rash-causing clothes, to motorcycle engine heat, to unintended engine surges, to overflowing washing machines. *See* Opposition at 17:4-7. Her opinions are so broad that her report could be tailored for every consumer fraud action. Accepting Dr. Wood's opinion (particularly when Plaintiff has had no opportunity to depose her) not only eviscerates well-established standards for proving causation, but all common law fraud class actions.

In *Wolin v. Jaguar Land Rover North America, LLC,* plaintiff alleged that Land Rover failed to disclose a material fact that certain vehicles suffer from a defect in the alignment geometry. *Wolin v. Jaguar Land Rover North America, LLC*, ("*Wolin*") 617 F.3d 1168, 1173 (9th Cir. 2010). The Ninth Circuit concluded: "All of these allegations are susceptible to proof by generalized evidence." *Id*. Therefore, not only are the cases Electrolux cites factually distinguishable[4], but, unlike *Wolin*, they do not constitute

---

[3] Plaintiff objects to the admissibility of Dr. Wood's report. *See* Kim Decl. Objections.
[4] This case is unlike *Vioxx*, where individualized inquiries existed as to a drug's affect on a person's health, their financial capabilities, and the decisions of their doctor. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 134 (2009). Similarly *Webb v. Carter's, Inc.* 272 F.R.D. 489, 502 (C.D. Cal. 2011) (class action alleging adverse skin reactions from clothing where manufacturer offered full refunds to unsatisfied customers)*, Johnson v. Harely-Davidson Motor Co. Grp.,* LLC, 285 F.R.D. 573, 581 (E.D. Cal. 2012) (class action where plaintiffs testified that despite the excessive heat, they

1 mandatory authority.

2 In this case, the failure to disclose the potential overflow constitutes a material omission because a reasonable person would not purchase a washer with a safety risk. Indeed, Plaintiff would not have purchased any of his Washers had he known they had a propensity to overflow. *See* Declaration Of Sparks Landen In Support Of Plaintiff's Motion For Class Certification ("Landen Decl.") ¶ 7. Once Plaintiff learned of the defect in October of 2012, he hired an attorney. *See* Schmidt Suppl. Decl. Ex. 12 84:6-8. Naturally, an investigation of his claims took place before he filed this action in the Los Angeles Superior Court two months later on January 8, 2013. *See id.* ¶ 2. "As soon as [he] could potentially turn them over", he replaced his Washers with Maytags (on loan until he could repair his Washers). Kim Decl. Ex. D 73:11-13. Finally, Plaintiff would have read a warning of overflow had Electrolux disclosed the risk because Plaintiff reads his product materials. *See* Schmidt Suppl. Decl. Ex. 12, 123:9-124:8; Landen Decl. ¶ 3 Ex. 1. Both legally and factually, proof of materiality is common.

### 4. Breach of Implied Warranty Is Subject to Common Proof.

First, Electrolux argues that *Hicks v. Kaufman & Broad Home Corp.,* 89 Cal. App. 4th 908, 918 (2001) is not applicable to this case based on a San Diego District Court case. *See* Opposition at 18. Not only is this a merits-based argument, but it ignores this Court's prior ruling citing *Hicks*. *See* Plaintiff's Request For Judicial Notice ("Req. J. Not.") Ex. 3 at 3. Second, Electrolux asserts that Plaintiff must provide proof that all machines will fail during their useful lives. However, the Ninth Circuit explicitly ruled that "to secure certification of a class, plaintiffs did not need to demonstrate that the defect was 'substantially certain to manifest in a future malfunction.'" *Keegan v. American Honda Motor Co., Inc.*, ("*Keegan*") 284 F.R.D. 504, 527 (C.D. Cal. 2012) leave to appeal denied, 2012 WL 7152289 (9th Cir. 2012) (quoting *Wolin,* 617 F. 3d at 1375). Aside from reiterating its argument on the common

---

would buy the same motorcycles again), and *Edwards v. Ford Motor Co.,* 2012 WL 2866424, at *9 (S.D. Cal. 2012) (class action alleging unintended engine surge in cars where there was no root cause) are factually distinguishable.

8
Reply Memorandum In Support of Class Certification

design, Electrolux argues that because consumers have different expectancies as to the useful life of washers, this creates individualized inquiries. However, this is not the law. As succinctly stated in *Keegan*, if the plaintiffs "can demonstrate that the [defect] is substantially certain to result in premature and excessive tire wear that renders the vehicles unfit for driving, they will prevail. The breach of implied warranty claim is therefore susceptible of common proof." *Keegan,* 284 F.R.D. at 537. The same is true here. If Plaintiff is able to establish that disconnection of the air hose is substantially certain to occur during the useful life of the Washer, Plaintiff will prevail classwide.

### 5. Plaintiff Has Put Forth A Viable Damages Method

Defendant's argument that Plaintiff has failed to prove a viable class-wide damages model is unavailing. "At class certification, [P]laintiff must present a likely method for determining class damages, though it is not necessary to show that [this] method will work with certainty at this time." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010). Damages for a successful fraud cause of action is measured by the difference between the value parted with and the actual value received. *Colgan v. Leatherman Tool Group, Inc.* ("*Colgan*") 135 Cal. App. 4th 663, 675 (2006).[5] Under the UCL, "the difference between what the plaintiff paid and the value of what the plaintiff receives is a proper measure of restitution." *Vioxx,* 180 Cal. App. 4th at 131. Under his breach of warranty claim, Plaintiff may seek the cost of repair. *Hicks*, 89 Cal. App. 4th at 918. Finally, *Forrand v. Federal Exp. Corp.*, 2013 WL 1793951 (C.D. Cal. 2013) is distinguishable. In *Forrand,* this Court determined that a damage model based on the time between punching in and punching out fails to tie California law to a reliable measurement of damages because punched time doesn't necessarily reflect compensable hours worked. *Id.* at *3.

---

[5] Claims for fraudulent concealment based on defective products are not barred by the economic loss rule. *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979, 988 (2004). The cases Electrolux cites are distinguishable because the evidence tended only to show defendants' nonperformance of the underlying contract. *Blue Dolphin Charters, Ltd. v. Knight & Carver YachtCenter, Inc.*, 2011 WL 5360074 (S.D. Cal. 2011) and *Hammond Enters. v. ZPS Am. LLC*, 2013 U.S. Dist. LEXIS 155135 (N.D. Cal. 2013).

Here, the difference in value of the Washers class members received as compared to the price they paid is equal to the cost of repair – the cost to eliminate the alleged defect. Even if Electrolux doubts Mr. King's estimate of the cost of repair (*see* Opposition at 21:5-7), as a rebuttal, Plaintiff offers evidence that the estimated cost of onsite repair equals approximately $50-$100. *See* Parsons Decl. ¶ 26.

### 6. Proving Standing Does Not Create Individualized Issues.

In *Butler v. Mattel, Inc.*, plaintiff alleged product defects and misrepresentation claims. *Butler v. Mattel, Inc.,* 2014 WL 764514 at *1 (C.D. Cal. 2014). This Court determined that individualized inquiries would dominate whether class members had standing because the "injury was too 'conjectural and hypothetical'". *Id.* at *2. The injury would occur only if the class member was affected by mold, and if mold grew if the product was put in extreme (potentially unforeseeable) circumstances. *Id.*

This case is different for two reasons. First, under the UCL, Plaintiff is not required to prove standing as to absent class members. *See In re Tobacco II Cases,* 46 Cal. 4th 298, 306 (2009). Second, Plaintiff and the Class suffered actual harm at the time they purchased their Washers when Electrolux failed to disclose an alleged known safety risk. *See, e.g., Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 501 (D.N.J. 2009); *In Re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practices of Prod. Liab. Litig.,* 754 F. Supp. 2d 1145 (C.D. Cal. 2010).[6] Thus, unlike in *Butler v. Mattell*, proving standing is common to the entire class.

### D. The Typicality And The Adequacy Requirements Are Met.

Defendant asserts three arguments against typicality: 1) Plaintiff did not purchase every Washer model; 2) Electrolux's statute of limitations defense is unique to Plaintiff; and 3) the alleged defect is not material to Plaintiff. Contrary to Electrolux's assertions, a class representative may bring claims for "substantially similar" products. *See, e.g.*, *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 565-66 (2012) (finding typicality

---

[6] Defendant's reliance on *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 288 F.R.D. 445, 449 (C.D. Cal. 2013) is misplaced. The court found that the updated software Toyota provided *prior* to the suit, at no cost to the consumer, "rectified any actual or perceived problem with the brakes of the cars."

because claims for all variations contained similar omissions); *Werdebaugh*, at *15-16.

In this case, Plaintiff bought three Washers. Any dissimilarity in the models of Washers is overcome by the fact that Plaintiff and the proposed class has been harmed in the same manner – Electrolux's failure to disclose its propensity to overflow. Second, while it is true that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," (*Hanlon*, 976 F.2d at 508 (citations omitted)), in this case, there is no such risk. Electrolux cannot dispute that Plaintiff learned of the alleged defect in 2012 because it denies to this day that the defect exists and admits it did not warn of the alleged defect. *See* Motion 4:10-12, 18:9-15. Moreover, determination of the issue is a merits determination not suitable for resolution at the class certification stage. *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566 (2012). Finally, because Plaintiff purchased a Washer in 2012, that claim escapes statute of limitations issues.

Finally, Electrolux's recitation of events surrounding Plaintiff is strained beyond recognition. Essentially, Electrolux claims that Plaintiff did not remove his Washers quickly enough. As described in more detail above, as soon as possible, Plaintiff removed the Washers from his building and caused them to be preserved for evidence in this case. *See* Kim Decl. Ex. D 71:24-72:11, 72:14-22, 73:11-13. His decision to refrain from potentially unnecessarily alarming his tenants during the pendency of his investigation of the claims underlying this lawsuit does not defeat his claim for fraudulent concealment. Even if Electrolux's version of events were true, courts have rejected similar arguments. *Werdebaugh,* 2014 WL 2191901 at *16 (rejecting defendant's argument that because plaintiff purchased more of the product subsequent to the lawsuit he was not typical). Individual experience with a product is irrelevant because the UCL employs an objective test – whether "members of the public are likely to be deceived." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011). For all of the foregoing reasons, arguments against typicality fail.

Electrolux's two arguments against adequacy are readily resolved. Electrolux's

concern for limiting damages to cost of repair has been address by limiting the class definition to exclude Washers that have overflowed. Second, whether Plaintiff is a consumer is irrelevant; Electrolux cites to no authority to the contrary.

### E. Merits Issues Do Not Overlap With Class Certification Requirements.

Electrolux argues: "there is no proof of any classwide defect, just a few one-off claims that Electrolux washing machines have occasionally overflowed." Opposition 2:5-6. It also claims: "Plaintiff has made no showing that Electrolux washing machines overflow under conditions of normal use." *Id.* 2:18-19. As the Court has already recognized, "Plaintiff has alleged that all of the washers at issue suffer from a common design defect that creates an unacceptable likelihood of catastrophic failure regardless of the manner in which the product is used by the consumer." Req. J. Not. Ex. 3 at 3 ¶ 1. The Ninth Circuit has consistently held that "proof of the manifestation of a defect is not a prerequisite to class certification." *Wolin*, 617 F.3d at 1173. (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975)). At this stage, prior to merits discovery, it is error for this Court to determine these issues, and must rely on Plaintiff's allegations.

Finally, Electrolux's inability to credibly distinguish *Whirlpool*, *Sears*, *Tait*, or *Terrill* is conspicuous. These recent cases cannot be ignored. *See* Motion 2:2-3:27.

### III. CONCLUSION

Plaintiff's burden in establishing class certification requirements is a showing of a preponderance of admissible evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321 (3rd Cir. 2008). Plaintiff has met this burden by submitting the indisputable evidence offered by Electrolux through its 30(b)(6) designee that Washers operate with the same componentry criticized by Plaintiff. For this reason and all of the foregoing reasons, Plaintiff respectfully requests that this Court grant his Motion in full.

Dated: June 13, 2014

RINGLER SCHMIDT, A LAW CORPORATION
in association with LAW OFFICES OF MICHAEL S. RAPKIN

By: _____
Jerome L. Ringler
Catherine Burke Schmidt
Attorneys for Plaintiff Sparks Landen