1  Jerome L. Ringler (State Bar No. 59918)
   E-mail: jlr@ringlerschmidt.com
2  Catherine Burke Schmidt (State Bar No. 212827)
   E-mail: cbs@ringlerschmidt.com
3  RINGLER SCHMIDT
   A LAW CORPORATION
4  233 Wilshire Blvd., Suite 900
   Santa Monica, CA 90401
5  Tel:  310-955-4105/Fax:  310-955-4106

6  Michael S. Rapkin (State Bar No. 67220)
   E-mail: msrapkin@gmail.com
7  Scott B. Rapkin (State Bar No. 261867)
   E-mail: scottrapkin@rapkinesq.com
8  LAW OFFICES OF MICHAEL S. RAPKIN
   233 Wilshire Boulevard, Suite 700
9  Santa Monica, CA 90401
   Tel:  310-319-5465/ Fax:  310-319-5355
10
   Attorneys for Plaintiff
11
                 **UNITED STATES DISTRICT COURT**
12
        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
13

14  SPARKS LANDEN, individually and          Case No.: CV13-01033-DSF (SHx)
    on behalf of all others similarly situated,
15                                            **SUPPLEMENTAL DECLARATION OF
           Plaintiff,                         CATHERINE BURKE SCHMIDT IN
16                                            SUPPORT OF PLAINTIFF'S MOTION
        v.                                    FOR CLASS CERTIFICATION**
17
    ELECTROLUX HOME PRODUCTS,                 Hearing:
18  INC., a Delaware Corporation;             Date: June 30, 2014
    CARLSONS APPLIANCES, INC. a              Time: 1:30 p.m.
19  California Corporation; and DOES 1        Ctrm: 840
    through 20, inclusive,
20                                            Trial Date:  None Set
           Defendant                          Scheduling Conf.: To Be Set Upon Ruling
21                                            Complaint Filed January 8, 2013

22       I, CATHERINE BURKE SCHMIDT, declare as follows:

23       1.      I am an attorney at law duly licensed to practice before all of the courts of

24  the State of California and am a partner in the firm of Ringler Schmidt, A Law

25  Corporation, co-lead counsel of record for Plaintiff Sparks Landen.  I am one of the

26  attorneys responsible for the handling of this file and have personal knowledge of the

27  facts contained in this declaration.  If called as a witness, I would competently testify as

28  to the matter set forth in this declaration.

                                          1

2.      Prior to filing this action on January 8, 2013, there was an investigation of the facts underlying Plaintiff Sparks Landen's claims.

3.      True and correct copies of pages of the transcript of the Videotaped Deposition of Carl D. King dated March 10, 2014, are attached as Exhibit 11.

4.      True and correct copies of pages of the transcript of the Videotaped Deposition of Sparks Landen dated April 24, 2014, are attached as Exhibit 12.

5.      True and correct copies of pages of the transcript of the Videotaped Deposition of Stephen R. Brown dated March 4, 2014, are attached as Exhibit 13.

6.      In response the Notice of Deposition of 30(b)(6) Designees that I served on February 18, 2014, Electrolux did not produce Matthew Cribb and did not disclose his identity.

7.      On or about June 19, 2013, I received a copy of Defendant Electrolux Home Products, Inc.'s Initial Disclosures Pursuant to Fed. R. Civ. Proc. 26(a)(1)(A) ("Initial Disclosures").  A true and correct copy of Defendant Electrolux Home Products, Inc.'s Initial Disclosures is attached as Exhibit 14.

8.      During the course of this litigation I have never received an amendment or supplement to the Initial Disclosures.

I declare under penalty of perjury under the laws of the State of California and the laws of the United States that the foregoing is true and correct.

Executed this 13th day of June 2014, at Santa Monica, California.


By: _____
           Catherine Burke Schmidt

Supplemental Declaration Of Catherine Burke Schmidt Re: Plaintiff's Motion For Class Certification

Exhibit 11

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4

5   SPARKS LANDEN, individually  )
    and on behalf of all others  )
6   similarly situated,          )
                                 )
7                  Plaintiff,    )
                                 )
8   vs.                          ) Case No.
                                 ) CV13-01033-DSF (SHx)
9   ELECTROLUX HOME PRODUCTS,    )
    INC., a Delaware Corporation; ) Volume I
10  CARLSONS APPLIANCES, INC. a  )
    California Corporation; and  )
11  DOES 1 through 20, inclusive, )
                                 )
12                 Defendant.    )
    _____)

13

14

15

16        VIDEOTAPED DEPOSITION OF CARL D. KING

17              Los Angeles, California

18             Monday, March 10, 2014

19

20

21

22

23

24  Reported by:  Alla Ponto
                  CSR No. 11046
25  NDS Job No.:  161081

                                                    1

1   of '07, it says, "Add note 11.  H2 add note 11

2   flag."

3   BY MR. RINGLER:

4        Q.   Did any of those changes relate to the

5   connector to the air hose where it interfaces the

6   pressure switches?

7             MR. KIM:  Objection; vague and ambiguous.

8             THE WITNESS:  From what I read here, no,

9   none of them reference the connection ports or the

10  nipple of the pressure switch.

11  BY MR. RINGLER:

12       Q.   And would this apply both to the

13  freestanding top-loader as well as the laundry

14  center top-loader?

15       A.   I don't know -- it refers to this print.  I

16  don't -- without looking at a bill of materials, I

17  would not be able to tell you if this switch was

18  used in what models.

19       Q.   Let me go back against the grain here for a

20  moment.

21            You said just a few minutes ago that if

22  these were current prints, they would be current up

23  until the time they were produced to us?

24       A.   Yeah.  Usually if we pull the current

25  version of the print, it will be current at that

                                                      76

Carl D. King                                                March 10, 2014

1        Q.    Ten?  Roughly a dozen?

2        A.    Roughly, yes.

3        Q.    All right.  So what you're telling us is

4    based on 00091 you can tell there were roughly a

5    dozen changes to the air hose from '05 until the

6    print was pulled, but the only change you can tell

7    us with specificity is the one in 2010?

8        A.    That --

9              MR. KIM:  Objection; misstates prior

10   testimony.

11   BY MR. RINGLER:

12       Q.    Is that correct?

13       A.    I can only tell you the change -- based on

14   this, the change was made in 2010.

15       Q.    Is what I said correct?

16       A.    Yes.

17       Q.    Now, let's analyze in the same fashion the

18   air dome on 93.

19             Based on this document, can you tell if any

20   changes were made in the air dome between '05 and

21   the present?

22       A.    No.  I can tell you it was changed six

23   times from -- I can't tell right now.  It was

24   changed in 2010.  That's the last time it was

25   changed.

                                                          86

Carl D. King                                                                    March 10, 2014

1   either connection service -- rather, pressure switch

2   or air dome in the freestanding top-loader or

3   laundry center top-loader between '05 and the time

4   you left; correct?

5           MR. KIM:  Objection; vague and ambiguous;

6   misstates prior testimony.

7           THE WITNESS:  There's no extra tube

8   immediately around the connections.

9   BY MR. RINGLER:

10     Q.   At those two ends?

11     A.   At those two -- there's no extra hose

12   immediately by those connections.

13     Q.   So the answer to my question is "yes"?

14     A.   Yes.  There's no extra hose at those

15   connections.

16     Q.   Just bear with me.  We're almost done.

17           Let's go off the record for just a minute.

18           THE VIDEOGRAPHER:  Off the record at 12:40.

19           (Recess.)

20           THE VIDEOGRAPHER:  Back on the record at

21   12:51.  Please continue.

22   BY MR. RINGLER:

23     Q.   You mentioned in your earlier testimony

24   that the pressure switch was changed with a

25   transducer.

117

Schmidt Suppl. Decl. Ex. 11
Page 07

1          What change did that affect?

2      A.   The pressure switch didn't change.  The

3   transducer is instead of a pressure switch.

4      Q.   It's a replacement for a pressure switch?

5      A.   Yes.

6      Q.   And did the transducer change the connector

7   between the air hose and the transducer as opposed

8   to air hose and the pressure switch?

9          MR. KIM:  Objection; vague and ambiguous.

10          THE WITNESS:  The two hooks to either

11   component.  They are different components.  I can't

12   say that the two are the same.

13   BY MR. RINGLER:

14      Q.   You would need to see design drawings to

15   answer that question?

16      A.   Yes.

17      Q.   And none of those have been presented to

18   you here today; correct?

19      A.   I have not seen a transducer drawing.  No.

20      Q.   Let me show you this exhibit.  It's

21   previously been marked as 4 for identification.  And

22   it's the "Laundry centers produced January 1, 2005,

23   through December 31, 2005," and then right on

24   through "January 1, 2010, through December 31,

25   2010."

118

```
1    STATE OF CALIFORNIA        )
                                )  ss:
2    COUNTY OF LOS ANGELES      )

3

4            I, ALLA PONTO, do hereby certify:

5            That I am a duly qualified Certified Shorthand

6    Reporter, in and for the State of California, holder of

7    certificate number 11046, which is in full force and

8    effect and that I am authorized to administer oaths and

9    affirmations;

10           That the foregoing deposition testimony of the

11   herein named witness was taken before me at the time and

12   place herein set forth;

13           That prior to being examined, the witness named

14   in the foregoing deposition, was duly sworn or affirmed

15   by me, to testify the truth, the whole truth, and

16   nothing but the truth;

17           That the testimony of the witness and all

18   objections made at the time of the examination were

19   recorded stenographically by me, and were thereafter

20   transcribed under my direction and supervision;

21           That the foregoing pages contain a full, true

22   and accurate record of the proceedings and testimony to

23   the best of my skill and ability;

24           That prior to the completion of the foregoing

25   deposition, review of the transcript was requested.
```

130

Carl D. King                                                    March 10, 2014

1           I further certify that I am not a relative or

2     employee or attorney or counsel of any of the parties,

3     nor am I a relative or employee of such attorney or

4     counsel, nor am I financially interested in the outcome

5     of this action.

6

7           IN WITNESS WHEREOF, I have subscribed my name

8     this _____ day of _____, _____.

9

10

11     _____

12           ALLA PONTO, CSR No. 11046

13

14

15

16

17

18

19

20

21

22

23

24

25

131

Schmidt Suppl. Decl. Ex. 11
Page 010

Exhibit 12

Schmidt Suppl Decl. Ex. 12
Page 011

C. Sparks Landen                                          April 24, 2014

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4

5   SPARKS LANDEN, individually  )
    and on behalf of all others  )
6   similarly situated,          )
                                 )
7                    Plaintiff,  )
                                 )
8   vs.                          ) Case No.
                                 ) CV13-01033-DSF (SHx)
9   ELECTROLUX HOME PRODUCTS,    )
    INC., a Delaware Corporation; ) Volume I
10  CARLSONS APPLIANCES, INC. a  )
    California Corporation; and   )
11  DOES 1 through 20, inclusive, )
                                 )
12                   Defendant.  )
    _____)

13

14

15

16       VIDEOTAPED DEPOSITION OF C. SPARKS LANDEN

17              Santa Monica, California

18              Thursday, April 24, 2014

19

20

21

22

23

24  Reported by:  Ruth C. Moore
                  CSR No. 8444
25  NDS Job No:   161830

                                                    1

Schmidt Suppl Decl. Ex. 12
Page 012

```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3                         WESTERN DIVISION

 4

 5   SPARKS LANDEN, individually  )
     and on behalf of all others  )
 6   similarly situated,          )
                                  )
 7                  Plaintiff,    )
                                  )
 8   vs.                          ) Case No.
                                  ) CV13-01033-DSF (SHx)
 9   ELECTROLUX HOME PRODUCTS,    )
     INC., a Delaware Corporation; ) Volume I
10   CARLSONS APPLIANCES, INC. a  )
     California Corporation; and  )
11   DOES 1 through 20, inclusive, )
                                  )
12                  Defendant.    )
     _____)
13

14

15

16          VIDEOTAPED DEPOSITION OF C. SPARKS LANDEN,

17          taken at 233 Wilshire Boulevard, Suite 700,

18          Santa Monica, California, commencing at

19          10:09 A.M., Thursday, April 24, 2014,

20          before Ruth C. Moore, Certified Shorthand

21          Reporter Number 8444.

22

23

24

25
                                                              2
```

Schmidt Suppl Decl. Ex. 12
Page 013

```
 1        A.   I don't -- no.  I asked for a

 2   recommendation who would be best, and he recommended

 3   Ringler and Schmidt.

 4        Q.   I'm sorry, when was that again?

 5        A.   When what?

 6        Q.   When did you retain Ringler & Associates?

 7        A.   Shortly after hearing about the problem

 8   with the machines.

 9        Q.   How long after?

10        A.   I don't recall exactly.  I think that's

11   already a matter of record.  I don't recall the

12   dates.

13        Q.   Approximately?

14        A.   Not long.

15        Q.   What do you consider to be not long?

16        A.   I don't know.  A month maybe.

17        Q.   Okay.  And how did you become a client of

18   Scott Rapkin?

19        A.   I retained Scott Rapkin.

20        Q.   Okay.  And when?

21        A.   After I retained Ringler and Schmidt.

22        Q.   And when was that?

23        A.   Shortly thereafter, probably within a month

24   or so.

25        Q.   So maybe the end of 2012?
```

                                                         84

C. Sparks Landen                                                    April 24, 2014

1    warranty is for, X amount of time, what it covers,

2    what it doesn't cover.

3         Q.   And you don't know if you did that in the

4    case of the Electrolux washing machines?

5         A.   I can't recall.

6         Q.   Okay.  It's just your general understanding

7    that warranties last about a year?

8         A.   That's what I -- that's what I think.

9         Q.   Okay.  Do you read the materials that come

10   with appliances generally, aside from the warranty

11   information?

12        A.   You mean the instruction manuals and

13   whatnot?

14        Q.   Correct.

15        A.   Yes.

16        Q.   What do you look for in there?

17        A.   General -- general maintenance and general

18   operation, hazards, how to use them.

19        Q.   What about for machines that you're not

20   using?

21        A.   Yeah, I look them over.

22        Q.   Why?

23        A.   Because -- you mean with regard to my

24   tenants, you mean?

25        Q.   Correct.

                                                              123

Schmidt Suppl Decl. Ex. 12
Page 015

```
 1        A.    Because they're my tenants and they're in

 2   my building, and if they come to me and go, Hey, I

 3   don't know how this works, I can go, Well, this is

 4   how it works, because I read it.

 5        Q.    Okay.  And did you read all of the

 6   materials that came with the machines that you

 7   bought in 2005, the Electrolux machines?

 8        A.    Yeah, I would have looked those over.

 9        Q.    You would have or you did?

10        A.    I don't recall.

11        Q.    Okay.  What about the machine you bought in

12   2012?

13        A.    I may have.

14        Q.    But you don't know?

15        A.    I don't recall exactly.

16        Q.    So you don't know?

17        A.    I don't know.

18        Q.    Okay.  So I want to revisit a topic.

19   You're claiming that your Electrolux washing

20   machines are defective; correct?

21              MR. RAPKIN:  Objection.  Assuming facts not

22   in evidence.

23              MR. KIM:  Is he not claiming that?

24              MR. RAPKIN:  He's claiming -- he said it

25   has a propensity to --
```

124

Schmidt Suppl Decl. Ex. 12
Page 016

```
 1    STATE OF CALIFORNIA          )
                                   ) ss:
 2    COUNTY OF LOS ANGELES        )

 3

 4              I, RUTH C. MOORE, do hereby certify:

 5              That I am a duly qualified Certified Shorthand

 6    Reporter, in and for the State of California, holder of

 7    certificate number 8444, which is in full force and

 8    effect and that I am authorized to administer oaths and

 9    affirmations;

10              That the foregoing deposition testimony of the

11    herein named witness was taken before me at the time and

12    place herein set forth;

13              That prior to being examined, the witness named

14    in the foregoing deposition, was duly sworn or affirmed

15    by me, to testify the truth, the whole truth, and

16    nothing but the truth;

17              That the testimony of the witness and all

18    objections made at the time of the examination were

19    recorded stenographically by me, and were thereafter

20    transcribed under my direction and supervision;

21              That the foregoing pages contain a full, true

22    and accurate record of the proceedings and testimony to

23    the best of my skill and ability;

24              That prior to the completion of the foregoing

25    deposition, review of the transcript was requested.
```

157

Schmidt Suppl Decl. Ex. 12
Page 017

```
1              I further certify that I am not a relative or

2     employee or attorney or counsel of any of the parties,

3     nor am I a relative or employee of such attorney or

4     counsel, nor am I financially interested in the outcome

5     of this action.

6

7              IN WITNESS WHEREOF, I have subscribed my name

8     this _____ day of _____, _____.

9

10

11          _____

12          RUTH C. MOORE, CSR No. 8444

13

14

15

16

17

18

19

20

21

22

23

24

25
```

158

Schmidt Suppl Decl. Ex. 12
Page 018

Exhibit 13

Stephen R. Brown                                                     March 4, 2014

```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3                          WESTERN DIVISION

 4

 5    SPARKS LANDEN, individually   )
      and on behalf of all others   )
 6    similarly situated,           )
                                    )
 7                    Plaintiff,    )
                                    )
 8    vs.                           ) Case No.
                                    ) CV13-01033-DSF (SHx)
 9    ELECTROLUX HOME PRODUCTS,     )
      INC., a Delaware Corporation; ) Volume I
10    CARLSONS APPLIANCES, INC. a   )
      California Corporation; and   )
11    DOES 1 through 20, inclusive, )
                                    )
12                    Defendant.    )
      _____)

13

14

15

16          VIDEOTAPED 30 (b)(6) DEPOSITION OF

17            ELECTROLUX HOME PRODUCTS, INC.

18               STEPHEN R. BROWN

19           Charlotte, North Carolina

20            Tuesday, March 4, 2014

21

22

23

24    Reported by:  V. Dario Stanziola

25    NDS Job No.:  160592
```

1

Schmidt Suppl. Decl. Ex. 13
Page 020

Stephen R. Brown                                                    March 4, 2014

```
 1          suggested about five minutes ago.

 2               MR. KIM:  That's not exactly what you

 3          suggested, but we'll do that now.

 4               So that would be topic number six, topic

 5          number nine, topic number 12 and topic number

 6          13.

 7     Q.   All right.  Let's start by asking you, Mr.

 8     Brown, to read to yourself topic number six.

 9          A.   Completed.

10          Q.   Tell me when you've finished.

11          A.   Completed.

12          Q.   Do you believe you're knowledgeable as

13     described under the Rule 30 (b)(6) definition I read

14     earlier with regard to topic number six?

15          A.   Yes.

16          Q.   All right.  Now would you read, if you

17     would, please, topic number nine.

18          A.   Completed.

19          Q.   Do you believe you were knowledgeable as

20     described under Rule 30 (b)(6) as pertains to topic

21     number nine?

22          A.   Yes.

23          Q.   All right.  Would you now read topic number

24     12?

25          A.   Completed.
```

10

Schmidt Suppl. Decl. Ex. 13
Page 021

Stephen R. Brown                                                          March 4, 2014

1      Q.   Do you believe you're knowledgeable as

2   described under Rule 30 (b)(6) by virtue of the

3   definition I read earlier as to topic number 12?

4      A.   Yes.

5      Q.   Would you now read topic number 13.

6      A.   Completed.

7      Q.   All right.  Do you believe you're

8   knowledgeable as defined under Rule 30 (b)(6), which

9   I read earlier, as to topic number 13?

10     A.   Yes.

11     Q.   Now, before we begin with exploring your

12   knowledge as to those topics you've just identified,

13   it's my understanding that --

14          MR. RINGLER: Is it Mr. Kim?  What's the

15       lawyer's name?

16          MR. KIM:  It is Mr. Kim.

17          MR. RINGLER: My understanding, Mr. Kim,

18       that this witness would be knowledgeable as

19       well with regard to topics five, seven, eight,

20       ten and 11.  So why don't you take a moment

21       and read over with the witness, and you can

22       certainly go off the record if you wish to do

23       so, five, seven, eight, ten and 11.

24          MR. KIM:  That is what the other witness

25       has been designated for, based on my -- and I

                                                              11

Schmidt Suppl. Decl. Ex. 13
Page 022

```
 1    line?

 2         A.   Yes.

 3         Q.   And are the claim numbers sequential so

 4    that they're numerically related or are they just

 5    random?

 6         A.   I believe they are sequential.  So it

 7    would count up.

 8         Q.   In a numerical fashion?

 9         A.   Correct.

10         Q.   All right.  Let's move for a moment --

11    well, strike that.

12              Let me, in fact, ask a couple additional

13    questions.

14              The first is, do you have an idea of how

15    many claims are in this file?

16              Are we talking dozens, hundreds, thousands?

17         A.   Can you define file?

18         Q.   Well, the file that would consist of the

19    program in its entirety.

20         A.   I'm not certain how many the total number

21    of claims in the system, no.

22         Q.   Any estimate?

23              Are we talking about less than a thousand

24    or would you not know?

25         A.   Well, it depends on if you're talking
```

                                                          25

Schmidt Suppl. Decl. Ex. 13
Page 023

Stephen R. Brown                                                    March 4, 2014

1    from when the program started until today, no, I

2    wouldn't have an exact number.  And, I actually

3    wouldn't have --

4         Q.   I understand that.

5              But some approximation or not?

6         A.   I don't have an approximation.

7         Q.   And are they for every product Electrolux

8    makes or are they for washing machines only?

9         A.   For every product.

10        Q.   So you might have a complaint for a dryer

11   and the next complaint for a washing machine and the

12   next complaint for some other product and then back

13   to a washing machine, just, again, depending on the

14   nature of the complaint and the date it's made?

15        A.   That is correct.

16        Q.   When a complaint is made, what is the basic

17   information that is captured in addition to the date

18   the complaint is made?

19        A.   Can you define complaint for me, please.

20        Q.   The complaint that you're capturing in your

21   claims program CS STARS?

22        A.   Okay.  Thank you.

23             We capture the consumers' contact

24   information, name, address, phone number, e-mail,

25   if it's provided, and whatever other details they

26

Schmidt Suppl. Decl. Ex. 13
Page 024

```
 1   photos that identifies our product, then we would

 2   capture that.  But...

 3       Q.   So the database is searchable?

 4       A.   Yes.

 5       Q.   So, for example, if you were looking for

 6   model XYZ, you could search how many complaints and

 7   on what occasions were they made relative to product

 8   XYZ?

 9       A.   When product XYZ is provided, yes.

10       Q.   And if the complaint's about XYZ, but XYZ

11   was not given at the time the complaint was made,

12   then that would escape the search?

13       A.   Yes.

14       Q.   All right.  Let's move onto the second

15   topic for your discussion here today, which is nine,

16   I believe?  The data is storage and maintenance in

17   your call center database is topic number nine.

18          Why don't you address initially your

19   knowledge of how your call center database maintains

20   and stores the complaints that you've been discussing

21   on your CS STARS program?

22       A.   The call center database does not store

23   information that we put in our CS STARS program.

24       Q.   What does the call center store, if

25   anything?
```

29

Schmidt Suppl. Decl. Ex. 13
Page 025

1        A.   It would be customer contact information

2   as well as capturing the purpose of the call.

3        Q.   Well, the purpose of the call would be the

4   complaint; would it not?

5        A.   Not always.

6        Q.   What is the distinction between the purpose

7   of the call and the identity of the complaint at

8   issue?

9        A.   My understanding of the call center is an

10  outside party would call the call center, based on

11  their complaint, that information would be

12  documented in the call center database.  And then

13  whatever that complaint -- whatever business unit

14  that complaint deals with would handle that

15  specific complaint.

16       Q.   And how would it be transferred, if at all,

17  to your CS STARS program?

18       A.   If it's a product liability claim, then

19  we have a claims administrator that extracts that

20  information and sets up the claim in our CS STARS

21  program.

22       Q.   And if it's not?

23       A.   If it's not a product liability claim, it

24  doesn't come over to the CS STARS program, it would

25  stay in the SAP call center program.

30

Schmidt Suppl. Decl. Ex. 13
Page 026

Stephen R. Brown                                                          March 4, 2014

1          Q.   And is there an identity for the call

2     center program if one wanted to capture it?

3          A.   The call center program would identify it

4     as being a liability claim.

5          Q.   Well, before we get to the distinction in

6     your judgment between a liability claim on the one

7     hand and a products claim on the other, what's the

8     identity of the claim files, either in electronic

9     format or in hard copy format, maintained at your

10    call center?

11         A.   It's maintained in electronic format.

12         Q.   All right.  I think you may have

13    misunderstood my question.  But I appreciate that

14    information.

15              It's maintained in an electronic format at

16    the call center, correct?

17         A.   Correct.

18         Q.   And how was it identified?

19              What is its name?

20         A.   Oh, pardon me.  SAP CRM is the program

21    name.

22         Q.   And that program had only had the liability

23    claims, not the product -- would only have the

24    liability claims, not the product claims?

25              MR. KIM:  Objection, misstates prior

31

Schmidt Suppl. Decl. Ex. 13
Page 027

Stephen R. Brown                                                    March 4, 2014

1            testimony.

2        A.    The -- I believe you previously asked me

3    how do we identify in that system that a claim goes

4    to the CS STARS program.  And my answer is they

5    code it as liability.  So -- and for this purpose

6    liability is synonymous with product liability.

7        Q.    All right.  Forgive me, I want to just walk

8    through this briefly with you.

9              If the call center receives a claim that's

10   coded as a product liability claim, that moves over

11   to the CS STARS system?

12       A.    Correct.

13       Q.    And what is the other coding possible other

14   than a product liability claim?

15       A.    I'm not sure of all the codings, but an

16   example would be a warranty claim or a replacement

17   claim.

18       Q.    And what is the definition of a product

19   liability claim?

20              And to be more precise, what

21   characteristics would a product liability claim

22   possess in order to receive that characterization?

23       A.    It would be a claim where one of our

24   products has caused resulting damage, property

25   damage and/or injury.

                                                          32

Schmidt Suppl. Decl. Ex. 13
Page 028

1      Q.   So if a failure on one of your products

2    occurred, hypothetically, due to a design

3    malfunction, but didn't cause any property damage,

4    the call center wouldn't characterize that as a

5    products liability claim because there was no damage;

6    is that correct?

7              MR. KIM:   Objection, misstates prior

8          testimony.

9      A.   That's correct.

10     Q.   So if one obtained the program from the

11   call center that you identified earlier, there may be

12   claims that revolve -- strike, withdraw.

13             So if one obtained the -- let's try it once

14   more.  Third time's a charm.

15             So if one obtained the claim file from the

16   call center, they would contain claims that may

17   indeed arise from a product failure, but not one

18   where the product failure caused property damage or

19   injury, correct?

20             MR. KIM:   Objection, misstates prior

21         testimony, vague and ambiguous.

22     Q.   You can answer.

23     A.   I believe that to be correct, yes.

24     Q.   And, again, the name of the computer

25   retained claim file at the call center is?

                                                          33

Schmidt Suppl. Decl. Ex. 13
Page 029

Stephen R. Brown                                                                    March 4, 2014

1          A.    The program is SAP CRM.

2          Q.    And do you have any estimate as to the time

3     period over which -- or during which this computer

4     claim file has been maintained?

5              MR. KIM:   Objection, vague and ambiguous.

6           And misstates prior testimony just to the

7           extent that we're using the term claim file in

8           connection with the call center.

9              THE WITNESS: Right.

10         Q.   All right.  Well, tell me the term you want

11    me to utilize.

12         A.    Well, I think from my perspective on this

13    question is one, the call center does not document

14    a claim file, they document the call and set up the

15    complaint and then they try to facilitate it to the

16    correct department for handling.

17         Q.    All right.  So you're distinguishing

18    between the claim file that goes to the CS STARS

19    program and a complaint?

20         A.    Correct.

21         Q.    So I'll utilize your terminology.

22              The complaint file as opposed to the claim

23    file kept at the call center, for what period of time

24    is that claim been -- oh, forgive me, that complaint

25    file been kept?

                                                                34

Schmidt Suppl. Decl. Ex. 13
Page 030

Stephen R. Brown                                                      March 4, 2014

 1        A.   I'm not -- I'm specific on the exact date

 2   that those are kept.  I would be making an

 3   assumption.

 4        Q.   Do you have any framework with respect to

 5   the time period during which this complaint file has

 6   been kept?

 7        A.   The only thing I specifically I can say

 8   is when I've needed to search that system, I

 9   haven't had -- I haven't run into issues where I

10   can't find a prior complaint that was reported.

11   I'm not certain how far back it dates.

12        Q.   Now, the claim file at the call center,

13   like the complaint file at the CS STARS program, is a

14   searchable database?

15          MR. KIM:  Objection to the extent it

16        misstates prior testimony and it's vague

17        ambiguous.  I think you have the terms

18        switched that the witness has been using.

19          MR. RINGLER:  All right.  Forgive me.

20        Let's do --

21        Q.   The call center is the claim -- forgive me,

22   the call center is the complaint file, the CS STARS

23   is the claim file, correct?

24        A.   Yes.

25        Q.   All right.  So looking at the call center

                                                              35

Schmidt Suppl. Decl. Ex. 13
Page 031

1    complaint file, is that a searchable database?

2          A.   I believe so, yes.

3          Q.   And do you have any estimate as to how many

4    items are on that database?  For example, a hundred,

5    a thousand, 5,000?

6          A.   I have no estimate, no, I don't.

7          Q.   And you don't have an estimate as to the

8    time period over which that file has been maintained?

9          A.   No, I do not.

10         Q.   Do you know if there's ever been a deletion

11   to the file at the call center for complaints?

12         A.   I believe that it's our business practice

13   if a complaint is set up, it's not deleted.

14         Q.   And the same question as to the CS STARS

15   claim file, has there ever been deletions to those

16   files in that searchable database?

17         A.   We have had deletions for duplicate

18   claims set up.  That would be the only scenario.

19         Q.   All right.  Let's look at one other issue

20   with regard to nine.

21              Do you know if any of the complaints that

22   are received at the call center are provided to

23   either design or manufacturing engineers at

24   Electrolux?

25              MR. KIM:  Objection, asked and answered.

                                                           36

Schmidt Suppl. Decl. Ex. 13
Page 032

```
 1    Withdraw.

 2            Are you aware of where one would go to

 3    obtain a database, if one exists, that reflects

 4    lawsuits filed against electric Electrolux as a

 5    result of the overflow of washing machines

 6    manufactured by Electrolux?

 7        A.   Yes.

 8        Q.   Where would that be?

 9        A.   It could be our CS STARS system or

10    possibly our system that our legal department uses.

11        Q.   And what is the system your legal

12    department uses?

13            MR. KIM:  Objection to the extent that

14         this calls for the disclosure of

15         attorney/client communication.

16            If you know the file --

17        Q.   Don't tell me anything that your lawyers

18    told you.  But if you know there's a database or a

19    filing system, I'm looking to get identification of

20    that system.

21            MR. KIM:  If you know that file generally

22         exists, you can answer.

23        A.   Yeah, it would be -- and I don't know

24    that this is the name of the program, but I know

25    that we have a system that the legal department
```

                                                              44

Schmidt Suppl. Decl. Ex. 13
Page 033

 1   works in called Case Track.

 2        Q.   And does that identify litigation files

 3   that have previously and currently exist?

 4        A.   I don't know.  I don't work in that

 5   system.

 6        Q.   Are you aware of the identity of any other

 7   database, whether in electronic format or hard copy

 8   format, that relates to the categorization and

 9   retention of past and current litigation involving

10   the overflow of washing machines manufactured by

11   Electrolux?

12        A.   No, I'm not.

13        Q.   Where would we go to locate any claims or

14   complaints made by -- strike that, withdraw.

15             MR. RINGLER:  Can we just take about a

16        two or three-minute brief recess.  We're

17        almost done with this witness.

18             MR. KIM:  Sure.  Why don't we take a

19        break.

20             THE VIDEOGRAPHER: Time is 12:14 p.m.

21        We're now off the record.

22             (A BRIEF RECESS WAS TAKEN.)

23             THE VIDEOGRAPHER: The time is 12:20 p.m.

24        We're back on the record.

25        Q.   Mr. Brown, the Case Track program you

                                                           45

Schmidt Suppl. Decl. Ex. 13
Page 034

 1    mentioned, one, do you know if it's searchable?

 2         A.   I do not know.

 3         Q.   Two, do you know if you can find litigation

 4    by looking at that database and searching for a

 5    particular product?

 6         A.   I do not know.

 7         Q.   Same question, a particular model?

 8         A.   I do not know.

 9         Q.   Returning to 13, are you aware of whether

10    there is information at Electrolux regarding

11    complaints they have received about washing machines

12    they manufactured that overflowed?

13              MR. RINGLER:  And would you read that

14         back, Mr. Reporter.

15              (THE QUESTION WAS READ BACK.)

16              MR. KIM:  And just to be clear, when

17         we're saying complaints, because I know we've

18         used a couple different terms, which -- what

19         are we referring to exactly?

20              MR. RINGLER:  Complaints, people making a

21         statement that their washing machine

22         overflowed.

23         A.   Well, personally, I think that's kind of

24    a vague question.  But I'm sure we have complaints

25    where somebody's complained about their washing

                                                          46

Stephen R. Brown                                                March 4, 2014

1    machine overflowing.

2         Q.   How would one obtain those from Electrolux?

3         A.   Well, we don't drill down our query to

4    washing machine overflow.  It would be a water loss

5    is how it would be defined, which could be any

6    product or category.

7         Q.   If we wanted to find out from Electrolux

8    the identity -- strike, withdraw.

9              If we wanted to find out from Electrolux

10   how many individuals contacted Electrolux from 2005

11   until the present and made a complaint that their

12   washing machine overflowed, how would we obtain that

13   information?

14             MR. KIM:  Are you asking --

15             MR. RINGLER:  Read that back, if you

16        would, Mr. Reporter.

17             (THE QUESTION WAS READ BACK.)

18             MR. KIM:  Again, just because we're using

19        the terms -- different terms, do you mean what

20        -- you know, if he wanted to run a search for

21        the call center, is that what you're referring

22        to when people contact Electrolux, what search

23        could be run?

24             MR. RINGLER:  Just let him answer my

25        question and then we can certainly try to

                                                            47

Schmidt Suppl. Decl. Ex. 13
Page 036

Stephen R. Brown                                                    March 4, 2014

```
 1          refine it further.

 2          A.   I believe you would have to make a

 3     request for us to search whatever systems we use to

 4     capture that information.

 5          Q.   And what systems would those be?

 6          A.   I'm not sure what systems exactly.

 7     Personally the system I use we don't capture a

 8     claim drill down where you can search and say these

 9     are the claims for water overflow.

10          Q.   You've spoken about three separate systems,

11     the first CS STARS; the second, the system you

12     identified that is kept at the call center; and the

13     third, Case Track, which is kept for litigation.

14               Are you aware if any of those would provide

15     a searchable database to allow retrieval of the

16     information identified in my previous question, ie:

17     those individuals that made complaints to Electrolux

18     that their washing machine overflowed from '05 until

19     the present?

20          A.   No.

21          Q.   And by no you believe none of them would

22     provide a searchable database to be able to identify

23     that narrow complaint and search it in such fashion?

24          A.   To my knowledge, correct.

25          Q.   All right.  Let me conclude by walking you
```

                                                                    48

Schmidt Suppl. Decl. Ex. 13
Page 037

Stephen R. Brown                                                    March 4, 2014

```
 1    STATE OF NORTH CAROLINA      )
                                   )  ss:
 2    COUNTY OF MECKLENBURG        )

 3

 4              I, V. DARIO STANZIOLA, do hereby certify:

 5

 6              That I am a duly qualified Notary Public

 7    in and for the State of North Carolina, and that I am

 8    authorized to administer oaths and affirmations;

 9              That the foregoing deposition testimony of the

10    herein named witness was taken before me at the time and

11    place herein set forth;

12              That prior to being examined, the witness named

13    in the foregoing deposition, was duly sworn or affirmed

14    by me, to testify the truth, the whole truth, and

15    nothing but the truth;

16              That the testimony of the witness and all

17    objections made at the time of the examination were

18    recorded stenographically by me, and were thereafter

19    transcribed under my direction and supervision;

20              That the foregoing pages contain a full, true

21    and accurate record of the proceedings and testimony to

22    the best of my skill and ability;

23              That prior to the completion of the foregoing

24    deposition, review of the transcript was requested.

25
```

65

Schmidt Suppl. Decl. Ex. 13
Page 038

1          I further certify that I am not a relative or

2     employee or attorney or counsel of any of the parties,

3     nor am I a relative or employee of such attorney or

4     counsel, nor am I financially interested in the outcome

5     of this action.

6

7          IN WITNESS WHEREOF, I have subscribed my name

8     this _____ day of _____, _____.

9

10

11     _____

12     V. DARIO STANZIOLA, CSR, RPR, CRR
       Notary Public No. 20011200120

13

14

15

16

17

18

19

20

21

22

23

24

25

66

Schmidt Suppl. Decl. Ex. 13
Page 039

Exhibit 14

1  **HUNTON & WILLIAMS LLP**
   Phillip J. Eskenazi (SBN 158976)
2  peskenazi@hunton.com
   Jason J. Kim (SBN 221476)
3  kimj@hunton.com
   550 South Hope Street, Suite 2000
4  Los Angeles, California 90071-2627
   Telephone: (213) 532-2000
5  Facsimile: (213) 532-2020

6  Attorneys for Defendant
   ELECTROLUX
7  HOME PRODUCTS, INC.

8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11                    **WESTERN DIVISION**

12

13  SPARKS LANDEN, individually and       CASE NO.: CV13-01033-DSF (SHX)
    on behalf of all others similarly
14  situated,                             **DEFENDANT ELECTROLUX**
                                          **HOME PRODUCTS, INC.'S INITIAL**
15              Plaintiff,                **DISCLOSURES PURSUANT TO FED.**
                                          **R. CIV. PROC. 26(a)(1)(A)**
16       v.

17  ELECTROLUX HOME PRODUCTS,
    INC., a Delaware Corporation;
18  CARLSONS APPLIANCES, INC., a
    California Corporation; and DOES 1
19  through 20, inclusive,

20              Defendants.               Action filed: January 8, 2013

21

22

23

24

25

26

27

28

DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S INITIAL DISCLOSURES
PURSUANT TO FED. R. CIV. PROC. 26(a)(1)(A)

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, Defendant Electrolux Home Products, Inc. ("Electrolux") provides the following initial disclosures ("Disclosures").  Electrolux has not yet completed its investigation and discovery in this matter, but has made a diligent and good faith effort to obtain information with which to prepare these Disclosures.  Accordingly, Electrolux's Disclosures are made without prejudice to its right to amend or supplement these Disclosures pursuant to Rule 26(e) of the Federal Rules of Civil Procedure or to introduce at trial additional evidence and documents from any source.

## I.   <u>INDIVIDUALS WITH DISCOVERABLE INFORMATION</u>

At this stage of the proceedings, Electrolux anticipates that the following individuals or categories of individuals may have discoverable information that Electrolux may use to support its claims and defenses.

| Name/Address | Subject Matter |
|---|---|
| Plaintiff Sparks Landen | Plaintiff likely has discoverable information related to his claims. |
| The tenants who utilize and/or have utilized the Washing Machines Plaintiff purports to own, including the "attorney" referenced in Paragraph 30 of Plaintiff's First Amended Complaint. | These individuals are likely to have discoverable information related to Plaintiff's claims. |
| The "expert" referenced in Paragraph 6 of Plaintiff's First Amended Complaint. | This individual likely has discoverable information related to Plaintiff's contentions regarding the existence of an alleged design defect in the "Washing Machines," as that term is used in Paragraph 1 of Plaintiff's First Amended Complaint. |

1

DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S INITIAL DISCLOSURES
PURSUANT TO FED. R. CIV. PROC. 26(a)(1)(A)

Schmidt Decl. Ex. 14
Page 042

| | |
|---|---|
| Shawn Hayes<br>c/o Electrolux's counsel<br>Hunton & Williams LLP<br>550 South Hope Street, Suite 2000<br>Los Angeles, California 90071<br>(213) 532-2000 | Mr. Hayes is a Product Line Manager for Fabric Care for Electrolux. He may have discoverable information regarding the structure, operation, design and manufacture of Electrolux Washing Machines. |
| Thomas G. Maher<br>c/o Electrolux's counsel<br>Hunton & Williams LLP<br>550 South Hope Street, Suite 2000<br>Los Angeles, California 90071<br>(213) 532-2000 | Mr. Maher is the Senior Manager for In Store Marketing for Electrolux. He may have discoverable information regarding the marketing and sale of Electrolux Washing Machines. |
| Carl D. King<br>c/o Electrolux's counsel<br>Hunton & Williams LLP<br>550 South Hope Street, Suite 2000<br>Los Angeles, California 90071<br>(213) 532-2000 | Mr. King is the Product Safety Engineer for Fabric Care for Electrolux. He may have discoverable information regarding the structure, operation, design, manufacture, marketing, sale and servicing of Electrolux Washing Machines. |

Electrolux further identifies all witnesses and custodians of record identified by Plaintiff through the course of this litigation. Moreover, additional witnesses likely will be identified in the course of discovery and continued investigation of this matter. Electrolux therefore reserves the right to call at trial witnesses not listed in these Disclosures.

The individuals Electrolux identifies who may have discoverable information that Electrolux may use to support its defenses will vary greatly based on whether a class is certified in this matter. If a class were certified, then the scope of Plaintiff's claims and Electrolux's defenses would expand dramatically and Electrolux would

2

Schmidt Decl. Ex. 14
Page 043

1 identify additional witnesses.  Electrolux will further amend these Disclosures if a

2 class is certified.

3

4 **II.    DOCUMENTS**

5        Electrolux identifies the following categories of documents in its possession,

6 custody, or control that it may use to support its defenses.  There are likely to be

7 additional documents identified in the course of discovery and continued investigation

8 of this matter.  Electrolux reserves the right to introduce at trial documents and

9 materials not identified in these Disclosures.  Electrolux further incorporates all

10 documents produced by Plaintiff in this matter.

| Category of Documents | Location |
|---|---|
| Documentation relating to the design and marketing of Electrolux Washing Machines. | Electrolux Home Products, Inc. c/o Electrolux's counsel Hunton & Williams LLP 550 South Hope Street, Suite 2000 Los Angeles, California 90071 (213) 532-2000 |
| Documentation relating to any warranties (or limitations thereon) provided in connection with Electrolux Washing Machines. | Electrolux Home Products, Inc. c/o Electrolux's counsel Hunton & Williams LLP 550 South Hope Street, Suite 2000 Los Angeles, California 90071 (213) 532-2000 |
| Documentation concerning financial information related to the costs associated with any servicing of Electrolux Washing Machines. | Electrolux Home Products, Inc. c/o Electrolux's counsel Hunton & Williams LLP 550 South Hope Street, Suite 2000 Los Angeles, California 90071 (213) 532-2000 |

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

3

DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S INITIAL DISCLOSURES
PURSUANT TO FED. R. CIV. PROC. 26(a)(1)(A)

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

| Documentation concerning financial information related to the sales of Electrolux Washing Machines. | Electrolux Home Products, Inc. c/o Electrolux's counsel Hunton & Williams LLP 550 South Hope Street, Suite 2000 Los Angeles, California 90071 (213) 532-2000 |
|---|---|

If a class were certified, Electrolux would identify additional documents, including but not limited to documents relevant to other class members.  Electrolux will amend these Disclosures if a class is certified.

## III.   DAMAGES

Electrolux does not seek any damages in this lawsuit.

## IV.   INSURANCE AGREEMENTS

Electrolux is insured through Equinox Insurance Company.  Electrolux continues to analyze whether it has an insurance policy through Equinox Insurance Company applicable to these claims.  Electrolux will amend these Disclosures if and when appropriate.

Dated:  June 19, 2013                    **HUNTON & WILLIAMS LLP**
Phillip J. Eskenazi
Jason J. Kim

By:  _____
                              Jason J. Kim
                       Attorneys for Defendant
                              ELECTROLUX
                       HOME PRODUCTS, INC.

4

DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S INITIAL DISCLOSURES
PURSUANT TO FED. R. CIV. PROC. 26(a)(1)(A)

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to this action.  My business address is 550 South Hope Street, Suite 2000, Los Angeles, California 90071-2627.  .

On **June 19, 2013**, I served the foregoing document(s) described as **DEFENDANT ELECTROLUX  HOME PRODUCTS, INC.'S INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. PROC. 26(a)(1)(A)** on the interested parties in this action:

Jerome L. Ringler, Esq.
Catherine Burke Schmidt, Esq.
RINGLER & ASSOCIATES
233 Wilshire Boulevard, Suite 900
Santa Monica, CA  90401
Tel. (310) 955-4105
Fax (310) 955-4106
E-Mail: jlr@ringlerandassociates.com
E-Mail: cbs@ringlerandassociates.com

*Attorneys for Plaintiff*

☐ **By FAX:**  by causing a true copy thereof to be sent via facsimile to the attorney(s) of record at the telecopier number(s) so indicated above and that the transmission was reported as completed and without error.

☒ **By MAIL:**  by placing true and correct copy(ies) thereof in an envelope addressed to the attorney(s) of record, addressed as stated above.

☐ **By PERSONAL SERVICE:**  I delivered the envelope by hand on the addressee, addressed as stated above.

☐ **By UPS (UNITED PARCEL SERVICE):**  by causing same to be delivered via UPS to the addressee(s).

☐ **By ELECTRONIC MAIL:**  by causing a true and correct copy thereof to be transmitted electronically to the attorney(s) of record at the e-mail address(es) indicated above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **June 19, 2013**, Los Angeles, California.

Roxana Guevara

61550.000020 EMF_US 43959630v3

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627